RECEIVED

OCT 01 2018

DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

Case Number: __18-5665 (kf)__

Case Name: Amy Mischler v. Matt Bevin, et al

Name: Amy Mischler

Address: 1120 Palm Court

City: Okeechobee ___ State: Fl ___ Zip Code: 34974

## PRO SE APPELLANT'S BRIEF

**Directions:** Answer the following questions about the appeal to the best of your ability. Use additional sheets of paper, if necessary, not to exceed 30 pages. Please print or write legibly, or type your answers double-spaced. You need not limit your brief solely to this form, but you should be certain that the document you file contains answers to the questions below. The Court prefers short and direct statements.

Within the date specified in the briefing letter, you should return one signed original brief to:

**United States Court of Appeals For The Sixth Circuit**
540 Potter Stewart U.S. Courthouse
100 East Fifth Street
Cincinnati, Ohio   45202-3988

1. Did the District Court incorrectly decide the facts?   ☒ Yes   ☐ No

If so, what facts?

> See attached typewritten page.

2. Do you think the District Court applied the wrong law?   ☒ Yes   ☐ No

If so, what law do you want applied?

> See attached typewritten page.

3. Do you feel that there are any others reasons why the District Court's judgment was wrong?
   ☒ Yes ☐ No
   If so, what are they?

   See attached typewritten page.

4. What specific issues do you wish to raise on appeal?

   See attached typewritten page.

5. What action do you want the Court of Appeals to take in this case?

   See attached type written page.

I certify that a copy of this brief was sent to opposing counsel via U.S. Mail on the 29 day of Sept, 20 18.

Signature (Notary not required)

Mischle

A.  Since the motion for extension of time has been requested by the Appellant; her elderly father has been taken to the emergency room twice, one overnight hospital stay, multiple doctor visits, one surgical consultation, and has went from 4th stage kidney disease to the 5th stage, back to the 4th stage [barely].  He has not slept more than two hours at a time.  The Appellant must get up multiple times during the night with him and has a monitor to listen him at night.

This brief is without details to the record and in a non-traditional format because the Appellant simply has not had time for such details.  She apologizes to the Court. Part 4.

RECEIVED

OCT 01 2018

### Issue A.   Undisclosed Judicial Conflict of Interest.

DEBORAH S. HUNT, Clerk

Pursuant to 28 USC Code Section 1746, I declare under penalty of perjury that the foregoing is true and correct.  Executed on 9/29/2018.

4.A.1   Judge Gregory Van Tatenhove failed to disclose on the record that he was in a romantic relationship with the at will employee of Appellee Matt Bevin.  That employee is a former law clerk of Judge Van Tatenhove.  Her name is Eva Christine Trout Van Tatenhove.

4.A.2   A state employee contacted me and informed me that Judge Van Tatenhove receives not only the financial benefit of Trout receiving a paycheck from being employed by Appellee Matt Bevin, but that Bevin sends Trout on multiple professional trips where Judge Van Tatenhove accomapnies thses trips with Trout.  One such trip was to have taken place in June 2018 to Hawaii.  Trout is said to be insistent on using the Trout-Van Tatenhove personal credit card to purchase airline miles in order to earn free airline miles with Kentucky reimbursing the credit card purchase.  It is believed that Kentucky pays for at least some expenses of Judge Van Tatenhove, specifically he receives "free" hotel rooms with Kentucky paying for the room that he and his now wife stay in on these trips before and after their marriage.  Social media shows

Judge Van Tatenhove and Trout on frequent exotic vacations.

4.A.3  Cooper Van Tatenhove, the son of Judge Van Tatenhove also holds himself out to be employed by Appellee Matt Bevin.

4.A.4  The reason the Trout conflict was not discovered earlier was because she and Judge Van Tatenhove were cohabitating and not married.  A regular person not associated with the legal community would not be able to discover the conflict of interest easily.

4.A.5  I cannot find a copy of Arizona v. United States Dist. Court, 459 U.S. 1191, (1982) which would be controlling law upon the Sixth Circuit.  Arizona appears to uphold In Re Cement Antitrust., Litig., 688 F.2d 1297 (9th Cir.)  See Attached Exhibit 1 and 1A.

4.A.6  In re Cement Antitrust litigation., holds that, "*after five years of litigation, a multi-million dollar lawsuit of major national importantce, with over 2000,000 class plaintiffs, grinds to a halt over Mrs.Mueck's $29.70.  A new judge must now be assigned to conduct further procleedings*".  id.  The financial interest to Mr. & Mrs. Van Tatnehove [Trout] greatly exceeds $29.70, including her at will political employment with the Appellee, free airline miles, and free lodging for Judge Van Tatenhove paid by the Kentucky taxpayer.

## Issue B.  Undisclosed Conflict of Interest and internet stalking of the Appellant by Chief Judge Karen Caldwell.

Pursuant to 28 USC Code Section 1746, I declare under penalty of perjury that the foregoing is true and correct.  Executed on 9/29/2018.

4.B.1  The documents supporting these statements have already been filed at the Sixth Circuit Court of Appeals in another action.

4.B.2  When the Appellant discovered the conflict of interest of Judge Van Tatenhove and Appellee Matt Bevin;  she exercised her 1st Amendment Right on social media about the

issue.

4.B.3   Judge Karen Caldwell, the Chief Judge of Judge Van Tatenhove's Federal District stalked the Appellant's twitter account and possibly other social media sites.

4.B.4   Judge Caldwell on her twitter account then "followed"   the Appellant on twitter in order to see any hidden posts.

4.B.5   Judge Caldwell twitter account was unlocked and her followers and follows individuals could be viewed at that time.

4.B.6   Judge Caldwell did not have many followers and follows indicating the account was for private use. However, significantly one of Judge Caldwell contacts was the Chief of Staff for Appellee Matt Bevin, the same Matt Bevin who employed Judge Van Tatenhoves paramour.

4.B.7   Judge Caldwell could be using twitter to communicate privately on the "message" feature with Appellee Matt Bevin about this case.

4.B.8   If Appellee's Matt Bevin employee of Judge Van Tatenhove's paramour was not in violation of the conflict of interest rules;   there would be no reason for Judge Caldwell to stalk the Appellants twitter account.

4.B.9   *This is a case of first impression.*   I do not think the Constitution allows Federal Judges to stalk litigants or use social media to contact parties closely associated with litigants.

## *Issue C.   Judge Van Tatenhove lacks competence to be a Federal Judge*

4.C.1   Pursuant to 28 USC Code Section 1746, I declare under penalty of perjury that the foregoing is true and correct.   Executed on 9/29/2018.

4.C.2   The documents supporting these statements have already been filed on PACER in either or both the Sixth Circuit Court of Appeals and the Eastern District of Kentucky.

4.C.3 Judge Van Tatenhove allowed a teenager who had just finished his freshman year of college to be a law clerk for Judge Van Tatenhove.

4.C.4 This teenager was friends with Cooper Van Tatenhove, the son of Judge Van Tatenhove.

4.C.5 This teenager bragged online that he wrote opinions and orders on habeas corpus cases assigned to Judge Van Tatenhove.

4.C.6 No competent federal judge would allow a teenager who had *Not* been admitted to law school to write opinons and orders for a federal bench. The Appellant does not know what disability Judge Van Tatenhove has, whether it is part of the opoid crisis hitting Kentucky, an undiagnosed brain tumor or other. But any reasonable person would conclude that Judge Van Tatenhove is not fit to federal judge for allowing a teenager to draft habeas corpus orders.

## *ISSUE D. UNDISCLOSED SOCIAL MEDIA RESEARCH BY SIXTH CIRCUIT COURT OF APPEALS*

4.D.1 Pursuant to 28 USC Code Section 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on 9/29/2018.

4.D.2 The documents supporting these statements have already been filed on PACER in either or both the Sixth Circuit Court of Appeals and the Eastern District of Kentucky.

4.D.3 At least once, the Appellant has seen an additional hit on her blog from an IP address from Cincinnati Ohio which she believes is someone in the Sixth Circuit Court of Appeals. This is addition to the several others document visits to her website and others she has already filed on PACER showing directly that the Federal Court are doing undisclosed social media research on litigants.

4.D.4 *This is a case of first impression*.

4.D.5 The Constitution requires that a litigant be able to examine any evidence used by the District Court in its decisions. This falls under the confrontation clause. Judges doing undisclosed social media research on litigants violates the confrontation clause in addition to due process notice and equal protections guaranteed in the U.S Constitution.

4.D.6 See Exhibit 2 where Appellant believes the Sixth Circuit Court of Appeals employee did internet research on the Appellant around the time an order was filed in this action.

## *ISSUE E. THE KENTUCKY DISTRICT COURT SENT F.B.I AGENTS TO INTIMIDATE THE APPELLANT TO COVER UP JUDGE VAN TATENHOVES AND JUDGE CALDWELL JUDICIAL MISCONDUCT.*

4.E.1 Pursuant to 28 USC Code Section 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on 9/29/2018.

4.E.2 The Appellant, who has a Juris Doctorate of Law attempted to protect the reputation of the Federal Courts in these matters. She contacted Judge Caldwell in her administrative capacity in an attempt to mediate these matters.

4.E.3 Judge Caldwell rejected the branch of goodwill the Appellant offered.

4.E.4 The Appellant then went forward and filed on PACER for the public record about both issues of Judge Van Tatenhove and Judge Caldwell written in the prior paragraphs.

4.E.5 Either the District Court or Appelle Governor Matt Bevin, or someone their behalf contacted the Kentucky F.B.I and reported that I was making "threats" to expose information as if it was some type or bribe AFTER THIS INFORMATION was already filed in the public record on PACER by Ms. Mischler.

4.E.6 Without warning or contacting the Appellant before hand, Special Agent Shane Baumgartner and another agent who did not leave his business card showed up at the Appellants home on July 3, 2018.

4.E.7 Special Agent Baumgartner contact information is as follows. Ft. Myers

Reisdent Agency, 12481 Gateway Blvd., Ft. Myers, FL 33913, Telephone (239) 337-7171, shane.baumgartner@ic.fbi.gov

4.E.8    Special Agent Baumgartner indicated he was contacted by the F.B.I. in Kentucky to contact me.

4.E.9    Special Agent Baumgartner towards the end of the interview asked if I had "intention" to go to Kentucky and expose information.  I realized that he was talking about Judge Van Tatenhove and Judge Caldwell unethical actions and how I tried to mediate; that they were claiming this was some type of bribery against a judge to bring a false charge against me.

4.E.10   I explained to him I had a J.D. and understood the importance of protecting the public integrity in the judicial system.  I explained to him that yes, I had contacted Judge Caldwell to mediate the situation. Finally I explained to him how silly the allegation made against me was due to the fact the information was filed in the public domain on PACER.   So it was impossible to "expose" it in some nefarious way because proverbally, the cat was out of the bag AS I HAD ALREADY FILED IT.

4.E.11   Realizing that he and his fellow agent were sent on a wild goose chase by Kentucky officials and Kentucky F.B.I agents; whose only motive would be to intimidate me from filing THIS BRIEF because these individual lied who knew or should have known the information was already filed by me in the pubic record.

4.E.12   Trying to avoid worrying my elderly father who is very ill; I had the two special agents sit on the porch in 100 degree weather.  Despite this, my father still became aware of these men sitting on my porch and had already guessed they were federal agents as I have been dealing unchecked corruption in Kentucky courts for over a decade.

4.E.13   The Florida F.B.I. agents were professional and did not have preknowledge that

they were being used for bad purpose by Kentucky F.B.I. agents and Kentucky officials to intimidate me, and my father by coming to my home unannounced. If they had called ahead I would have gladly set up an interview at the local library to prevent my elderly ill father from the emotional upset and would have been better equipped emotionally to deal with this issue.

4.E.14 I cannot file malicious prosecution cause of action against the unknown Kentucky F.B.I. and Kentucky Officials because Judge Van Tatenhove has issued an order that I cannot file in Kentucky Federal Courts without permission.

4.E.15 The Sixth Circuit Court of Appeals must address judges and/or their agents misusing the Department of Justice resources against Ms. Mischler or the Sixth Circuit Court of Appeals no longer has any ethical credibility.

4.E.16 See Exhibit 3 of the card the Special Agent left with me.

## *ISSUE F. DISTRICT COURT FAILING TO TAKE AS TRUE ALLEGATIONS IN THE COMPLAINT; KY SENIOR JUDGE PAYMENT FRAUD.*
4.F.1 Pursuant to 28 USC Code Section 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on 9/29/2018.

4.F.2 I had no knowledge until after media reports surfaced in August/September 2018 that W.V. Supreme Justices were federally indicted and undergoing impeachment proceedings in West Virginia.

4.F.3 The allegations in W.V. concern payment to W.V. senior judges that was illegal and excessive spending. See Exhibit 4.

4.F.4 August 14, 2018 Associated Press: "Loughry, Workman and Davis also were impeached for their roles in allowing senior status judges to be paid higher than allowed wages. Lawmakers say the overpayments violated state law and stopped when they were challenged by the Internal Revnue Service". See Exhibit 4.

4.F.5  August 24, 2017- Appellant Amy Mischler in 17-cv-66 [EDKY]  Paragraph 48 "Chief Justice Lambert bribed Judge Lewis Nichols per provision in the senior judge administrative order kept secret from the public,; Judge Nichols did not have to work the required amount of time to receive the extra judicial retirement in return for obstructing and delaying Ms. Mischler's case to cover up the Paxton 2002 order issued without subject matter jurisdiction and thus always subject to review".  See Doc #1, Page 16 of 22 , Page ID 16.

4.F.6  The overpayment to W.V. senior judges was done through an administrative order just like Kentucky.

4.F.7  The KY state law required senior judges to finish their hours in five years.  The illegal administrative order by Chief Justice Lambert extended it to ten years.  Because no one can obtain open records from the Kentucky Courts; no one would be able to discovere that senior judges simply did not work the hours.

4.F.8  The KY Supreme Court allowed a limited audit that showed serious deficencies in accounting and issues just like what happened in W.V.     See Exhibit 5.

4.F.9  Specifically, the KY Audit supports the Appellants legal theory that AOC poor record keeping , and simple lack of documentation as found in the audit would allow senior judges, to not be required in working the full requirement to receive extra benefits.  See Exhibit 5.

4.F.10 District Court failed to take as true the Appellants allegations that senior judges in Kentucky were being bribed to fix cases like the Appellants to cover up prior judicial misconduct.

4.F.11  Normally the Attorney Generals Office would investigate bribery of Kentucky Judges.  That does not happen because the Kentucky Attorney Generals Office, along with the

law firm of Stites & Harbison are acting in criminal conspiracy with KY Chief Justice Minton to cover up the serious problems in the Kentucky Court system.

4.F.12 District Court failed to take as true the Appellants allegations that "*Stites & Harbison PLLC, know fully well that Ms. Mischle'rs parental rights were violated by state judicial actors but continued to defraud the KY tax payers in the amount of $40,000 on the basis that they could get away with it because of the Beshear family influence upon both the state and federal courts of Kentucky. Steve Beshear was the Governor during some of the actions while his son was employed with Stites & Harbison PLLC. Steven Beshear is now employed with Stites & Harbison while his son is Attorney General of Kentucky*" See 17-cv-66, Document 1, Page 15 of 22 Page ID 15, poaragraph 44.

4.F.13 With no "pending litigation" the Kentucky courts extended the without bid personal service contract with Stites & Harbison until June of 2018. Exhibit 6. Officially, this personal service contract looks legitimate. However, it is bribe from the Kentucky Courts to Attorney General Andy Beshear, former Governor Steve Beshear and Stites & Harbison PLLC to use their official influence to prevent discovery of judicial misconduct in Amy Mischler's cases.

4.F.14 See Exhibits 6, 7, 8, and 9 which are all appeals of writs of mandamus to the KY Court of Appeals concerning the multiple senior judges assigned to the Appellants cases to fix them.

4.F.15 Exhibit 6 is about the malicious prosecution against the Appellant where the arrest warrant was signed by Defendant Howard Keith Hall who committed fraud stating he had jurisdiction over the allegation when in fact it was in another county. Senior Judge Robert McGinnis refuses to rule on outstanding motions. Defendant Andy Beshear employees Jessica Malloy and Travis Mayo filed for a motion for extension of time in 2014 but have never

submitted an answer four years later. Defendant Stites & Harbison's employee Steven Beshear appointed the special justices to fix the case. Chief Justice Minton who has enriched Stites & Harbison $40,000 in personal service contracts has his employees hold this case in legal limbo when almost every case filed in 2015 has been finalized but Ms. Mischler is being denied constructive access to the Courts.

4.F.16   Exhibit 7 is about the fraud attorney Jonah Lee Stevens commited upon the state court in 2002. Stevens wrote in a EPO on July 22, 2002 that the Appellant was going to do specific acts of domestic violence against him in the future on August 5, 2002. This is also the civil action Defendant Judge Julie Paxton committed fraud issuing an order without subject matter jurisdiction after the case had finalized changing child custody and subseuqnetly having the Appellant arrested, hence Exhibit 6. See Exhibigt 10.

4.F.17   Exhibit 7 has Senior Judge McGinnis refusing to rule on outstanding motions. Defendant Andy Behsear has his employees Jessica Malloy and Travis Mayo file for extensions of time instead of having to answer. Those extensions were filed four years ago in 2014. Defendant Stites & Harbison PLLC employee Steven Beshear assigned special justices in order to make sure the cases are fixed to prevent exposure of judicial misconduct. Chief Justice Minton who has enriched Stites & Harbison $40,000 in personal service contracts has his employees hold this case in legal limbo when almost every case filed in 2015 has been finalized but Ms. Mischler is being denied constructive access to the Courts.

4.F.18   Exhibit 8 is about the writ of mandamus to hold Judge Julie Paxton accountable for committing fraud upon the court for dismissing a valid emergency protection order filed by the Appellant, with Paxton then illegally and unconstittutionally issuing an order after the case was finalized changing child custody without subject matter jurisdiction. Senior Judge Robert

McGinnis refuses to address outstanding motions at the trial court level. Defendant Andy Behsears employees Travis Mayo and Jessica Malloy filed motions for extension of time in 2014 and have never filed an actual answer four years later. Defendant Stites & Harbison's employee Steve Beshear appointed the two special justices to make sure that this case was fixed. Chief Justice Minton who has enriched Stites & Harbison $40,000 in personal service contracts has his employees hold this case in legal imbo when almost every case filed in 2015 has been finalized but Ms. Mischler is being denied constructive access to the Courts.

4.F.19   Exhibit 9 is about the writ of mandamus to hold Judge Julie Paxton accountable for committing fraud upon the court. Paxton issued a domestic violence finding against the Appellant for marching in public with a sign in 2006 to cover up Paxton's fraud in 2002. There has been a subsequent factual finding by Judge John David Preston that there were no actual allegations of domestic violence in the petition that Paxton ruled upon. Neither Preston, Chief Justice Minton, the Kentucky Courts, or the Kentucky Judicial Conduct Commission have held Paxton accountable for her fraud.

4.F.20   Exhibit 9 is about senior judge McGinnis refusing to address outstanding motions at the trial court level. It shows that Defendant Andy Beshears employees Travis Mayo and Jessica Malloy filed motions for extensions of time in 2014 and never filing an answer four years later. It shows Stites & Harbison PLLC employee Steve Beshear appointing two special justices to fix the case. Chief Justice Minton who has enriched Stites & Harbison $40,000 in personal service contracts has his employees hold this case in legal imbo when almost every case filed in 2015 has been finalized but Ms. Mischler is being denied constructive access to the Courts.

4.F.21   Exhibit 10 shows Attorney Jonah Lee Stevens alleging on July 22, 2002 that in

the future on August 5, 2002 that the Appellant is going to commit specific acts of violence against him.

4.F.22   Exhibit 11 shows Judge Julie Paxton dismissed the domestic violence action in Exhibit 10 on August 7, 2002.

4.F.23   Well established state and federal case law filed by the Appellant multiple times in both state and federal court show that thirty days past August 7, 2002 that Paxton lost all subject matter jurisdiction and had no lawful authority to issue an order in the dismissed domestic violence action where no appeal was taken.

4.F.24   Exhibit 12 shows Judge Julie Paxton illegally changed child custody without any legal authority to do so on September 23, 2002.

4.F.25   Judge Julie Paxton ordered Kentucky DCBS to investigate and create child protective service records against Amy Mischler in 2006. A copy of that order will be supplemented to the record.

4.F.26   Exhibit 13 is the actual Senior Status Judge statute which requires the service to be completed within five years.

4.F.27   Exhibit 14 shows that Defendant Chief Justice Lambert created an illegal administrative order in violation of the actual statute to facially allow senior status judges to complete service within 10 years, but in actuality would not have to do the required work in return for fixing cases.   This was easily done because the senior status judges work records are not subject to open records and AOC is documented by an limited audit of negligence bookkeeping.

### *ISSUE G.   DISTRICT COURT FAILED TO TAKE AS TRUE THAT KENTUCKY GOVERNOR AND HIS EMPLOYEES WITHIN THE CABINET FOR HEALTH AND FAMILY SERVICES ARE FALSIFYING CHILD PROTECTIVE SERVICE RECORDS CONTINOUSLY SINCE 2006 UNTIL THE PRESENT DAY.*

4.G.1 Pursuant to 28 USC Code Section 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on 9/29/2018. _[signature]_

4.G.2 Defendant Judge Julie Paxton entered an order in 02-D-00202-003 that child protective service workers were to investigate the Appellant and "provide services". Paxton's intention was that false allegations were be entered to defame the Appellant in order to cover up Paxton's judicial and criminal misconduct from 2002 illegally changing child custody to benefit the Appellants ex husband, an attorney and member of the Kentucky Bar Association.

4.G.3 Various Defendants KY Child Protective Services employees including Cabinet General Counsel Mona Womack have in fact, falsified child protective service records including the creation of a 2002 investigation against the Appellant believed to be placed in the records in 2013.

4.G.4 KY Child Protective Services says it has illegally destroyed the hard copies of the Appellants records by mistake though these hard copies are supposed to be maintained by KY for 20-25 years per agreement with the Federal Department of Health and Human Services.

4.G.5 Exhibit 15, the Kentucky Inspector General made findings that KY Child Protective Services are falsified and that the system is set up to encourage falsification and changing of records. KY Child Protective Services did not enact the recommended changes by its own OIG to require time stamps and other modifications to prevent employee falsifying and changing these records.

4.G.6 The Appellant won two administrative hearings against KY Child Protective Services. She was supposed to have obtained all her records through administrative subpoena. KY Child Protective Services withheld documents.

4.G.7 Amy Mischler had no records with KY Child Protective Services until October

2006.

4.G.8  Under false pretenses, Defendant social worker Shereena Hamilton-Spurlocke visited the Appellants home in April 2006 stating that she needed to inspect the Appellants home because there was an allegation of child abuse against her.  Hamilton was family friends with Defendant Selena Stevens, the sister in law to Attorney Jonah Lee Stevens.

4.G.9  KY Child Protective Services withheld Exhibit 16 from the Appellant because Defendant Hamilton -Spurlocke had no jurisidiction granted to her until October 19, 2006. Thus the April 20, 2006 visit to the Appellants home was a violation of the Fourth Amendment of the Constitution.

4.G.10  Exhibit 16, a KY state document states that the Appellant has been investigated Four times, with the dates being 1) April 20, 2006, 2) May 25, 2006, 3) August 19, 2002, for child protective services and an adult protective services on 4) August 19, 2002.

4.G.11  Exhibit 16 intake numbers are significant because it shows the 2002 child protective services investigation against Ms. Mischler intake number was obtained in 2006 and is sequential with both the April and May child protective services investigation.  All three investigations were entered into the system the same day.

4.G.12  Exhibit 17 is an email from General Counsel office Mona Womack to David Lovely.  Mona Womack's email says that there are only two investigations against Ms. Mischler which directly contradicts Exhibit 16.  Exhibit 17 says one investigation was opend August 19, 2002 and closed 8/27/2002 and the second was opened October 18, 2006 and closed 8/17/2007.

4.G.13  Exhibit 16 and 17 dates and numbers of investigation SHOULD BE IDENTICAL but are not.

4.G.14  Exhibit 18 is a document received by the Appellant pursuant to the

administrative subpoena. It states that Ms. Mischler only had two child protective service investigations against her and one adult protective services opened.

4.G.15   Exhibit 18 number of investigations against the Appellant should be identical to Exhibit 16 and 17 but are not. The dates should also be identical but are not.

4.G.16   Exhibit 19 is an administrative investigation by Defendant Debbie Dile. She states there are two investigations against Amy Mischler dated 04/[20]06 and 05/[20]06. This administrative report is per se evidence that Dile requestion an extension for her report for records to be entered against Amy Mischler. This shows Dile knew about the 4th Amendment violation in April 20, 2006 and that Shereena Hamilton-Spurlock abused her position as a social worker to spy on the inside of home for personal friends.

4.G.16   Exhibit's 19, 18. 17 and 16 should be identical in the number of investigations and dates. They are not.

4.G.17   Exhibit 20 is a second report also prepared by Debbie Dile.

4.G.18   Dile states she consulted with "Mona" in this document. Mona is Deputy General Counsel Mona Womack. Dile received legal advice to falsify her report from Defendant Mona Womack.

4.G.19   Exhibit 20 and Exhibit 19 should be identical because they are prepared by the same person Debbie Dile issuing a report on Amy Mischler's records. They are not identical and substantively are different.

4.G.20   Exhibit 20 states that there are three child abuse investigations against Amy Mischler dated May 2006, unknown date, and December 2006 where Dile states "a third referral is added to open the case, . . .which created a substantiation against [Ms. Mischler] which is not accurate". See second page of Exhibit 20.

4.G.20   Exhibit 20 should be identical to Exhibits 19, 18, 17, and 16 in the numbers of cases and dates.   They are not.   They are substantilly different with the December 2006 investigation.

4.G.21  Exhibit 21 states that the child abuse finding against Ms. Mischler was overturned. Ms. Mischler was told she had no substantiations of child abuse against her and was given a document stating so.

4.G.22   Exhibit 22  states that there were three referrals against Ms. Mischler.   One was an I & G report [adult protective services] dated 8/9/2002, and two child abuse investigations dated April 20, 2006 and October 2006.

4.G.23   Exhibit 23 substantially differs from the Debbie Dile report in Exhibit 20 because there is no mention of the December 2006 child abuse/sbustantiation against Amy Mischler despite Exhibit 23 being created in May 2007.

4.G.24   Exhibit 24 was created on 12/8/2008.  This was created under attorney Jonah Stevens name and not in Amy Mischler's records.   It states that Amy Mischler is a substantiated child abuser in 2008 although Amy Mischler was given documents stating she had no substantiations against her in 2007.

4.G.25   Psychologist Sally Brenzel was given this record and knew it contradicted what Amy Mischler had told her and the records given to Brenzel by Amy Mischler.   Dr. Brenzel did not inform Amy Mischler that there Jonah Stevens records said that Amy Mischler had a child abuse substantiation against her.  Dr. Brenzle instead wrote her report insinuating that Amy Mischler was mentally ill because Mischler believed child protective services had acted unethically.   Dr. Brenzel did not disclose that she, Dr. Brenzel had had personal service contracts with both KY Child Protective Service the KY Court system.

4.G.26 Exhibits 16-24 should be identical in the number of investigations and the dates regarding Amy Mischler.   They are not.

4.G.27  Per KY Administrative Rule;   Amy Mischler is supposed to receive a certified letter through the United States Postal Service as Constitutional Due Process notice before being placed on the substantiated child abuser list.   Mischler is also supposed to receive a letter notifying her each and every time she is investigated.

4.G.28   Amy Mischler has only ever received one certified due process notification in March 2007 of being placed on the child abuser list in October 2006 of a single time.   This was only after an anonymous person said that child abuse records would be used in private child custody on the internet.   See Exhibit 25.

4.G.29  Defendant Matt Bevin as Governor of Kentucky has a duty to address falsified child protective service records which are felonies under state law when he noticed of them.

4.G.30   Defendant Andy Beshear as Attorney General of Kentucky has a duty to address falsified child protective service record and prosecute individuals particularly Debbie Dile, located in KY Child Protective Services Frankfort cental office,   who knew she was falsifying internal investigations about misconduct in Pike County Kentucky.

## ISSUE H.   DISTRICT COURT DISMISSED HOWARD KEITH HALL AS A DEFENDANT EVEN THOUGH HALL NEVER FILED AN ANSWER OR MOTION TO DISMISS.

4.H.1   Defendant Hall was dismissed in violation of the civil rules without Hall filing an answer or a motion to dismiss.

## ISSUE I.   DEFENDANT MATT BEVIN DID NOT TIMELY FILE HIS MOTION TO DISMISS.

4.I.1   From memory;   Matt Bevin attorney filed for an extension of time that was granted because everyone knew that Matt Bevin employed the Judges paramour.

4.I.2   From memory;   Matt Bevin's attorney missed the deadline and filed outside of the

time the extension was granted.

4.I.3 Matt Bevin was only sued in his official capacity to address the grotesque misconduct that is still continuing under his administration regarding the falsification of Amy Mischler's records.

## *ISSUE J. DISTRICT COURT FAILED TO ADDRESS THE CORRECT STATUE OF LIMITATIONS AND THE CONTINUING VIOLATION DOCTRINE*

4.J.1 Count 1 is common law fraud against Defendant preventing the discovery that Hamilton Spurlocke did not have jurisdiction and committed a 4th Amendment Violation.

4.J.2 Ms. Mischler has diversity jurisdiction being a resident of Florida.

4.J.3 Common law fraud in Kentucky has a five year statute of limitations.

4.J.4 The continuing violations doctrine must be applied because Kentucky withheld open records from Amy Mischler from 2007/8 until 2016 showing that Hamilton did not have any authority to invade Ms. Mischler's home under false pretenses on April 20, 2006 and KY Protective Services General Counsel Mona Womack and others conspired to commit this fraud.

4.J.5 Count 2 is common law fraud against Defendants falsifying a child protective services document to be used in private child custody between parents in a state court proceeding.

4.J.6 Ms. Mischler has diversity jurisdiction being a resident of Florida.

4.J.7 Common law fraud in Kentucky has a give year statute of limitations.

4.J.8 The continuing violations doctrine must be applied because Kentucky withheld this record from Amy Mischler from 2007/8 until 2006 that Jones-Gray wrote that Amy Mischler had a child abuse substantiation against her when such was false. Defendant Psychologist Dr. Sally Brenzel participated in the fraud because she had both the Jones-Gray document and Amy Mischler's document, along with Amy Mischler telling Dr. Brenzel she was cleared of all

substantiations. Dr. Brenzel intentionally withheld from Amy Mischler knowledge of the Jones-Gray fraud document and then Dr. Brenzel issued a report that Amy Mischler was unfit based on these falsified records to the senior Judge Lewis Nicholls. This is the same Lewis Nicholls who was a senior judge and was being bribed through the senior judge program to fix cases in order to not have to work the required time as state previously.

4.J.9    Count 3 is a civil rights violation.

4.J.10 has shown conclusively that the civil rights violation to interfere with her private child custody rights is ongoing and continuous because she is being denied access to the constructive access to the courts as shown in the exhibits.

4.J.11    Count 4 is a first amendment violation.

4.J.12    Amy Mischler has a constitutional right of redress of grievances against KY Child protective Services and Matt Bevin to address these falsified records. She requested an administrative hearing and was outright denied by the Bevin administration. There is no statute of limitations because she is still entitled to redress even today.

4.J.13    Count 5 is injunctive relief requested.

4.J.14    Amy Mischler requested the District Court to order Matt Bevin and KY Child protective Service to preserve her records. She also requested injunctive relief against Andy Beshear to enforce the law to investigate his former law firm, Stites & Harbison PLLC for receiving unjust enrichment for covering up bribery within the Kentucky court system.

Part 5. What action do you want the Court of Appeals to take in this case?

5.A.1    I want the same result as In re Cement Antitrust litigation, which is the entirety of every order in the District Case be vacated and a new judge assigned to conduct further proceedings starting with the motion to protect documents being destroyed by the Cabinet

Defendants. Judge Van Tatenhove HAS NEVER RULED ON THAT MOTION.

5.B.1 I want a factual finding that Judge Caldwell actions of stalking the Appellants twitter account is unethical and violations of the conflict of interest rules.

5.B.2 I want my case remanded to a Federal District outside of both Kentucky districts; preferably to Michigan or Northern Ohio.

5.C.1 I want an order from the Sixth Circuit Court of Appeals issued to Judge Van Tatenhove to disclosed which cases he allowed a teenage boy to draft opinions on the record of this case.

5.D.1 I want an order issued requiring the Sixth Circuit Court of Appeals to disclose the name so employees doing social media research on Appellant Amy Mischler by the IP addresses she has already filed in the public domain showing the ex parte social media research.

5.E.1 I want a show cause order issued to Judge Karen Caldwell, Judge Van Tatenhove and Appelleeds Governor Matt Bevin to respond under oath in this action about any knowledge they have regarding the reporting to the Department of Justice to investigate Amy Mischler which resulted in the July 3, 2018 visit to her home by Special Agent Shane Baumgartner.

### *SPECIAL PUBLIC RECORD NOTICE*

Attached as Exhibit 26 is an order from the Kentucky Supreme Court. This is the highly political pension case that is likely to go to the United States Supreme Court regardless which side wins. Appellee Andy Beshear is a litigant and as shown in this poorly written brief with numerous exhibits that Andy Beshear, through his former employment with Stite & Harbison PLLC has leverage over the Kentucky Supreme Court.

Unless this conflict of interest is addressed at the Kentucky Supreme Court between Beshear, Stites & Harbison PLLC, Chief Justice Minton and the past fraud that took place in the

Defendants.   Judge Van Tatenhove HAS NEVER RULED ON THAT MOTION.

5.B.1   I want a factual finding that Judge Caldwell actions of stalking the Appellants twitter account is unethical and violations of the conflict of interest rules.

5.B.2   I want my case remanded to a Federal District outside of both Kentucky districts; preferably to Michigan or Northern Ohio.

5.C.1   I want an order from the Sixth Circuit Court of Appeals issued to Judge Van Tatenhove to disclosed which cases he allowed a teenage boy to draft opinions on the record of this case.

5.D.1   I want an order issued requiring the Sixth Circuit Court of Appeals to disclose the name so employees doing social media research on Appellant Amy Mischler by the IP addresses she has already filed in the public domain showing the ex parte social media research.

5.E.1   I want a show cause order issued to Judge Karen Caldwell, Judge Van Tatenhove and Appelleeds Governor Matt Bevin to respond under oath in this action about any knowledge they have regarding the reporting to the Department of Justice to investigate Amy Mischler which resulted in the July 3, 2018 visit to her home by Special Agent Shane Baumgartner.

### *SPECIAL PUBLIC RECORD NOTICE*

Attached as Exhibit 26 is an order from the Kentucky Supreme Court.   This is the highly political pension case that is likely to go to the United States Supreme Court regardless which side wins.   Appellee Andy Beshear is a litigant and as shown in this poorly written brief with numerous exhibits that Andy Beshear, through his former employment with Stite & Harbison PLLC has leverage over the Kentucky Supreme Court.

Unless this conflict of interest is addressed at the Kentucky Supreme Court between Beshear, Stites & Harbison PLLC, Chief Justice Minton and the past fraud that took place in the

KY senior status judge program; the entire case of 2018-SC-000419 et. al, are ethically compromised.

OUT OF TIME.

Due to post office closing early on Saturday; I have no more time to write. The majority of this brief was written starting at 2:00 a.m. on 9/29/2018 to my father's serious ongoing health issues.

OTHER RELIEF REQUESTED

I WOULD LIKE THE SIXTH CIRCUIT COURT OF APPEALS TO ASSIGN AN ATTORNEY TO REPRESENT ME THAT IS BASED OUT OF NORTHERN OHIO OR MICHIGAN AND FREE FROM THE INFLUENCE OF KENTUCKY.

I WANT AN ORAL ARGUMENT BEFORE THE SIXTH CIRCUIT COURT OF APPEALS.

I WOULD LIKE A SHOW CAUSE MOTION TO STITES & HARBISON PLLC WHY THEIR CLIENT, KY SUPREME COURT HAS NOT MOVED MY CASES FORWARD.

I WOULD LIKE A SHOW CAUSE MOTION TO GOVERNOR MATT BEVIN WHY HE HAS NOT ADDRESSED THE ISSUE THAT SOCIAL WORKERS ARE ALTERING CHILD PROTECTIVE SERVICE RECORDS AND EXPLAIN WHY MY HARD COPIES HAVE BEEN DESTROYED SUPPOSEDLY.

I WOULD LIKE A SHOW CAUSE MOTION TO KENTUCKY ANDY BESHEAR WHY THE ATTORNEY GENERALS OFFICE REFUSES TO PROSECUTE JULIE PAXTON FOR ILLEGALLY ISSUING AN ORDER CHANGING CHILD CUSTODY AND SOCIAL WORKERS, PARTICULARLY DEBBIE DILE AND MONA WOMACK FOR FALSIFYING RECORDS WHICH IS A FELONY NOT SUBJECT TO STATUTE OF LIMITATION IN KENTUCKY.

*d* Mischler Sept 29, 2018

This brief has 24 pages including 22 pages of text and 2 pages of form.

This brief has 26 necessary exhibits. Which has 58 pages

This brief is mailed on Saturday, September 29, 2018 to the Court and Appellees.

A Courtesy Copy is sent to Special Agent Baumgartner Matt Bevin is noticed that if he does not address DCBS Fraud in my case that I will sue in D.C. Federal Court; Secretary Alex Azar and OCR Roger Severino to withhold all HHS funding from KY.

I am poor. I am only sending one copy per defendant / Attorney. For example, only one copy will be going to Stites. Only one copy to Cabinet for Health and family Services. Only one copy to KY Attorney General. Pro Se litigants should be allowed to file electronically and are penalied finacially.

function as a viable institution in a democracy if the public lost faith in the impartiality and integrity of its judges.

Despite the importance of an impartial judiciary, there are strong countervailing reasons for limiting disqualification of judges. First, if the standards for disqualification are too easily met, "the increasing frequency of disqualification . . . might arguably tend to undermine public confidence in the judiciary by disparaging the general impartiality of judges."[8] A second and more important reason is that excessive disqualification would seriously damage the efficient administration of justice. If a judge is disqualified after the litigation is well along, the costs of delay and waste of judicial resources may be very high. These costs are especially apparent in lengthy and complex civil litigation, where disqualification may result in the loss of a judge who is thoroughly familiar with the complicated factual details of a case or who has become expert in a highly technical field. Motions to disqualify are often made a considerable time after the case is assigned to a judge because it is not until then that the parties learn of possible bias or a conflict of interest.[9] Moreover, if an appellate court rules that the trial judge should have recused himself, the time and expense of the entire original proceeding have been wasted.

A third concern is avoidance of "judge shopping." If disqualification is easily achieved, litigants may attempt to manipulate the procedure to their advantage. That is, they may seek to disqualify one judge so the case will be heard by a judge they believe is more favorable to their side. This practice also would erode public confidence in the judiciary.

Finally, if an overly strict disqualification standard were applied at the Supreme Court level, it could result in vitally important legal issues not being decided. Six Justices are needed for a quorum in the Supreme Court[10] and substitute Justices are not available. In most circumstances where a quorum does not exist, the Court must affirm the judgment below "with the same effect as upon affirmance by an equally divided court,"[11] that is, the affirmance has no prece-

---

8. Note, *Disqualification of Judges and Justices in the Federal Courts*, 86 HARV. L. REV. 736, 747 (1973).

9. *E.g., In re* Cement Antitrust Litig., 688 F.2d 1297 (9th Cir.) (request for disqualification based on judge's wife's small ownership interest in a party not made until five years after trial judge assigned to case), *aff'd mem. sub nom.* Arizona v. United States Dist. Court, 459 U.S. 1191 (1982).

10. 28 U.S.C. § 1 (1982).

11. *Id.* This is true except for the unusual case of a direct appeal from a district court. In a direct appeal, the statute provides that the case may be remitted to the court of appeals



Exhibit 1

effect such a sweeping rule of disqualification could have on the federal judiciary. After arguing in favor of a
waiver provision, he stated:

84

I think this is very important in these days when judicial manpower in our Federal courts to which this will apply
is being pushed to the outer limits, because in case after case in which the judge may have a very slight financial
interest, as defined in the bill, the judges will not be able to sit and must under the bill disqualify themselves,
even if the parties would like to have them sit.

85

120 Cong.Rec. at 36270.

86

Nevertheless, despite repeated objections to the lack of a provision allowing waiver where the judge's interest was
insubstantial, Congress refused to follow the lead of the ABA and the Judicial Conference on this point. The
Senate passed the bill after Senator Burdick, Chairman of the Subcommittee on Improvements in Judicial
Machinery of the Committee on the Judiciary and sponsor of the bill in the Senate, told that body that "(t)he
most significant provision in these new standards would require a judge to disqualify himself in any case in which
he has a financial interest, however small, in the proceeding." 119 Cong.Rec. at 33029 (1973) (remarks of Senator
Burdick). Senator Burdick stressed the fact that the proposed amendment deviated from the ABA code in that the
amendment did not allow for waiver of either financial interest or kinship within the third degree as grounds for
disqualification. Senator Burdick explained that "(t)he rationale ... (for not allowing waiver) is that these are ...
instances in which the public at large would feel a judge most certainly should disqualify himself." Id. at 33030.

87

The House Judiciary Committee specifically noted that the ABA Code of Judicial Conduct allowed waiver where
the judge had only a small financial interest in a party, whereas the proposed amendment to section 455 did not.
The Committee explained that "(w)hile the ABA canon on disqualification would permit waiver in these ...
instances, the committee believes that confidence in the impartiality of federal judges is enhanced by a more
strict treatment of waiver .... The statutes contain ample authority for chief judges to assign other judges to
replace either a circuit judge or district court judge who becomes disqualified." House Report at 7; 1974 U.S.Code
Cong. & Ad.News at 6357. The Committee also said "(n)otwithstanding the views expressed (by the Judicial
Conference) it is felt that the American people are entitled to ethical behavior on the part of all three branches of
the Government, not merely the Executive or legislative branches." Id. at 6361.

88

Congress adopted a broad and sweeping per se rule despite warnings that it might lead to major disruption of
litigation and to the loss of the judge with the most expertise in a given matter, even where the judge's financial
interest in the party was insubstantial. It was aware that the rule would in at least some cases create the very type
of hardships that petitioners plead here. Congress weighed these hardships against the importance of public
confidence in the federal judiciary and struck the balance in favor of the latter.

89

Given that Congress's main concern in adopting section 455 was to promote public confidence in the impartiality
of the judiciary, it is entirely consistent with congressional intent to hold that a financial interest in a class
member requires recusal. While Congress did not consider or discuss the status of class members when it enacted
section 455, we believe that Judge Muecke's construction of the statute effectuates the expressed congressional
purpose in adopting the per se rule.

90

We conclude that the term "party" as used in section 455 must be given its broad customary meaning rather than
the narrow construction suggested by plaintiffs, and hold that for purposes of the recusal statute, the term
"party" includes class members. Thus, after five years of litigation, a multi-million dollar lawsuit of major
national importance, with over 200,000 class plaintiffs, grinds to a halt over Mrs. Muecke's $29.70. A new judge
must now be assigned to conduct further proceedings.

IV.



**Madisonville, Kentucky, United States, At&t Services   12.70.187.162**
(0 returning visits)
Win10, Chrome 68.0, 1920x1080

| | | https://www.google.com/ (Keywords Unavailable) |
|---|---|---|
| 22 Aug | 03:23:39 PM | Pike County Injustice Files: Legal Domestic Violence |
| 22 Aug | 03:23:41 PM | 4.bp.blogspot.com/-4EJSZgDMCxo/UZpeNV6GZmI/AAAAAAAAAhE/ctuN8TEPRNo/s1600/petition+part+two.jpg (Download) |
| 22 Aug | 03:23:50 PM | 3.bp.blogspot.com/-eOv_nFsFhUI/UZpYKNMDBLI/AAAAAAAAAg0/BpUajtYYYME/s1600/Petition+1st+page.jpg (Download) |

**Cincinnati, Ohio, United States, Spectrum   65.189.34.119**
(0 returning visits)
Win10, Chrome 68.0, 1920x1080

| | | https://www.google.com/ (Keywords Unavailable) |
|---|---|---|
| 22 Aug | 09:15:30 AM | Pike County Injustice Files: 2006 |
| 22 Aug | 09:15:59 AM | photos1.blogger.com/blogger/3320/3903/1600/grahamletterfirstpage.1.jpg (Exit Link) |

**United States, Googlebot   66.249.69.30**
(0 returning visits)
Unknown, Googlebot-Image, Unknown

| | | (No referring link) |
|---|---|---|
| 22 Aug | 06:45:55 AM | Unknown |

**Keller, Texas, United States, Fidelity Investments   192.223.242.21**
(1 returning visit)
Win7, IE 11.0, 1280x1024

| | | pikecountyinjusticefiles.blogspot.com/notify-SpeedbumpObject?aHR0cDovL3Bpa2Vjb3VudHlpbmp1c3RpY2VmaWxlcy5ibG9nc3BvdC5jb20v;H9dgU0PgE45M2NvQoy53nEbiVIRNMq+note1j8JUo1U= |
|---|---|---|
| 13 Aug | 09:14:04 AM | Pike County Injustice Files |
| | | pikecountyinjusticefiles.blogspot.com/notify-SpeedbumpObject?aHR0cDovL3Bpa2Vjb3VudHlpbmp1c3RpY2VmaWxlcy5ibG9nc3BvdC5jb20v;H9dgU0PgE45M2NvQoy53nEbiVIRNMq+note1j8JUo1U= |
| 16 Aug | 01:26:54 PM | Pike County Injustice Files |


nectar   $125
FALL SALE

## Introducing Activity Alerts

### Create alerts for when individual visitors view your website

- Email
- iOS
- Android
- Windows

#### Included with all upgrade plans

Try FREE for 30 days
No Credit Card details required

# What's New?

Thanks for checking out the next version of StatCounter. Here's a quick introduction to some of the improvements.

## Jump & Zoom Your Summary Chart

Navigate backwards and forwards and zoom in and out with these new controls.

« ‹ › » + −

## View Headline Stats At A Glance

New headline stats show you important summary information at a glance.

Exhibit 2



**SHANE BAUMGARTNER**
SPECIAL AGENT

**FEDERAL BUREAU OF INVESTIGATION**
**TAMPA DIVISION**

FT. MYERS RESIDENT AGENCY
12481 GATEWAY BLVD.
FT. MYERS, FL 33913

TEL: (239) 337-7171
shane.baumgartner@ic.fbi.gov

Exhibit 3

TOPICS                          FREE MONTHS                    LOG IN
                                Offer ends 10/2

FREE TRIAL | TRY 3 FREE MONTHS!

After Ford testifies she was
sexually assaulted,
Kavanaugh responds with...


Here's what sexual assault
experts say you should keep
in mind as Christine Blase...


If Christine Blasey F
testimony stir
memories, her

ADVERTISEMENT

NATION

# Lawmakers impeach all 4 West Virginia high court justices over spending

**By ASSOCIATED PRESS**
AUG 14, 2018 | CHARLESTON, W.VA.

  



Exhibit 4

West Virginia House Speaker Pro Tempore John Overington presides over the start of a hearing Aug. 13 in Charleston, W.Va. (John Raby / Associated Press) 

West Virginia lawmakers completed the extraordinary move of impeaching all four state Supreme Court justices Monday night for spending issues, including a suspended justice facing a 23-count federal indictment.

The state House of Delegates voted to impeach Justice Allen Loughry on eight articles, setting the stage for a trial in the state Senate.

inRead invented by Tea

ADVERTISEMENT

ADVERTISEMENT

Beth Walker became the final justice to be impeached when an article was approved stating all four justices abused their authority. It said they failed to control office expenses, including more than $1 million in renovations to their individual offices, and not maintaining policies over matters such as working lunches and the use of state vehicles and office computers at home.

Walker had dodged impeachment earlier Monday night when lawmakers decided to overlook her $131,000 in spending on office renovations. A short time later, another article was withdrawn against Chief Justice Margaret Workman, who spent $111,000 in renovations.

Justice Robin Davis was impeached for $500,000 in office renovations. And lawmakers approved articles against Loughry for spending $363,000 in renovations to his office; having a $42,000 antique desk and computers, all owned by the state, at his home; lying to the House Finance Committee about taking home the desk and a $32,000 suede leather couch; and for his personal use of state vehicles.

Loughry, Workman and Davis also were impeached for their roles in allowing senior status judges to be paid higher than allowed wages. Lawmakers say the overpayments violated state law and stopped when they were challenged by the Internal Revenue Service.

Another impeachment article was withdrawn dealing with an accusation Loughry used state money to frame personal items at his office.

Minority Democrats on the House Judiciary Committee that approved the articles last week had tried to speed up the impeachment process in the hopes of beating a Tuesday deadline for arranging a special election in November if any justice is removed from office or leaves office. Instead, the committee took its time, even conducting a tour of the state Supreme Court offices earlier this month.

Republican Gov. Jim Justice will be allowed to appoint new justices to replace any who are impeached — with no requirement that they be from the same party as the incumbent.

West Virginia Supreme Court Justices Robin Davis and Allen Loughry in 2012. (Charleston Gazette-Mail and Daily Mail)

 

Democrats have accused Republicans of attempting to wrest the court away from voters, who elected the current justices in nonpartisan elections.

Delegate Barbara Evans Fleischauer of Monongalia County said Democrats agreed all along there was enough to recommend Loughry's impeachment. But she said going after the other justices "was a power grab, was a takeover of the court and using the impeachment process to take over another branch of government."

West Virginia Supreme Court justices Beth Walker in 2016, left, and Margaret Workman in 2008. (Charleston Gazette-Mail and Daily Mail)



"We're taking away from the people," she said

Some legislators said they didn't support impeaching any justice for wasteful spending, only for articles pertaining to lying, cheating or stealing.

One impeachment article accused Loughry of lying to the House Finance Committee in January about his involvement in his office renovations, including a custom-designed wooden-inlay map showing all 55 West Virginia counties embedded in the floor.

Loughry was suspended earlier this year. Justice Menis Ketchum retired and agreed to plead guilty to a federal wire fraud count involving the personal use of state-owned vehicles and fuel cards.

A special election already is set in November to fill the remainder of Ketchum's term.

Circuit judge Paul T. Farrell has been sworn in to act as the court's chief justice for the Senate trial, whose timeline is uncertain. The court's fall term starts in early September. In the event that one or more justices is on trial in the Senate, the court said last week it would hear all cases on the docket as scheduled.

The last time the Legislature was involved in similar proceedings was 1989, when state Treasurer A. James Manchin was impeached by the House of Delegates after the state lost $279 million invested in the bond market. Manchin resigned before the state Senate took up the impeachment measure. He was never charged and the state recovered $55 million from lawsuits against nine New York brokerage firms involved in the losses.



**Today's Headlines Newsletter**
Weekdays

A digest of essential news, insight and analysis from L.A. Times editors.

ENTER YOUR EMAIL ADDRESS

# KentuckyToday

(/)

# Comprehensive audit blisters agency that runs Kentucky's courts

Posted Thursday, July 12, 2018 2:06 pm

**By TOM LATEK, Kentucky Today**

FRANKFORT, Ky. (KT) – A scathing audit of the agency that operates Kentucky's court system showed "disorganized and unchecked leadership and overall lack of accountability," said state Auditor Mike Harmon

Harmon presented findings at a news conference Thursday morning about the Administrative Office of the Courts in releasing the 214-page report, saying they didn't have sufficient polices in place to provide transparency and oversight.

The 13-month examination followed a request by AOC Director Laurie Dudgeon after news reports about surplus property sales and other issues raised about the agency that serves as the operational arm of Kentucky's Judicial Branch and supports court facilities and programs in each county.

The comprehensive external audit of the agency was the first since the AOC was founded in 1976. Problems ranged from leasing office space from a company owned by sons of a Supreme Court Justice to the private sale of state firearms, furniture and vehicles.

Some of the other findings include:

--The vast majority of credit card expenses by the chief justice and the AOC director that auditors examined lacked any supporting documentation. There was no pre-approval or subsequent review of credit card activity by anyone other than the cardholder, and no cardholder agreements were required for key officials issued a credit card.

--AOC failed to properly report taxable personal benefits from take-home vehicles assigned to Justices and other AOC personnel. The findings related to improper calculation of personal mileage and taxable benefits will be referred to the IRS and Kentucky Department of Revenue.

--The AOC director instructed a staff member to purchase personalized Mint Julep cups for State Justice Institute board members at the request of Chief Justice John Minton's wife.

--Elected and appointed officials at AOC have failed to set a proper tone regarding consistent treatment between those officials, and other government employees at the agency. For example, elected or appointed officials at AOC submit reimbursement requests directly to the Division of Accounting and Purchasing with no other authorization required before processing.

Exhibit 5

--The chief justice shares administrative policymaking decisions with the other members of the state Supreme Court even though that authority appears to rest solely with the Chief Justice on administrative matters. These Court meetings are not open to the public because AOC has no open meetings policy.

--AOC maintains three separate databases for inventory. The third database was created because one department did not trust the data entry of another department. Rather than correcting this problem, the third database was created. Due to this and other factors, AOC has at least $2 million in inventory system errors, putting AOC at high risk of misappropriation of assets.

--Two new laptops were missing due to multiple failures in processing and receiving the order, including an employee who confirmed receipt of these items which he later acknowledged he did without counting the laptops.

--Simple documentation is not required or maintained in many instances. Exceptions to competitive bidding are not required to be documented, and a former manager noted that, "Departments are currently making their own determination."

--The AOC's conflict of interest policy is vague and open-ended. Unlike the Executive Branch, conflicts of interest are not specifically prohibited or subject to mandatory consequences under AOC's policy.

--Individuals who left employment, maintained access to AOC's case management system for an unreasonable amount of time, in one case, well over a year after separation from employment.

"AOC's administrative rules are not applied equally to higher levels of management and elected officials," the audit said. "Senior management, Justices and judges must be held to the same standards as other employees when it comes to such matters."

In a statement released Thursday, Chief Justice John Minton addressed the audit and its findings and said the agency must be "transparent and accountable" to taxpayers.

"While we are careful to safeguard the Judicial Branch as a separate and co-equal branch of government, we also want to advance our efforts to be transparent and accountable to Kentucky taxpayers," he said. "There is value in obtaining regular audits of the AOC and making those results public, and the Supreme Court will determine the scope and frequency of audits going forward."

The report said the AOC had several employee-only surplus sales and often failed to accurately report inventory from the sales and was inconsistent about applying sales tax to the items sold, which include 28 surplus vehicles sold between 2012 and 2017. Seven of the vehicles were sold privately, including one to an unnamed Supreme Court Justice. Those sales came against the advice of general counsel in 2010.

Even more concerning, Harmon said, was that "the former executive officer of Administrative Services participated in the sales as a buyer, while he also determined which items would be sold, set the sales price and coordinated the sales, all with little or no oversight from other AOC staff."

He later identified that individual as Scott Brown, who was fired and has a whistleblower lawsuit pending against the AOC in Franklin Circuit Court.

Thirty-four private sales were conducted by the AOC between 2010 and 2017 where members of staff or elected officials were able to directly buy firearms, vehicles and furniture in those transactions. Even some of the Supreme Court Justices took part in the private sales, among them former Justice Will T. Scott buying a car and former Justice Mary Noble purchasing furniture.

Office space was leased from a company owned by sons of Justice Samuel Wright even though rent was three times higher than the next bid.

"The memo did not provide a complete assessment of the offers, did not provide a reason for the decision, or mention the fact that the potential leaser was owned by the Supreme Court Justice's sons," the audit said.

Harmon recommended the AOC conduct administrative business in public, but they refused.

"Their dismissive attitude towards key recommendations regarding ethics and accountability quite frankly saddens me," Harmon said. "No matter what branch of government, we owe it to the taxpayers of Kentucky to strive toward openness and transparency."

Dudgeon thanked Harmon's office for the examination.

"Completing a third-party exam has been one of the most valuable exercises the AOC has undertaken during my tenure as director. We sought an external audit to help us identify areas that needed improvement, particularly around policies related to our administrative functions. We anticipated many of the findings and have already begun implementing changes to strengthen our operations."

Supreme Court Justice Michelle Keller indicated she was shocked by the findings.

"I received the Auditor's report yesterday and read it yesterday afternoon. I haven't read the AOC's response and don't plan to do that. As a Justice of the Supreme Court and a responsible elected official, I'm interested in in addressing the findings of the report as soon as possible.

"I'm personally sad that the several thousand hardworking judges and other court personnel will be painted with a broad brush by this."

Harmon said the report's findings have been referred to the Kentucky Attorney General's Office, the Kentucky Department of Revenue and the Internal Revenue Service.

POWERED BY CREATIVE CIRCLE MEDIA SOLUTIONS (HTTP://CREATIVECIRCLEMEDIA.COM)

## ADMINISTRATIVE OFFICE OF THE COURTS

| AGENCY/ VENDOR | EFFECTIVE DATES | CONTRACT TYPE | CONTRACT AMOUNT | AMENDMENT AMOUNT/ AMENDMENT DESCRIPTION | CONTRACT DESCRIPTION |
|---|---|---|---|---|---|
| 1. 1600001043 Transitions, Inc. 700 Fairfield Avenue Covington, KY 41011 | January 01, 2016 - December 30, 2018 | Veterans Treatment Court | $24,087.00 | Decrease by ($73,383.00); Federal Funds; Provide for a decrease in accordance with approved federal budget. | Provide funds to implement a Veterans Treatment Court in Campbell County. Contractor will serve as the treatment provider and is responsible for conducting a comprehensive, culturally appropriate, residential and outpatient substance abuse treatment program to include persons with co-occurring substance abuse and mental health issues supported by integrated mental health care, evidence based psychiatric services, coordination of wrap-around services, enhanced case management, which includes assisting the Drug Court Coordinator with increased drug court cases and providing recovery services. |
| 2. 160002387 Stites and Harbison 421 West Main Street Frankfort, KY 40601 | July 01, 2016 - June 30, 2018 | Legal | $40,000.00 | No increase or decrease; General Funds; $125 per hour; Provide for an extension of time to June 30, 2018 due to ongoing litigation. | Review all documentation relating to the action and provide representation for the Supreme Court and AOC throughout all related proceedings until the matter has been resolved. John D. Minton Chief Justice of the Kentucky Supreme Court, Susan Stokley Clary, Clerk of the Kentucky Supreme Court, the Kentucky Supreme Court, and Larrin Thompson, Supreme Court Law Clerk, were named as defendants in Amy Jerrine Mischler v. Susan Stokley Clary, John Minton, Kentucky Supreme Court and Larrin Thompson; United States District Court, Eastern District of Kentucky, Case 3:13-CV-26-ART. |
| 3. 160003867 Tad Thomas 9418 Norton Commons Blvd., Suite 200 Louisville, KY 40059 | July 01, 2016 - June 30, 2018 | Legal | $8,232.50 | No increase or decrease; General Funds; $125 per hour; Provide for an extension of time to June 30, 2018 due to ongoing litigation. | Review all documentation relating to Michael Anthony Usrey v. Farmland Publications, Inc., and Dennis Loy, an individual, Adair Circuit Court, Case Number 16-CI-00051 and provide representation for Adair Circuit Clerk, Dennis Loy, throughout all related proceedings until the matter has been resolved. |

Exhibit b 1

# Supreme Court of Kentucky

| | |
|---|---|
| **Appellant** | **AMY MISCHLER** |
| | vs |
| **Appellee** | **HON ROBERT MCGINNIS SPECIAL JUDGE, PIKE COUNTY CIRCUIT COURT** |

## Case Information

| | |
|---|---|
| **Case #** | **2014-SC-000200** |
| **Case Type** | **Original Action: (OA)** |
| **Document Type** | Matter of Right Appeal: (MR) |
| **Case Status** | Active: (A) |
| **Last Main Event** | **MISC MOTION ORDER: (10/23/2014)** |

## Step Sheet

| Step # | Date | Description | Memo |
|---|---|---|---|
| 1 | 2/18/2014 | JUDGMENT / ORIGINAL ACTION DATE: **JD** | |
| 2 | 4/16/2014 | NOTICE OF APPEAL-ORG. ACTION: **NA** | FORMA PAUPERIS GRANTED IN COURT OF APPEALS 4/16/2014. **(Due Date: 5/16/2014)** |
| 3 | 4/21/2014 | JUSTICE RECUSED FROM CASE: **RECUSE** | CHIEF JUSTICE JOHN D. MINTON HEREBY RECUSES HIMSELF FROM PARTICIPATING IN THIS ACTION. (COPY OF RECUSAL ORDER MAILED CERTIFIED MAIL #7010 2780 0002 9989 7090) |
| 4 | 4/24/2014 | JUSTICE RECUSED FROM CASE: **RECUSE** | JUSTICE WILL T. SCOTT HEREBY RECUSES HIMSELF FROM PARTICIPATION IN THIS CASE. (COPY OF RECUSAL ORDER MAILED CERTIFIED MAIL #7010 2780 0002 9989 7113) |
| 5 | 5/13/2014 | LETTER TO GOVERNOR TO APPOINT SPECIAL JUSTICES: **SPGOV** | PURSUANT TO SECTION 110(3) OF THE CONSTITUTION, NOTICE SENT TO GOVERNOR STEVE BESHEAR CERTIFYING THE RECUSALS OF CHIEF JUSTICE JOHN D. MINTON, JR. AND JUSTICE WILL T. SCOTT. (COPY OF LETTER TO GOVERNOR MAILED CERTIFIED MAIL #7010 2780 0002 9989 7120) |
| 6 | 5/15/2014 | NOTICE OF CERTIFICATION- ORG. ACTION: **NC** | |
| 7 | 5/19/2014 | APPEAL FROM ORIGINAL ACTION FILED: **AF** | APPELLANT BRIEF FILED. *TIMELY FILED PURSUANT TO CR 76.40 (2) BY UPS* **(Due Date: 7/18/2014)** |

Exhibit 6

| 8 | 6/12/2014 | MISCELLANEOUS MOTIONS: **MM** | APPELLEE FILED MOTION TO SUBSTITUTE COUNSEL. (RECEIPT LETTER MAILED CERTIFIED MAIL #7010 2780 0002 9989 7182) **(Due Date: 6/25/2014)** |
| 9 | 6/16/2014 | MISCELLANEOUS MOTIONS: **MM** | APPELLANT FILED MOTION TO CORRECT TITLE ONLINE. (RECEIPT LETTER MAILED CERTIFIED MAIL #7010 2780 0002 9989 7199) **(Due Date: 6/25/2014)** |
| 10 | 6/16/2014 | MISCELLANEOUS MOTIONS: **MM** | APPELLANT FILED NOTICE OF RE-CERTIFICATION. (RECEIPT LETTER MAILED CERTIFIED MAIL #7010 2780 0002 9989 7199) **(Due Date: 6/25/2014)** |
| 11 | 6/16/2014 | EXECUTIVE ORDER APPOINTING SPECIAL JUSTICES: **SPAPPT** | RECEIVED COPY OF EXECUTIVE ORDER 2014-465 FROM GOVERNOR STEVEN L. BESHEAR APPOINTING HON. NORMAN E. HARNED, BOWLING GREEN, KY, AND HON. PAUL W. BLAIR, MOREHEAD, KY, FOR THE PURPOSE OF HEARING AND DECIDING THIS CASE. (COPY OF EXECUTIVE ORDER MAILED CERTIFIED MAIL #7010 2780 0002 9989 7205) |
| 12 | 6/20/2014 | ** NOTE **: **CK** | TENDERED 5 COPIES OF APPELLEE'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR EXTENSION OF TIME TO FILE RESPONSE. |
| 13 | 6/25/2014 | SCHEDULE TO MOTION DOCKET: **MS** | NO RESPONSE FILED. |
| 14 | 6/25/2014 | SCHEDULE TO MOTION DOCKET: **MS** | NO RESPONSE FILED. |
| 15 | 6/25/2014 | SCHEDULE TO MOTION DOCKET: **MS** | NO RESPONSE FILED. |
| 16 | 7/2/2014 | MISC MOTION ORDER: **OM** | ORDER GRANTED APPELLEE'S MOTION TO SUBSTITUTE HON. S. TRAVIS MAYO AND HON. JESSICA R. C. MALLOY, IN PLACE OF HON. NICOLE H. PANG AND HONORABLE CLAY A. BARKLEY AS COUNSEL OF RECORD FOR APPELLEE. (COPY OF ORDER MAILED CERTIFIED MAIL #7010 2780 0002 9989 7299) |
| 17 | 7/2/2014 | MOTION TO DISMISS: **MD** | APPELLEE, HON. ROBERT MCGINNIS, FILED MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR EXTENSION OF TIME TO FILE HIS RESPONSE BRIEF. (RECEIPT LETTER MAILED CERTIFIED MAIL #7010 2780 0002 9989 7299) **(Due Date: 7/14/2014)** |
| 18 | 7/14/2014 | MOTION TO RECUSE JUSTICE: **MMREC** | APPELLANT FILED MOTION FOR THE RECUSAL OF JUSTICE VENTERS IN ALL MATTERS CONCERNING AMY JERRINE MISCHLER. (RECEIPT LETTER MAILED CERTIFIED MAIL #7010 2780 0002 9989 7274) **(Due Date: 7/25/2014)** |

| 19 | 7/14/2014 | MOTION TO RECUSE JUSTICE: **MMREC** | APPELLANT FILED MOTION FOR THE RECUSAL OF DEPUTY CHIEF JUSTICE NOBLE IN ALL MATTERS CONCERNING AMY JERRINE MISCHLER. (RECEIPT LETTER MAILED CERTIFIED MAIL #7010 2780 0002 9989 7274) **(Due Date: 7/25/2014)** |
| 20 | 7/14/2014 | RESPONSE TO MOTION TO DISMISS: **ZD** | APPELLANT FILED RESPONSE TO DENY MOTION TO DISMISS OR ALLOW FOR EXTENSION OF TIME TO FILE RESPONSE BRIEF. (RECEIPT LETTER MAILED CERTIFIED MAIL #7010 2780 0002 9989 7274) |
| 21 | 7/14/2014 | SCHEDULE TO MOTION DOCKET: **MS** | |
| 22 | 7/18/2014 | RESPONSE TO MISCELLANEOUS MOTIONS: **ZM** | APPELLEE FILED RESPONSE IN OPPOSITION TO MOTION FOR THE RECUSAL OF JUSTICE VENTERS IN ALL MATTERS CONCERNING AMY JERRINE MISCHLER. (RECEIPT LETTER MAILED CERTIFIED MAIL #7010 2780 0002 9989 7298) |
| 23 | 7/18/2014 | RESPONSE TO MISCELLANEOUS MOTIONS: **ZM** | APPELLEE FILED RESPONSE IN OPPOSITION TO MOTION FOR THE RECUSAL OF DEPUTY CHIEF JUSTICE NOBLE IN ALL MATTERS CONCERNING AMY JERRINE MISCHLER. (RECEIPT LETTER MAILED CERTIFIED MAIL #7010 2780 0002 9989 7298) |
| 24 | 7/18/2014 | SCHEDULE TO MOTION DOCKET: **MS** | |
| 25 | 7/18/2014 | SCHEDULE TO MOTION DOCKET: **MS** | |
| 26 | 10/23/2014 | MISC MOTION ORDER: **OM** | THE APPELLANT HAVING FILED A MOTION REQUESTING RECUSAL OF JUSTICE VENTERS, SAID MOTION IS HEREBY DENIED. (ORDER MAILED CERTIFIED MAIL #7010 2780 0002 9989 7304) |
| 27 | 10/23/2014 | MISC MOTION ORDER: **OM** | THE APPELLANT HAVING FILED A MOTION REQUESTING RECUSAL DEPUTY CHIEF JUSTICE NOBLE, SAID MOTION IS HEREBY DENIED. (ORDER MAILED CERTIFIED MAIL #7010 2780 0002 9989 7304) |

## Litigant Information

| Description | Primary | Name | Seq # |
|---|---|---|---|
| **Appellant** | Y | **AMY MISCHLER** | 1 |
| **Appellee** | Y | **HON ROBERT MCGINNIS SPECIAL JUDGE, PIKE COUNTY CIRCUIT COURT** | 2 |

## Party Attorneys

| Attorney Name | Party Name | Type |
|---|---|---|
| MALLOY JESSICA R.C. | MCGINNIS ROBERT | Appellee |
| MAYO STEVEN TRAVIS | MCGINNIS ROBERT | Appellee |
| MISCHLER AMY JERRINE | MISCHLER AMY | Appellant |

## Circuit Information

| County | Case # | Div | Court # | Judgment Date | Judge Name |
|---|---|---|---|---|---|
| FROM COURT OF APPEALS (122) | 06-F-00438 | CI | 1 | 2/18/2014 | SUSAN MULLINS JOHNSON |

## Associated Supreme Cases

| Case # |
|---|
| 0 results |

## Associated Other Cases

| Case # |
|---|
| 2013-CA-001299 |

# Supreme Court of Kentucky

| Appellant | **AMY MISCHLER** |
|---|---|
| | vs |
| **Appellee** | **HON ROBERT MCGINNIS SPECIAL JUDGE, PIKE COUNTY CIRCUIT COURT** |

## Case Information

| Case # | 2014-SC-000201 |
|---|---|
| Case Type | Original Action: (OA) |
| Document Type | Matter of Right Appeal: (MR) |
| Case Status | Active: (A) |
| Last Main Event | SCHEDULE TO MOTION DOCKET: (7/14/2014) |

## Step Sheet

| Step # | Date | Description | Memo |
|---|---|---|---|
| 1 | 2/18/2014 | JUDGMENT / ORIGINAL ACTION DATE: **JD** | |
| 2 | 4/16/2014 | NOTICE OF APPEAL-ORG. ACTION: **NA** | FORMA PAUPERIS GRANTED IN COURT OF APPEALS 4/16/2014. **(Due Date: 5/16/2014)** |
| 3 | 4/21/2014 | JUSTICE RECUSED FROM CASE: **RECUSE** | CHIEF JUSTICE JOHN D. MINTON HEREBY RECUSES HIMSELF FROM PARTICIPATING IN THIS ACTION. |
| 4 | 4/24/2014 | JUSTICE RECUSED FROM CASE: **RECUSE** | JUSTICE WILL T. SCOTT HEREBY RECUSES HIMSELF FROM PARTICIPATION IN THIS CASE. (COPY OF RECUSAL ORDER MAILED CERTIFIED MAIL #7010 2780 0002 9989 7113) |
| 5 | 5/13/2014 | LETTER TO GOVERNOR TO APPOINT SPECIAL JUSTICES: **SPGOV** | PURSUANT TO SECTION 110(3) OF THE CONSTITUTION, NOTICE SENT TO GOVERNOR STEVE BESHEAR CERTIFYING THE RECUSALS OF CHIEF JUSTICE JOHN D. MINTON, JR. AND JUSTICE WILL T. SCOTT. (COPY OF LETTER TO GOVERNOR MAILED CERTIFIED MAIL #7010 2780 0002 9989 7120) |
| 6 | 5/15/2014 | NOTICE OF CERTIFICATION-ORG. ACTION: **NC** | |
| 7 | 5/19/2014 | APPEAL FROM ORIGINAL ACTION FILED: **AF** | APPELLANT BRIEF FILED. *TIMELY FILED PURSUANT TO CR 76.40 (2) BY UPS* **(Due Date: 7/18/2014)** |

Exhibit 7

| 8 | 6/12/2014 | MISCELLANEOUS MOTIONS: **MM** | APPELLEE FILED MOTION TO SUBSTITUTE COUNSEL. (RECEIPT LETTER MAILED CERTIFIED MAIL #7010 2780 0002 9989 7182) **(Due Date: 6/25/2014)** |
|---|---|---|---|
| 9 | 6/16/2014 | MISCELLANEOUS MOTIONS: **MM** | APPELLANT FILED NOTICE OF RE-CERTIFICATION. (RECEIPT LETTER MAILED CERTIFIED MAIL #7010 2780 0002 9989 7199) **(Due Date: 6/25/2014)** |
| 10 | 6/16/2014 | EXECUTIVE ORDER APPOINTING SPECIAL JUSTICES: **SPAPPT** | RECEIVED COPY OF EXECUTIVE ORDER 2014-465 FROM GOVERNOR STEVEN L. BESHEAR APPOINTING HON. NORMAN E. HARNED, BOWLING GREEN, KY, AND HON. PAUL W. BLAIR, MOREHEAD, KY, FOR THE PURPOSE OF HEARING AND DECIDING THIS CASE. (COPY OF EXECUTIVE ORDER MAILED CERTIFIED MAIL #7010 2780 0002 9989 7205) |
| 11 | 6/20/2014 | ** NOTE **: **CK** | TENDERED 5 COPIES OF APPELLEE'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR EXTENSION OF TIME TO FILE RESPONSE. |
| 12 | 6/25/2014 | SCHEDULE TO MOTION DOCKET: **MS** | NO RESPONSE FILED. |
| 13 | 6/25/2014 | SCHEDULE TO MOTION DOCKET: **MS** | NO RESPONSE FILED. |
| 14 | 7/2/2014 | MISC MOTION ORDER: **OM** | ORDER GRANTING APPELLEE'S MOTION TO SUBSTITUTE HONORABLE S. TRAVIS MAYO AND JESSICA R.C. MALLOY, ASSISTANT ATTORNEYS GENERAL, IN PLACE OF HONORABLE NICOLE H. PANG AND CLAY A. BARKLEY, ASSISTANT ATTORNEYS GENERAL, AS COUNSEL OF RECORD FOR THE APPELLEE IN THE ABOVE-STYLED ACTION. MAILED CERTIFIED MAIL # 70102780000299897236 TO AMY MISCHLER. |
| 15 | 7/2/2014 | MOTION TO DISMISS: **MD** | HONORABLE ROBERT MCGINNIS, FILED MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR EXTENSION OF TIME TO FILE HIS RESPONSE BRIEF. MAILED CERTIFIED MAIL # 70102780000299897236 TO AMY MISCHLER. **(Due Date: 7/14/2014)** |
| 16 | 7/14/2014 | RESPONSE TO MOTION TO DISMISS: **ZD** | APPELLANT FILED RESPONSE TO DENY MOTION TO DISMISS OR ALLOW FOR EXTENSION OF TIME TO FILE RESPONSE BRIEF. (RECEIPT LETTER MAILED CERTIFIED MAIL #7010 2780 0002 9989 7274) |
| 17 | 7/14/2014 | SCHEDULE TO MOTION DOCKET: **MS** | |

# Litigant Information

| Description | Primary | Name | Seq # |
|---|---|---|---|

| Appellant | Y | AMY MISCHLER | 1 |
|-----------|---|--------------|---|
| Appellee | Y | HON ROBERT MCGINNIS SPECIAL JUDGE, PIKE COUNTY CIRCUIT COURT | 2 |

## Party Attorneys

| Attorney Name | Party Name | Type |
|---------------|------------|------|
| MALLOY JESSICA R.C. | MCGINNIS ROBERT | Appellee |
| MAYO STEVEN TRAVIS | MCGINNIS ROBERT | Appellee |
| MISCHLER AMY JERRINE | MISCHLER AMY | Appellant |

## Circuit Information

| County | Case # | Div | Court # | Judgment Date | Judge Name |
|--------|--------|-----|---------|---------------|------------|
| FROM COURT OF APPEALS (122) | 02-D-00202 | CI | 1 | 2/18/2014 | HON ROBERT MCGINNIS |
| FROM COURT OF APPEALS (122) | 02-D-00202-002 | CI | 1 | 2/18/2014 | HON ROBERT MCGINNIS |

## Associated Supreme Cases

| Case # |
|--------|
| 0 results |

## Associated Other Cases

| Case # |
|--------|
| 2013-CA-001300 |

# Supreme Court of Kentucky

| Appellant | **AMY MISCHLER** |
|---|---|
| | vs |
| Appellee | **HON ROBERT MCGINNIS SPECIAL JUDGE, PIKE COUNTY CIRCUIT COURT** |

## Case Information

| Case # | **2014-SC-000202** |
|---|---|
| Case Type | **Original Action: (OA)** |
| Document Type | Matter of Right Appeal: (MR) |
| Case Status | Active: (A) |
| Last Main Event | **SCHEDULE TO MOTION DOCKET: (7/14/2014)** |

## Step Sheet

| Step # | Date | Description | Memo |
|---|---|---|---|
| 1 | 2/18/2014 | JUDGMENT / ORIGINAL ACTION DATE: **JD** | |
| 2 | 4/16/2014 | NOTICE OF APPEAL-ORG. ACTION: **NA** | FORMA PAUPERIS FILED IN COURT OF APPEALS 4/16/2014. **(Due Date: 5/16/2014)** |
| 3 | 4/21/2014 | JUSTICE RECUSED FROM CASE: **RECUSE** | CHIEF JUSTICE JOHN D. MINTON HEREBY RECUSES HIMSELF FROM PARTICIPATING IN THIS ACTION. |
| 4 | 4/24/2014 | JUSTICE RECUSED FROM CASE: **RECUSE** | JUSTICE WILL T. SCOTT HEREBY RECUSES HIMSELF FROM PARTICIPATION IN THIS CASE. (COPY OF RECUSAL ORDER MAILED CERTIFIED MAIL #7010 2780 0002 9989 7113) |
| 5 | 5/13/2014 | LETTER TO GOVERNOR TO APPOINT SPECIAL JUSTICES: **SPGOV** | PURSUANT TO SECTION 110(3) OF THE CONSTITUTION, NOTICE SENT TO GOVERNOR STEVE BESHEAR CERTIFYING THE RECUSALS OF CHIEF JUSTICE JOHN D. MINTON, JR. AND JUSTICE WILL T. SCOTT. (COPY OF LETTER TO GOVERNOR MAILED CERTIFIED MAIL #7010 2780 0002 9989 7120) |
| 6 | 5/15/2014 | NOTICE OF CERTIFICATION-ORG. ACTION: **NC** | |
| 7 | 5/19/2014 | APPEAL FROM ORIGINAL ACTION FILED: **AF** | APPELLANT BRIEF FILED. *TIMELY FILED PURSUANT TO CR 76.40 (2) BY UPS* **(Due Date: 7/18/2014)** |

Exhibit 8

| 8 | 6/12/2014 | MISCELLANEOUS MOTIONS: **MM** | APPELLEE FILED MOTION TO SUBSTITUTE COUNSEL. (RECEIPT LETTER MAILED CERTIFIED MAIL #7010 2780 0002 9989 7182) **(Due Date: 6/25/2014)** |
| 9 | 6/16/2014 | MISCELLANEOUS MOTIONS: **MM** | APPELLANT FILED NOTICE OF RE-CERTIFICATION. (RECEIPT LETTER MAILED CERTIFIED MAIL #7010 2780 0002 9989 7199) **(Due Date: 6/25/2014)** |
| 10 | 6/16/2014 | EXECUTIVE ORDER APPOINTING SPECIAL JUSTICES: **SPAPPT** | RECEIVED COPY OF EXECUTIVE ORDER 2014-465 FROM GOVERNOR STEVEN L. BESHEAR APPOINTING HON. NORMAN E. HARNED, BOWLING GREEN, KY, AND HON. PAUL W. BLAIR, MOREHEAD, KY, FOR THE PURPOSE OF HEARING AND DECIDING THIS CASE. (COPY OF EXECUTIVE ORDER MAILED CERTIFIED MAIL #7010 2780 0002 9989 7205) |
| 11 | 6/20/2014 | ** NOTE **: **CK** | TENDERED 5 COPIES OF APPELLEE'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR EXTENSION OF TIME TO FILE RESPONSE. |
| 12 | 6/25/2014 | SCHEDULE TO MOTION DOCKET: **MS** | NO RESPONSE FILED. |
| 13 | 6/25/2014 | SCHEDULE TO MOTION DOCKET: **MS** | NO RESPONSE FILED. |
| 14 | 7/2/2014 | MISC MOTION ORDER: **OM** | ORDER GRANTING APPELLEE'S MOTION TO SUBSTITUTE HONORABLE S. TRAVIS MAYO AND JESSICA R.C. MALLOY, ASSISTANT ATTORNEYS GENERAL, IN PLACE OF HONORABLE NICOLE H. PANG AND CLAY A. BARKLEY, ASSISTANT ATTORNEYS GENERAL, AS COUNSEL OF RECORD FOR THE APPELLEE IN THE ABOVE-STYLED ACTION. MAILED CERTIFIED MAIL # 70102780000299897267 TO AMY MISCHLER. |
| 15 | 7/2/2014 | MOTION TO DISMISS: **MD** | HONORABLE ROBERT MCGINNIS, FILED MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR EXTENSION OF TIME TO FILE HIS RESPONSE BRIEF. MAILED CERTIFIED MAIL # 70102780000299897267 TO AMY MISCHLER. **(Due Date: 7/14/2014)** |
| 16 | 7/14/2014 | RESPONSE TO MOTION TO DISMISS: **ZD** | APPELLANT FILED RESPONSE TO DENY MOTION TO DISMISS OR ALLOW FOR EXTENSION OF TIME TO FILE RESPONSE BRIEF. (RECEIPT LETTER MAILED CERTIFIED MAIL #7010 2780 0002 9989 7274) |
| 17 | 7/14/2014 | SCHEDULE TO MOTION DOCKET: **MS** | |

# Litigant Information

| Description | Primary | Name | Seq # |
| --- | --- | --- | --- |

| Appellant | Y | AMY MISCHLER | 1 |
|---|---|---|---|
| Appellee | Y | HON ROBERT MCGINNIS SPECIAL JUDGE, PIKE COUNTY CIRCUIT COURT | 2 |

## Party Attorneys

| Attorney Name | Party Name | Type |
|---|---|---|
| MALLOY JESSICA R.C. | MCGINNIS ROBERT | Appellee |
| MAYO STEVEN TRAVIS | MCGINNIS ROBERT | Appellee |
| MISCHLER AMY JERRINE | MISCHLER AMY | Appellant |

## Circuit Information

| County | Case # | Div | Court # | Judgment Date | Judge Name |
|---|---|---|---|---|---|
| FROM COURT OF APPEALS (122) | 02-D-00202 | CI | 1 | 2/18/2014 | HON ROBERT MCGINNIS |
| FROM COURT OF APPEALS (122) | 02-D-00202-001 | CI | 1 | 2/18/2014 | HON ROBERT MCGINNIS |

## Associated Supreme Cases

| Case # |
|---|
| 0 results |

## Associated Other Cases

| Case # |
|---|
| 2013-CA-001301 |

# Supreme Court of Kentucky

| Appellant | **AMY MISCHLER** |
|---|---|
| | vs |
| Appellee | **HON ROBERT MCGINNIS SPECIAL JUDGE, PIKE COUNTY CIRCUIT COURT** |

## Case Information

| Case # | 2014-SC-000203 |
|---|---|
| Case Type | Original Action: (OA) |
| Document Type | Matter of Right Appeal: (MR) |
| Case Status | Active: (A) |
| Last Main Event | SCHEDULE TO MOTION DOCKET: (7/14/2014) |

## Step Sheet

| Step # | Date | Description | Memo |
|---|---|---|---|
| 1 | 2/18/2014 | JUDGMENT / ORIGINAL ACTION DATE: **JD** | |
| 2 | 4/16/2014 | NOTICE OF APPEAL-ORG. ACTION: **NA** | FORMA PAUPERIS FILED IN COURT OF APPEALS 4/16/2014. **(Due Date: 5/16/2014)** |
| 3 | 4/21/2014 | JUSTICE RECUSED FROM CASE: **RECUSE** | CHIEF JUSTICE JOHN D. MINTON HEREBY RECUSES HIMSELF FROM PARTICIPATING IN THIS ACTION. |
| 4 | 4/24/2014 | JUSTICE RECUSED FROM CASE: **RECUSE** | JUSTICE WILL T. SCOTT HEREBY RECUSES HIMSELF FROM PARTICIPATION IN THIS CASE. (COPY OF RECUSAL ORDER MAILED CERTIFIED MAIL #7010 2780 0002 9989 7113) |
| 5 | 5/13/2014 | LETTER TO GOVERNOR TO APPOINT SPECIAL JUSTICES: **SPGOV** | PURSUANT TO SECTION 110(3) OF THE CONSTITUTION, NOTICE SENT TO GOVERNOR STEVE BESHEAR CERTIFYING THE RECUSALS OF CHIEF JUSTICE JOHN D. MINTON, JR. AND JUSTICE WILL T. SCOTT. (COPY OF LETTER TO GOVERNOR MAILED CERTIFIED MAIL #7010 2780 0002 9989 7120) |
| 6 | 5/15/2014 | NOTICE OF CERTIFICATION-ORG. ACTION: **NC** | |
| 7 | 5/19/2014 | APPEAL FROM ORIGINAL ACTION FILED: **AF** | APPELLANT BRIEF FILED. *TIMELY FILED PURSUANT TO CR 76.40 (2) BY UPS* **(Due Date: 7/18/2014)** |

Exhibit 9

| 8 | 6/12/2014 | MISCELLANEOUS MOTIONS: MM | APPELLEE FILED MOTION TO SUBSTITUTE COUNSEL. (RECEIPT LETTER MAILED CERTIFIED MAIL #7010 2780 0002 9989 7182) **(Due Date: 6/25/2014)** |
|---|---|---|---|
| 9 | 6/16/2014 | MISCELLANEOUS MOTIONS: MM | APPELLANT FILED NOTICE OF RE-CERTIFICATION. (RECEIPT LETTER MAILED CERTIFIED MAIL #7010 2780 0002 9989 7199) **(Due Date: 6/25/2014)** |
| 10 | 6/16/2014 | EXECUTIVE ORDER APPOINTING SPECIAL JUSTICES: **SPAPPT** | RECEIVED COPY OF EXECUTIVE ORDER 2014-465 FROM GOVERNOR STEVEN L. BESHEAR APPOINTING HON. NORMAN E. HARNED, BOWLING GREEN, KY, AND HON. PAUL W. BLAIR, MOREHEAD, KY, FOR THE PURPOSE OF HEARING AND DECIDING THIS CASE. (COPY OF EXECUTIVE ORDER MAILED CERTIFIED MAIL #7010 2780 0002 9989 7205) |
| 11 | 6/20/2014 | ** NOTE **: CK | TENDERED 5 COPIES OF APPELLEE'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR EXTENSION OF TIME TO FILE RESPONSE. |
| 12 | 6/25/2014 | SCHEDULE TO MOTION DOCKET: MS | NO RESPONSE FILED. |
| 13 | 6/25/2014 | SCHEDULE TO MOTION DOCKET: MS | NO RESPONSE FILED. |
| 14 | 7/2/2014 | MISC MOTION ORDER: OM | ORDER GRANTING APPELLEE'S MOTION TO SUBSTITUTE HONORABLE S. TRAVIS MAYO AND JESSICA R.C. MALLOY, ASSISTANT ATTORNEYS GENERAL, IN PLACE OF HONORABLE NICOLE H. PANG AND CLAY A. BARKLEY, ASSISTANT ATTORNEYS GENERAL, AS COUNSEL OF RECORD FOR THE APPELLEE IN THE ABOVE-STYLED ACTION. MAILED CERTIFIED MAIL # 70102780000299897250 TO AMY MISCHLER. |
| 15 | 7/2/2014 | MOTION TO DISMISS: MD | HONORABLE ROBERT MCGINNIS, FILED MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR EXTENSION OF TIME TO FILE HIS RESPONSE BRIEF. MAILED CERTIFIED MAIL # 70102780000299897250 TO AMY MISCHLER. **(Due Date: 7/14/2014)** |
| 16 | 7/14/2014 | RESPONSE TO MOTION TO DISMISS: ZD | APPELLANT FILED RESPONSE TO DENY MOTION TO DISMISS OR ALLOW FOR EXTENSION OF TIME TO FILE RESPONSE BRIEF. (RECEIPT LETTER MAILED CERTIFIED MAIL #7010 2780 0002 9989 7274) |
| 17 | 7/14/2014 | SCHEDULE TO MOTION DOCKET: MS | |

# Litigant Information

| Description | Primary | Name | Seq # |
|---|---|---|---|

| Appellant | Y | AMY MISCHLER | 1 |
|---|---|---|---|
| Appellee | Y | HON ROBERT MCGINNIS SPECIAL JUDGE, PIKE COUNTY CIRCUIT COURT | 2 |

## Party Attorneys

| Attorney Name | Party Name | Type |
|---|---|---|
| MALLOY JESSICA R.C. | MCGINNIS ROBERT | Appellee |
| MAYO STEVEN TRAVIS | MCGINNIS ROBERT | Appellee |
| MISCHLER AMY JERRINE | MISCHLER AMY | Appellant |

## Circuit Information

| County | Case # | Div | Court # | Judgment Date | Judge Name |
|---|---|---|---|---|---|
| FROM COURT OF APPEALS (122) | 02-D-00202 | CI | 1 | 2/18/2014 | HON ROBERT MCGINNIS |
| FROM COURT OF APPEALS (122) | 02-D-00202-003 | CI | 1 | 2/18/2014 | HON ROBERT MCGINNIS |

## Associated Supreme Cases

| Case # |
|---|
| 0 results |

## Associated Other Cases

| Case # |
|---|
| 2014-CA-001302 |

AOC - 275.1    Doc. Code: COM
Rev. 5-02
Page 1 of 3
Commonwealth of Kentucky
Court of Justice
KRS Chapter 403

**DOMESTIC VIOLENCE
PETITION / MOTION**

Case No. _D2-N-000201-XX_
Court _family_
County _Pike_

**PETITIONER**

JONAH    L.    STEVENS

First     Middle     Last

VS.

**RESPONDENT**

Kim (Amy)    L.    ~~ARROWOOD~~ MOCNIEX.

First     Middle     Last

*This time it's Jonah L. Stevens for Jonah Lee Stevens.*

**Information about Respondent:**

Current Residence: _43 Joe Naugren Lane Pikeville Ky 41501_

*This attorney is claiming that*

Usual Residence: _same_

Occupation: _____

Employer Name: _Family Dollar_

Employer Address: _____

*domestic violence took place on August 5, 2002.*

| Sex | Race | Birthdate | Height | Weight | SSN | Operator License # | State |
|-----|------|-----------|--------|--------|-----|--------------------|-------|
| F | W | _8 | 5'5" | 270 | L-R | ViX | Ky |

**CAUTION:** [ ] Weapon involved   [ ] Believed to be armed and dangerous

_____ e Parties have a [ ] custody [ ] dissolution action pending in _____ Circuit Court.

[ ] Petitioner, [X] Petitioner, on behalf of minor child(ren) says that on _____, 2___, in _____

County, Kentucky, the above-named Respondent engaged in act(s) of domestic violence and abuse, in that*:

_ON 8-5-2002. RESPONDENT BECAME AGGRAVATED IN RAGE WHERE A FIGHT BEGAN THAT PETITIONER HAD OVER SEVERAL FEMALE_ [illegible handwritten statement continues]

Copies to:
Court File
Petitioner
Respondent (copy with blacked-out portion served with summons)
Local Department for Community Based Services CFC
Court Clerk in County of Petitioner's usual residence, if different
Law enforcement agency(ies) designated for service
Law enforcement agency/dispatch center responsible for LINK entry

*If additional space is needed for the factual statement, type on a separate sheet of paper and attach to the Petition/Motion.

SURE ENTRIES IN BOXES ARE COMPLETE, ACCURATE AND LEGIBLE TO ALLOW PROMPT ENTRY INTO LINK IF ORDER OR
HMOMS ISSUES.
Page ____ of ____

PLAINTIFF'S

Exhibit 3

Exhibit 10

5.1
-02
₃ 3 of 3

Case No. 02-D-U0202-02

## MOTION FOR RELIEF

[ ] Petitioner OR [X] Petitioner, on behalf of minor child(ren), requests that the Court:

(1) Issue an emergency protective order based on the presence of an immediate and present danger of domestic violence and abuse to:

[ ] restrain Respondent from committing any further acts of domestic violence and abuse; and/or

[ ] restrain Respondent from any contact or communication with Petitioner except as directed by the Court; and/or

[ ] restrain Respondent from disposing of, or damaging, any property of the parties; and/or

[ ] direct Respondent to vacate residence shared by the parties located at *(specify address):*

[X] grant temporary custody of minor child(ren).

[ ] award **temporary child support** in accordance with Ky Child Support Guidelines. I will, if possible, document income of both parents at the hearing by producing income tax returns, paystubs or employer statements. If either parent is self-employed I will, if possible, produce receipts and expense statements. I understand Respondent will also be notified by **summons** to produce these documents.

[ ] grant other relief which would assist in stopping further domestic violence *(describe)*
___ PRO PERSONAL ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ and,
___ REQUEST THAT COURT ORDER A ___ ___ ___ ___ ___ ___ ___ ___

(2) **Cause a summons to be issued for Respondent**, setting a date, time and place for a hearing to consider all relief to which Petitioner may be entitled, including those matters contained in paragraph (1) on this page of this motion, and as appropriate, mandatory counseling for Respondent and other relief as may be authorized by statute.

Petitioner states the allegations contained herein are true on information and belief.

_____
Petitioner's / Movant's Signature

*Notice that the "must be signed" box is blank and the date is July 22, 2002*

Subscribed and sworn to before me on _____, 2___
Date: _____, 2___

_____ *Name
_____ Title

*Must be signed by circuit clerk or other individual authorized by Court to provide and verify emergency petitions.

COURT ACTION:

EPO/Summons: [ ] Issued [ ] Denied because: _____

Summons: [✓] Issued [ ] Denied because: _____

Date: July 22, 2002                                    _____ Judge

# ORDER OF PROTECTION

☑ **DOMESTIC VIOLENCE ORDER**
☐ **AMENDED DOMESTIC VIOLENCE ORDER**

AOC-275.3
Rev. 10-01
Doc. Code: ODV
Page 1 of 3

| Case No. | 02-D-0020X-00X |
|---|---|
| Court | Family |
| County | Pike | State | KY |

## PETITIONER/PLAINTIFF

Jonah        L.        Stevens
First        Middle        Last

And/or on behalf of minor family members(s):(list name and DOB) _____

## PETITIONER/PLAINTIFF IDENTIFIERS

9-##-62

Date of Birth of Petitioner
Other Protected Persons/DOB:

_____

## V.

## RESPONDENT/DEFENDANT

Amy        L.        Mischler
First        Middle        Last

Relationship to Petitioner: ☐ spouse ☑ former spouse ☐ unmarried, child in common ☐ unmarried, currently or formerly living together ☐ child ☐ stepchild ☐ parent ☐ grandparent ☐ other relative (specify)

_____

Respondent Address: 43 New Hampton Road
Pikeville, KY    41501

## RESPONDENT/DEFENDANT IDENTIFIERS

| SEX | RACE | DOB | | HT | WT |
|---|---|---|---|---|---|
| F | W | 6-##-68 | | 5' 5" | 200 |
| EYES | HAIR | Social Security # | | | |
| | | | | | |
| DRIVERS LICENSE # | | | STATE | EXP. DATE | |
| | | | | | |

Distinguishing Features _____

**CAUTION:**
☐ Weapon involved ☐ Armed and Dangerous ☐ Divorce/Custody/Visitation case pending

## THE COURT HEREBY FINDS:

That it has jurisdiction over the parties and subject matter, and the Respondent has been provided with reasonable notice and opportunity to be heard.

☐ Additional findings of this order are as set forth below.

## THE COURT HEREBY ORDERS:

☐ That the above-named Respondent be restrained from committing further acts of abuse or threats of abuse.

☐ That the above-named Respondent be restrained from any contact with the Petitioner/Plaintiff.

☐ Additional terms of this order are as set forth below.

The terms of this order shall be effective until _____ _____

## WARNING TO RESPONDENT:

This order shall be enforced, even without registration, by the courts of any state, the District of Columbia, any U.S. Territory, and may be enforced by Tribal Lands (18 U.S.C. Section 2265). Crossing state, territorial, or tribal boundaries to violate this order may result in federal imprisonment (18 U.S.C. Section 2262).

Federal law provides penalties for possessing, transporting, shipping, or receiving any firearm or ammunition (18 U.S.C. Section 922(g)(8)).

Only the Court can change this order.

Exhibit 11

**ADDITIONAL FINDINGS:**

❑     For the Petitioner against the above-named Respondent in that it was established, by a preponderance of the evidence, that an act(s) of domestic violence or abuse has occurred and may again occur; or

☒     For the Respondent in that it was not established, by a preponderance of the evidence, that an act(s) of domestic violence or abuse has occurred and may again occur; or

❑     The ❑ Petitioner ❑ Respondent has filed a motion to amend the Domestic Violence Order dated

_____

**ADDITIONAL TERMS OF ORDER:**

That the above-named Respondent surrender to the Court, or to the officer serving the order, Respondent's Kentucky license to carry concealed firearms or other deadly weapons pursuant to KRS 237.110(11).

❑     Kentucky license to carry surrendered to Court.

❑     That the Petition/Motion to Amend be ❑ Dismissed ❑ Denied.

❑     That the motion to amend is sustained. ❑ That the prior order is amended pursuant to a show cause hearing. The prior order is amended as follows, and all prior inconsistent provisions of such prior order are superseded

    as follows: _____

_____

❑     That the above-named Respondent is restrained from any contact or communication with the above-named Petitioner;

❑     That Respondent shall remain at all times and places at least _____ feet away from Petitioner and members of Petitioner's family or household;

    ❑     except as follows: _____

_____

❑     That the above-named Respondent be restrained from disposing of, or damaging, any property of the parties;

❑     That the above-named Respondent vacate the residence shared by the parties located at

_____

(specific address)

❑     In accordance with the criteria of KRS 403.270, 403.320, and 403.420, the Uniform Child Custody Jurisdiction Act and 28 U.S.C.A. Section 1738A temporary custody of:

_____

_____

_____

(List names, ages and sex of each child)

be awarded to _____

❏ That the above-named Respondent, is ordered to pay temporary support in the amount of

$ _____ as set forth in form AOC 152 Kentucky Uniform Child Support Order. **(AOC 152 shall also be used if child support is ordered.)**

❏ That the above-named Respondent participate in available counseling services, described as

_____

❏ In order to assist in eliminating future acts of domestic violence and abuse, _____

_____

_____

_____

❏ (To be used only in dissolution or custody action)
That the court finds that the victim has requested mediation and the victim's request is voluntary and not the result of coercion and that mediation is a realistic and viable alternative to or adjunct to the issuance of this

order, therefore that available mediation services be ordered as follows: _____

_____

The terms of this order shall not exceed three years from date of issue pursuant to KRS 403.750(2). The Petitioner may return to the court which issued this order before expiration of this order to request that it be reissued for an additional period not to exceed three years. **The number of times this Order may be reissued shall not be limited. KRS 403.750(3).**

**Violation of this order shall constitute contempt of this Court and may result in criminal charges. Any peace officer shall arrest the Respondent without a warrant upon probable cause that a violation of this order has occurred. Pursuant to 18 U.S.C. Section 922(g)(8), it may be a federal violation to purchase, receive or possess a firearm or ammunition while subject to this order.**

| | |
|---|---|
| 05-07-2002 | |
| **Date** | **Judge** |

Copies to:
- Court file
- Petitioner
- Respondent
- Court clerk in county of Petitioner's usual residence, if different.
- Law enforcement agency/dispatch center responsible for LINK entry.
- Law enforcement agency(cies) designated for service.
- Local Department for Social Services, Cabinet for Families & Children.

**Ensure entries in boxes are complete and legible. Without the correct information in each box the order WILL NOT be entered into the LINK system.**

COMMONWEALTH OF KENTUCKY
PIKE DISTRICT COURT
FAMILY COURT DIVISION

ENTERED

SEP 2 3 2002

DAVID DEEL
PIKE CIRCUIT/DISTRICT CLERK
BY_____ COURT
_____ D.C.

BEFORE: HON. JULIE PAXTON, SPECIAL JUDGE

ACTION NO.    02-D-00202-001
              02-D-00202-002

AMY MISCHLER

                                        PETITIONER

vs.                      ORDER

JONAH STEVENS

                                        RESPONDENT

\*\* \*\* \*\* \*\* \*\* \*\* \*\* \*\* \*\*

This cause having come before the Court on cross-petitions for
the issuance of a Domestic Violence Order and the Petitioner , Amy
Mischler, having been present and unrepresented by counsel, and the
Respondent, Jonah Stevens, having been present and represented by
Agnes Sipple Trujillo, Esq. and the Court having heard the
testimony of the parties and being otherwise sufficiently advised,
IT IS HEREBY ORDERED AS FOLLOWS:

   1.    Both petitions be and the same are hereby DISMISSED;

   2.    The Court notes that certain motions regarding custody
and visitation have been filed in the parties' divorce case, but
that the following custody and visitation arrangement is acceptable
pending a hearing on said motions.  Pending such a hearing, the
parties' minor children shall remain at the at the Respondent's
mother's home.

   3.    The Respondent shall have access to his minor children up
through 6:30 p.m. each evening, Monday through Friday, with the
right to make arrangements for the parties' oldest child to be

Exhibit 12



EXHIBIT
B

taken and picked up from school.

4. The Petitioner shall have access to the parties' minor children from Friday at 6:00 p.m. until Sunday at 6:00 p.m. The parties' minor children shall be picked up and returned to the Respondent's mother's home outside of the presence of the other party. The parties' children shall remain in Pike County during the pendency of this action.

IT IS SO ORDERED this the 18 day of September, 2002.

_____
Julie Paxton, Special Judge

CERTIFICATE OF SERVICE:

I certify that a true copy of the foregoing Order has been mailed to all attorneys and/or parties of record on this the 23 day of September, 2002.

DAVID DESKINS, CLERK
PIKE CIRCUIT COURT

By: _____ D.C.

**21.580 Senior Status Program for Special Judges.** (Effective until July 1, 2007. See 5/23/2007 LRC note).

(1) As a pilot project to determine the effectiveness of using senior retired judges to combat backlog and delay in Kentucky courts, there is hereby created a "Senior Status Program for Special Judges." The program shall be implemented as follows:

    (a) KRS 21.400(1) and any other provision in KRS Chapter 21 to the contrary notwithstanding, a member who retires at a time when combining his total years of judicial service credit and his age equals or exceeds the number seventy-five (75), may elect, within ninety (90) days following retirement, to participate in the "Senior Status Program for Special Judges," if he complies with the provisions of this subsection. In that event, the member shall be entitled to a service retirement allowance, commencing at the member's normal retirement age, payable monthly during his lifetime in an amount equal to five percent (5%) of his final compensation multiplied by the number of years of his judicial service, not to exceed twenty (20) years of judicial service at the five percent (5%) factor, not to exceed one hundred percent (100%) of final compensation. "Final compensation", notwithstanding any provision to the contrary, for all members retiring under any provision of KRS 21.345 to 21.570 or this section, or similar statutes governing the same positions, as defined in KRS 21.400 shall be based on a period of thirty-six (36) months. Any nonjudicial time shall be counted as is otherwise provided in KRS Chapter 21, but in no event shall service retirement allowance exceed one hundred percent (100%) of final compensation.

        1. In the event the retiring judge elects to retire as a "Senior Status Special Judge" under this subsection, he shall commit to serve, upon appointment by the Chief Justice of the Commonwealth, as special judge for one hundred twenty (120) work days per year for a term of five (5) years without compensation other than the retirement benefits under this subsection. The Senior Status Special Judge may agree to work more than one hundred twenty (120) days in any year within the five (5) years of service; however, the Senior Status Special Judge shall be compensated as otherwise provided by law, in addition to his retirement benefits, for any days served in excess of one hundred twenty (120) in that year. If the Senior Status Special Judge has not served a total of six hundred (600) days within the five (5) year period outlined in this subsection, the Chief Justice shall require the Senior Status Special Judge to serve at no additional compensation to the Senior Status Special Judge, until the six hundred (600) day period is served by the Senior Status Special Judge. The Senior Status Special Judge and the Chief Justice may agree in writing to serve less than the one hundred twenty (120) days in any one (1) or more of the five (5) years; however, any of the days not served in a given year shall be served at the end of the five (5) year period set forth in this subsection.

        2. Should any member electing to retire under the Senior Status Program

Exhibit 13

for Special Judges fail, when ordered by the Chief Justice to serve the requisite number of days not to exceed one hundred twenty (120) days a year for the five (5) year period outlined in this subsection, unless otherwise agreed in writing, he shall no longer be eligible for benefits computed under this subsection and shall return to the benefits otherwise provided under this chapter.

3. Subject to Section 110(5)(b) of the Kentucky Constitution, the Chief Justice shall give due regard, when practical, to the desirability of appointing Senior Status Special Judges to serve within their judicial region as defined by the regional administration charter.

(b) The inviolable contract provisions of Kentucky law, KRS 21.480, shall apply during the period of time that KRS 21.580 is effective; however, no other provisions of 2000 Ky. Acts ch. 305 shall be considered subject to an inviolable contract of the Commonwealth.

(c) Nothing contained in this section shall be construed to invalidate provisions in the current law which require a penalty for retiring before the normal retirement age.

(2) The Senior Status Program for Special Judges created by this section shall be open to any member who is a judge in office on June 24, 2003, and who subsequently retires as a Senior Status Special Judge on or before January 31, 2009.

Effective: June 24, 2003

History: Amended 2003 Ky. Acts ch. 128, sec. 6, effective June 24, 2003. -- Amended 2002 Ky. Acts ch. 258, sec. 1, effective July 15, 2002. -- Repealed 2000 Ky. Acts ch. 305, sec. 4, effective July 1, 2007 -- Created 2000 Ky. Acts ch. 305, sec. 1, effective July 14, 2000.

Legislative Research Commission Note (5/23/2007). On May 23, 2007, the Franklin Circuit Court held that the enrollment and expiration dates for the Senior Status Program for Special Judges established by this statute were extended to January 31, 2009. George v. Board of Trustees of Judicial Form Retirement System, 07-CI-00587.

Legislative Research Commission Note (6/24/2003). 2000 Ky. Acts ch. 305, sec. 1, created KRS 21.580, which established the Senior Status Program for Special Judges. Section 4 of the same Act repealed KRS 21.580 effective July 1, 2007. Thereafter, 2002 Ky. Acts ch. 258, sec. 1, amended KRS 21.580 to change the retirement date from June 30, 2007, to January 31, 2009, and 2003 Ky. Acts ch. 128, sec. 6, amended KRS 21.580 to extend eligibility for the program to judges in office on June 24, 2003. Neither of these Acts specifically addresses the repeal set out in the 2000 Act.

to inform the Chief Justice, or his designee, of any formal complaint, investigation, charge or proceeding filed and/or pursued by the JCC, or any discipline imposed upon the retiring Justice or Judge without the filing of a formal charge or proceeding.

Upon verification that the retiring Justice or Judge qualifies to participate in the program, the member shall complete a **Letter of Election** which will be forwarded to the member by the JRP. In accord with the provisions of KRS 21.580, the **Letter of Election** shall be returned to the JRP within 90 days of retirement.

## IV. Requirements

A.) A member who elects to retire as a Senior Judge shall commit to serve, upon assignment by the Chief Justice, one hundred twenty (120) work days per year for a term of five (5) years without compensation other than the enhanced retirement benefits specified in I. (C).

B.) If the Senior Judge has not served a total of six hundred (600) work days within the five (5) year period, the Chief Justice shall require the Senior Judge to serve at no additional compensation until the six hundred (600) work day period is satisfied, except in the event of death or permanent disability of the Senior Judge.

C.) The Chief Justice and the Senior Judge may agree in writing that the Senior Judge may serve less than the one hundred twenty (120) work days in any one or more of the five (5) years; however, any of the work days not served in a given year shall be served at the end of the five (5) year period. The six hundred (600) work days must be completed within ten (10) years of the Senior Judge's retirement date.

D.) Should a Senior Judge fail, when ordered by the Chief Justice, to serve the requisite number of days not to exceed one hundred twenty (120) work days a year for the five (5) year period, unless otherwise agreed in writing, the Senior Judge shall no longer be eligible for enhanced retirement benefits and shall return to the benefits otherwise provided under KRS Chapter 21.

E.) Credit toward the one hundred twenty (120) work day requirement shall be earned in daily Monday through Friday increments. Service performed on Saturday, Sunday or state holidays shall not be prohibited, but must be pre-approved by the SJP Administrator. In response to an assignment by the Chief Justice, research, preparation of orders and findings of fact and opinions, training, travel, and other matters normally associated with the performance of judicial services shall be credited toward the one hundred

5



Exhibit 14

# INVESTIGATIVE REPORT

## Cabinet for Health and Family Services

## OFFICE OF
## INSPECTOR GENERAL

**ROBERT J. BENVENUTI III, Esq., INSPECTOR GENERAL**



**Allegations of misconduct by certain employees of the Department for Community Based Services' Lincoln Trail Region related to the removal of children and/or the termination of parental rights based on alleged abuse, neglect, or dependency.**

**Report Date: January 10, 2007**

Exhibit 15

completed, although visits and conversations with the biological father were documented in the file, as well.

2. Both current and former workers report documentation was omitted or added to case files to intentionally mislead the court. In some cases, this was to assure children were returned to their biological parents and, in other cases, it was reportedly to assure the Judge would rule for termination of the parents' rights. One worker conveyed that a frontline supervisor, at the direction of a regional supervisor, instructed her to enter information/contacts into a file for incidents that occurred prior to the worker being assigned the case. The former caseworker had already resigned from DCBS, so that worker was unable to verify if the information she was being asked to enter into the file was accurate.

3. There have been instances of dishonesty by DCBS employees, in documentation, in court, and in interactions with clients. OIG investigators have determined home visits and attempted home visits were documented in case files and the TWIST computer system that did not in fact occur. One caseworker advised a biological mother that her child had been to see a doctor, since the mother's last visit, without knowing if the child had seen a doctor or not. A caseworker advised she was unaware of any information regarding a child's parents or grandparents when there was a large volume of information on the relatives in the case file and the TWIST computer system. A veteran caseworker used the term "sexual predator" to describe a parent in the TWIST computer system and the case file. She stated the use of this was appropriate because a professional assessor had used this term and she was merely repeating his term. The caseworker used the term in a July 2005 court report and the assessment report she claimed to have obtained the term from was not completed until almost seven months later. Additionally, a review of the assessment report determined the term "sexual predator" was not used in the assessment report, so it would have been impossible for the term to have been derived from this report.

4. DCBS staff has routinely signed official documents as other staff members, usually supervisors. These documents included timesheets, travel vouchers for reimbursement of travel expenses, reports to the courts, purchase requests, and computer access approval forms.

5. During the 2001 Council on Accreditation (COA) review, Lincoln Trail regional supervisors manipulated caseload assignments and reported them to COA as lower than they actually were. Reportedly, this was intended to assure compliance with COA standards. Workers reported their cases were reassigned to them when COA left. Regional supervisors reported this act was not repeated during the 2006 COA review because they decided to let COA see the situation as it really was and, therefore, the caseloads were out of compliance.

6. In 2000, an SRA falsely advised the Cabinet that an employee's workstation was an office location closer to the employee's residence than her actual workstation. The primary benefit would be that the employee would be permitted to claim travel reimbursement for driving to work, daily. Descending SRAs permitted the situation to continue. Although other employees requested the same benefit, their requests were denied and they were advised this was a decision made by a previous supervisor and a previous administration, and it could not be changed.

## "Fast Tracking" Adoptions:

7. The Adoptions and Safe Families Act, Public Law 105-89 (ASFA) was signed into law in 1997. It was intended to prevent children from languishing in foster care until they were no longer likely to be adopted. This law mandated permanency hearings to be held no later than 12 months after a child enters out-of-home care (OOHC). It also required state child welfare agencies to monitor the time children remain in care, and required the initiation of TPR proceedings for children who have been in state custody for 15 of the most recent 22 months. Only three circumstances are to be considered as reason

| Case Number | Allegation | Type of Issues | Findings | Actions |
|---|---|---|---|---|
| 2006-027-047 | Falsification of Records and Dishonesty | Falsely accused client of threatening her, entered false documentation into a client's file, falsified testimony in court. | Substantiated | Referral to the Hardin County Commonwealth's Attorney and the CHFS Office of Human Resource Management |
| 2006-028-047 | Falsification of Records and Unprofessional Conduct | Did not report all facts to the court, cursed and struck client, rude to clients, threatened clients, falsely reported information to the court, falsely signed a document as another employee. | Substantiated | Referral to the Hardin County Commonwealth's Attorney and the CHFS Office of Human Resource Management |
| 2006-029-047 | Falsification of Records | Falsely reported home visits and contacts with clients. | Substantiated | Referral to the Hardin County Commonwealth's Attorney and the CHFS Office of Human Resource Management |
| 2006-041-047 | Breach of Confidentiality | Divulged information to a person not permitted access to information. | Unsubstantiated | No action required |
| 2006-118-047 | Falsification of Records | Completed official reports with false documentation. | Substantiated | Referral to the Hardin County Commonwealth's Attorney and the CHFS Office of Human Resource Management |
| 2006-119-047 | Falsification of Records, Divulged Computer Password, and Retaliation Against Employees | Authorized administrative staff to sign as a supervisor, provided computer password to subordinates, instructed subordinates to remove documentation from the case file, aware of intentional lack of documentation in file and did not instruct subordinate to complete documentation, recommended disciplinary action against a subordinate she had previously blamed for initiating the OIG investigation. | Substantiated | Referral to the Hardin County Commonwealth's Attorney and the CHFS Office of Human Resource Management |

20

| Case Number | Allegation | Type of Issues | Findings | Actions |
|---|---|---|---|---|
| 2006-120-047 | Falsification of Records, Unprofessional Conduct, and Retaliation Against Employees | Yelled at subordinates, instructed subordinate to delete a contact in TWIST, solicited complaints on a subordinate, from other employees, she had previously blamed for initiating the OIG investigation. | Substantiated | Referral to the Hardin County Commonwealth's Attorney and the CHFS Office of Human Resource Management |
| 2006-147-047 | Falsification of Records | Falsely documented information in case files and reports. | Substantiated | Referral to the Hardin County Commonwealth's Attorney and the CHFS Office of Human Resource Management |
| 2006-148-047 | Falsification of Records | Falsely signed other employees' names to official documents. | Substantiated | Referral to the Hardin County Commonwealth's Attorney and the CHFS Office of Human Resource Management |
| 2006-149-047 | Falsification of Records | Instructed a subordinate to include false documentation in case files. | Substantiated | Referral to the Hardin County Commonwealth's Attorney and the CHFS Office of Human Resource Management |
| 2006-150-047 | Falsification of Records | Falsely signed a supervisor's name to an official document. | Substantiated | Referral to the Hardin County Commonwealth's Attorney and the CHFS Office of Human Resource Management |

Further, it will eliminate the perception, whether accurate or not, that children removed in such cases are being removed by social service workers for the purpose of punishing the parent for originally denying access.

5. DCBS record management processes and systems are inadequate and must be improved to ensure the integrity of the case reports and the recommendations and actions that flow from the same. Again, we recommend that Cabinet officials look to the Kentucky State Police for model processes while developing and implementing a records management system.

6. DCBS Permanency and Protection staff should receive consistent and repetitive training with regard to the elements required to substantiate abuse, neglect, or dependency. These elements should be standardized across the state and easily identifiable. For example, DCBS policy should mirror KRS (i.e. must have "physical injury" or "serious physical injury" to substantiate physical abuse) and define what elements are necessary to substantiate the abuse. Workers appear confused about what actually exemplifies abuse. For example, some social service workers have told parents it is "illegal" to spank their children.

7. The CHFS Office of the Ombudsman is a greatly underutilized resource in ensuring the integrity of the DCBS actions. Unfortunately, the Office of the Ombudsman has historically and is currently viewed by some individuals as an unnecessary intermeddler. DCBS and the Office of the Ombudsman should work together to develop and implement any and all necessary policy and procedures to better ensure that the two departments work cooperatively to ensure better oversight of the process and that quality control measures are in place to detect process failures and/or weaknesses. At a minimum, any complaint justified by the Office of the Ombudsman should result in a written action plan for the resolution of the issue, through the chain of command, from the SRA to the DCBS Commissioner's Office.

8. Under the current process, the vast majority of TPR cases proceed to court based solely on a review conducted by DCBS regional staff and a Cabinet regional attorney. Based on the gravity of the action, we believe all TPR cases should be reviewed and approved by DCBS Central Office officials prior to petitioning the court for termination. This review should include not only the information contained in the TWIST computer system and the hard case file, but should include interviews with the biological parents and relatives attempting to obtain custody of the child, if any, as well as the social service worker(s) involved to assure the required services have in fact been offered/provided and not just documented as having been offered/provided and that the case is, in fact, appropriate for termination.

9. DCBS management and supervisory staff should follow an established organizational chain of command to ensure that the SRA does not inappropriately defer or abuse his/her management responsibilities within the region and that the SRA's management ability is reviewed by Central Office supervision, to assure accountability and compliance with applicable laws and regulations as well as with agency standard operating procedures. Additional training should be provided to all management and supervisory personnel on methods of supervision and accountability, as well as interacting with clients, community partners, law enforcement and the courts. This training should include the areas of constitutional law, perjury, falsification of records, and the integrity of the court system and penalties associated with non-compliance related to the same.

10. All TWIST records should identify any edits and the date/time of any approvals completed by supervisors. TWIST records should reflect the entry date and time, in addition to the reported date and time of the contact. Such efforts would prevent the occurrence of missing or altered documentation, which several workers claim to have experienced. Additionally, these modifications would provide

immediate access to the entry documentation information so readers could readily identify any discrepancies or delays in the documentation.

11. Client case information is presently contained in two locations, the TWIST computer system and the hard copy case file, requiring duplication of workers' efforts and limited access to all the information available in the case. All documents should be scanned and entered into TWIST, to eliminate the need for a hard copy case file. This would reduce the caseworker's workload, abolish the current need to duplicate records, and provide agency oversight into cases via the ability to access the entire record without traveling to the local office and reviewing a case file. This ability to provide oversight could eliminate the need to contact the case manager to determine what information is available and what documentation has been completed. Additionally, this would permit regional and Central Office supervisors to hold field and regional staff accountable for timely, accurate, and factual documentation.

12. Relatives are often not advised of termination of parental rights proceedings involving family members, since they are not legally an interested party. KRS 625.060 limits the parties to the petitioner, the Cabinet, and the biological parents in an involuntary termination of parental rights hearing. A legislative modification should be considered which would mandate that the Cabinet provide notice to the court of all relatives who have previously requested custody of the children, unless such relatives have been determined to be unsuitable for placement.

13. A reason initially offered for why DCBS would favor adoption over other permanency options was the federal incentive program. This argument does not stand up to scrutiny. Nonetheless, non-adoptive permanency options should be reviewed by Cabinet officials. Kentucky does receive federal funding when children are adopted. However, the amount of adoption subsidies paid to adoptive parents each year far exceeds the adoption incentives received from the federal government. The state may receive from $4,000 to $6,000 per adopted child, depending on the child's needs. Kentucky received just over $1 million in incentives in the 2005 federal fiscal year. During the state fiscal year 2005, the Cabinet paid families more than $37 million in adoption subsidies. These subsidies typically range from $600 to $1,200 per month per child. According to the December 2006 report from the Auditor of Public Accounts, 98% of the 876 children adopted in federal fiscal year 2005 qualified for adoption subsidies. Only 80% of those children were considered a special needs child, and 41% of the total amount was considered special needs due to being a member of a sibling group. The lowest amount paid to Kentucky foster parents is approximately $600 per child per month, but may be as high as $5,671, depending on the child's needs. The Adoption and Safe Families Act of 1997 encourages relative placement. However, it appears relatives are not the preferred placement option when children are removed from their parents' home, as evidenced by the 6.5%, statewide, who are placed with relatives.[17] Since Kinship Care, paid to a relative with temporary or permanent custody of a child in the Cabinet's custody, is typically $300 per month, it would be economically beneficial to the state and, obviously, emotionally beneficial to the child, to encourage relative placements. Accordingly, DCBS should develop and implement a formalized process to ensure relative placement is uniformly identified as the preferred placement, when appropriate.

14. DCBS should study the use of the CATS program to determine if program assessors are always provided accurate and complete information by DCBS staff and whether or not the findings are appropriately applied. The Cabinet should also develop written policy to address the situations for when it is appropriate to obtain additional assessments, outside the CATS program, in order to prevent the procurement of further assessments with the intent of obtaining a specific desired outcome.

---

**Id:** 658903

**Program/ Subprogram:** Insufficient Information

**Date Received:** Aug 19 2002

**Completed By:** BRANHAM (BSS-FSOS), DELPHIA

**Allegations/Concerns:**

Petitioner filed Domestic Violence Petition/Motion.

**Intake Id:** 690095

**Program/ Subprogram:** Insufficient Information

**Date Received:** Aug 19 2002

**Completed By:** BRANHAM (BSS-FSOS), DELPHIA

**Allegations/Concerns:**

Has made verbal threats in past. Spit on me yesterday. It was the first time it was physical. Took place yesterday, July 21, 2002 around 12:00 on his grandfather's porch. I have been frightened of him since his extreme weight loss and personality change. He is bringing the children with him to court to gain sympathy today.

| Case#: | 205338 | Intake Id: | 690097 |
|---|---|---|---|
| **Date Received:** | May 25 2006 | **Date Accepted:** | Oct 19 2006 |
| **Staff Determination:** | Meets Acceptance Criteria | **Staff Assigned:** | HAMILTON (BS/MSW-SSCI), SHEREENA |
| **Outcome:** | In home ongoing case | **Status:** | Complete |

**Allegations/Concerns:**

Oct 18 2006 11:48AM Shereena Hamilton (BS/MSW-SSCI)
We received a court order to open the case.

| | | | |
|---|---|---|---|
| | MISCHLER, AMY | Basic Neglect | Unsubstantiated |
| | MISCHLER, AMY | Basic Neglect | Unsubstantiated |

Exhibit 16

**Exhibit D**

19/44

8/9

# Individual Summary Face Sheet

|  | | |
|---|---|---|
| **# **  205338 | **Intake Id:** | 690096 |
| **Date Received:** Apr 20 2006 | **Date Accepted:** | Oct 19 2006 |
| **Staff Determination:** Meets Acceptance Criteria | **Staff Assigned:** | HAMILTON (BS/MSW-SSCI), SHEREENA |
| **Outcome:** Close Referral | **Status:** | Complete |

*No actual Referral*

**Allegations/Concerns:**

Oct 18 2006 11:43AM Shereena Hamilton (BS/MSW-SSCI)
It was reported that Amy took the children in the heat of the day and protested in front of the courthouse stating their father would not provide medical insurance for them. It was reported that one of the children had strep throat and Amy did not get his medication after the father tried to provide her with the money.

| | MISCHLER, AMY | Basic Neglect | Unsubstantiated |
|---|---|---|---|
| | MISCHLER, AMY | Basic Neglect | Unsubstantiated |

| 205338 MISCHLER, AMY | Aug 19 2002 | | WEBB (BSW-FSOS), DEBORAH | Johnson |
|---|---|---|---|---|

**EXHIBIT 4**

20/44

9/9

Lovely, David T (CHFS OLS)

From:
Sent:
To:
Subject:

Womack, Mona S (CHFS OLS)
Friday, February 12, 2016 12:55 PM
Lovely, David T (CHFS OLS)
FW:

From: Howard Susan (CHFS DCBS EMSR Johnson)
Sent: Friday, February 12, 2016 12:49 PM
To: Womack, Mona S (CHFS OLS)
Subject: RE:

Case Active/Inactive History

Case Active/Inactive History

| Date Event | Event | Case Manager | Supervisor | Merged with Case Number | Merged with Case Name |
|---|---|---|---|---|---|
| 08/17/2007 | Close | PERRY (BSW-FSOS), BOB | MANAGER, EASTERN MOUNTAINS | | |
| 10/18/2006 | Open | TAYLOR (BSW-FSOS), WILMA | MANAGER, EASTERN MOUNTAINS | | |
| 08/27/2002 | Close | BRANHAM (BSS-FSOS), DELPHIA | MANAGER, EASTERN MOUNTAINS | | |
| 08/19/2002 | Open | BRANHAM (BSS-FSOS), DELPHIA | MANAGER, EASTERN MOUNTAINS | | |

If a case has been ongoing at some point, it will usually show as ongoing from then on.

Susan Howard
Service Region Administrator
Eastern Mountain Region
205 Main St.
Paintsville, KY 41240
(606) 788-7108
FAX (606) 788-7117

Notice of Confidentiality: This e-mail, including any attachments, is intended for the use of the individual or entity to which it is addressed and may contain confidential information that is legally privileged and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are notified that any review, use, disclosure, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please contact the sender by reply e-mail and destroy all copies of the original message.

From: Womack, Mona S (CHFS OLS)
Sent: Friday, February 12, 2016 11:36 AM
To: Howard Susan (CHFS DCBS EMSR Johnson)
Subject: RE:

Susan,
Can you go in to this doc and clarify that it's been closed?

1

Exhibit B

Exhibit 17

17/44

COMMONWEALTH OF KENTUCKY
CABINET FOR FAMILIES AND CHILDREN
DEPARTMENT FOR COMMUNITY BASED SERVICES

## FACE SHEET / CASE SUMMARY

Case Manager: Shereena Hamilton (BS-MSW-SSC1)
Supervisor: Wilma Taylor (BSW-FSOS)
County: Pike

Date of initial Referral: Aug 19, 2002
Date of most recent Referral: Oct 18, 2006
Number of Referrals: 3

Date moved to ONG: Oct 20, 2006
Date Case Closed:

Referral Summary

| Referral No. | CPS / APS | Date Received | Date Intake Submitted | Intake Determination | Date Referral Result Submitted | Referral Results |
|---|---|---|---|---|---|---|
| 3 | CPS | Oct 17, 2006 | Oct 18, 2006 | Accept For Investigation | Oct 20, 2006 | Continue Case |
| 2 | CPS | Oct 18, 2006 | Oct 18, 2006 | Accept For Investigation | Oct 20, 2006 | Close Referral |
| 1 | APS | Aug 19, 2002 | Aug 19, 2002 | Information & Referral | | |

Date of Last Contact: Mar 09, 2007
Type of Last Contact: Staffing/Consultation
Date last CQA was approved: Dec 07, 2006
Date last Case Plan was approved: Dec 12, 2006

Exhibit 18

Exhibit C

18/44

**Date Received:** 10-11-06      **Assignment Received From:** Commissioner

**Specialist Assigned:** DDile

**Date Administrative Staff Informed of Assignment:**

**Due Date to Director:** 10-20-06   Extension requested on 10-20-06

## Assignment Overview:

Review complaint and prepare an assignment outline
The assignment was a complaint from the NM, Amy Mischler. The complaint was in the form of an affidavit where the NM listed several situations she thought the courts should consider in the custody/visitation battle.

## List what was accomplished to complete the assignment (bullet point format):

This reviewer contacted the DCBS worker, Kathy Harder. She received a copy of the affidavit and reviewed the NM's allegations. Her response was that the allegations had been investigated or did not meet criteria for investigation. The NM included several situations that she was uncomfortable with, but it did not raise to the level of an investigation.
There are two prior referrals in twist regarding this family:
1. 04-06 Neglect was investigated and originally unsubstantiated based on information obtained. However, the NF filed an EPO and the courts overturned custody to the NF. DCBS was forced to change our finding to match the courts according to SOP. (The NM feels that this agency is deliberately sabotaging her attempts to fight her ex-husband). This is one example where this agency attempted to unsubstantiate but had to match the courts findings. The unsubstantiation appears to be an appropriate finding.
2. 05-06 This referral was added to open the case as court ordered by the Judge. This case is being directed by the court system and custody of the children is now with the NF with supervised visits with the NM.

## Recommendations (where appropriate):

None------After review of the investigations the courts have forced this agency to change its finding as well as open a case.

**Date completed and returned to Administrative Staff for Director review and distribution:**
09-03-06 Extension was requested and granted on 10-20-06.

Exhibit G
8

Exhibit 19.

(Attachment D)

23/44

Date Received: 03-15-2007          Assignment Received From: Secretary's office

Specialist Assigned: DDile

Date Administrative Staff Informed of Assignment:

Due Date to Director:          3/23/2007

## Assignment Overview:

- Review complaint

This is the second complaint made by Ms. Mischler. The first complaint is from Oct. 2006 and is attached.

The second complaint is dated 3-15-07 and is addressed to Ms. Shereena Hamilton the SSW in Pike Co. This worker is both the intake worker and then was transferred to on-going where she was the on-going worker. The Intake FSOS is Kathy Larder and the On-going FSOS is Wilma Taylor.

Ms. Mischler states that the purpose of the letter is threefold. "First, it's a demand letter that you observe my due process rights. Second, it is notice of irregularities to Cabinet official who are in charge of supervising you, and third it's an open records request."

The following information was pulled from the letter and will be considered as the complaint:

- She complains that she did not receive a referral for Seven County Services.
- She states that she has never received a finding letter from the Cabinet, however, in her first complaint she was aware that she had a substantiated finding against her for neglect.
- She has not spoken to her worker since December 2006.
- She states that the DVO that caused this agency to change its finding has been vacated.
- She states that this agency was court ordered in May to offer her services and we did not begin this until Dec. 2006
- She states that in November she was told this agency was transferring the case to Jefferson co. and this still has not happened.
- She claims that she has made allegations against her ex-husband and this agency is failing to act because he is an attorney in Pike Co.

## List what was accomplished to complete the assignment (bullet point format):

- Review Twist information # 205338

T/C to Wilma Taylor On-Going FSOS—This reviewer faxed her a copy of the letter to Ms. Hamilton from Ms. Mischler dated 3-5-2007. FSOS states that she has not read this letter but was aware that her worker had received it.

She states that the first investigation came in May 2006 and was substantiated to match the courts findings. She was not aware that the DVO had been vacated and agreed to research this and ask her legal staff to get involved if needed. This is relevant because this agency changed its unsubstantiated finding to substantiated to match the court finding of neglect in regards to this DVO.

**Exhibit H**

Exhibits 20

(Attachment D)

24/44

difficult. The worker states that she sent a finding letter to the NM but this cannot be verified. A new finding letter was mailed to the NM certified on 3-16-2007.

- A new referral was entered in December of 2006 in order to open the case. It is not known why this happened but, it is probably because the finding on the May referral was entered and closed. Either way it has added a second substantiated finding to the NM's CAN registry and should be corrected. The FSOS is also working on this in order to change the finding. She agreed to call twist if necessary.
- She was not sure that a referral was completed for the NM to attend SCS. She will discuss with the worker.
- She says that a case plan was done with the NM in December. It is unknown if any other contact has occurred with the NM. On the case plan it says that DCBS will make monthly visits to the NM and this has not happened.
- The FSOS states that this is because the case was going to be transferred to Jefferson Co. but they would not accept the case without the hard file. Then Shelbyville was going to take the case and now Johnson Co. is going to take the case. This is to avoid a professional conflict due to the NF is also an attorney in Pike Co. The FSOS says that her FSOS is out this week and she is unsure when this transfer is going to take place.

It appears due to various reasons services have not been offered to this NM. It is difficult to determine as the case is lost and the county is experiencing multiple problems with past dues and staff shortages.

May 2006-Substantiated neglect only because the court changed its finding—This agency was court ordered to offer the NM services. (This reportedly did not occur due to past dues)
December 2006-Case is lost and a third referral is added to open the case (This created an substantiation against the NM that is not accurate).
December 2006-Case plan was complete with the NM, monthly visits have not occurred as we agreed on the case plan and the case has not been transferred as we agreed.
March 2007-A finding letter was mailed to her alerting her to a substation of neglect in May of 2006.

### 3-23-2007
Conferenced this situation with Mona and Bruce. We spoke with the SRA, Susan Howard and discussed the above concerns. The assignment outline was emailed to her as requested on 3-23-2007.

Response was emailed from FSOS Wilma Taylor:

1. Shereena Hamilton did call Seven Counties to inform intake of Ms Mischler would be calling for an appointment for an intake, she was not informed to complete any type of referral. Shereena assumed Ms Mischler would follow up in making her appointment.

2. I will need Shereena to clarify the order to dismiss, if that will include the finding of neglect.

(Attachment D)

25/44

another county to continue services; Ms Wilcox will make arrangements for Johnson County to take case responsibility since court has been transferred from Floyd County to Johnson County Court.

4. Jenny Cook from Floyd County intake team (606-889-1724) is addressing the new allegations regarding Mr. Stevens (father). The supervisor is Angela Baldwin.

5. Ms Wilcox and I will need to work on changing the finding of referral #3 to change the finding, Ms Mischler as far as we know only has the one substantiation and we will make sure the case reflect that.

6. Shereena has not had contact with Ms Mischler since 11/06, the case plan visit, Shereena did make a visit to the father's home. As we talked yesterday, the mother had moved and the worker did not know her whereabouts for some time, then she was reportedly in Shelby County, I called in attempt to transfer the case to find out she moved to Jefferson County with her mother, I did contact Jefferson County in attempts to transfer the case, I decided to keep the case in Pike County due to the father having custody of the children. LaToya Jones, Jefferson County DPP is providing courtesy services to Ms Mischler.

I have already sent you the case plan, finding letter and court order that ordered family services to be provided to the family.
If I have left any thing out please let me know.

Thanks


3-23-2007--Letter was sent to Ms. Mischler (see attached)


Recommendations (where appropriate):
- Re-create Case-This is currently being done.
- Assist her with applying for open records—Carrie Hall agreed to do this.

(Attachment D)

26/44

- Regional office has agreed to do this.
- Transfer case to Johnson Co. ASAP. Regional office has agreed to do this.
- Explore further if court order substantiating neglect on the children, has been appealed. The regional office is currently doing this
- Add the allegations against the NF into twist and assess for acceptance/services. The regional office is currently doing this
- Correct the findings in referral #3, so that the NM is not on the central registry for neglect on two separate occasions, as this is not correct. Regional office has agreed to do this.

**Date completed and returned to Administrative Staff for Directors review and distribution:**
**03-23-2007**

(Attachment D)

**DCBS Number: 205338**
**DCBS Name: Amy Mischler**

e.   x

Worker Signature _____   Date: _____
*If Applicable*

Supervisor Signature _____   Date: _____
*If Applicable*

## HISTORY OF OVERRIDE INFORMATION:

| Primary Individual | Other Individual | Incident | Program/ SubProgram | Supervisor Results | Override Date | Override Reason |
|---|---|---|---|---|---|---|
| ▓▓▓▓ | Amy Mischler | 1 | Neglect | Substantiated | | |
| ▓▓▓▓ | Amy Mischler | 1 | Neglect | Unsubstantiated | Jul 19, 2007 | Additional Information |
| ▓▓▓▓ | Amy Mischler | 1 | Neglect | Substantiated | | |
| ▓▓▓▓ | Amy Mischler | 1 | Neglect | Unsubstantiated | Jul 19, 2007 | Additional Information |

Referral Results Override Date:        7/19/2007

Referral Results Override Reason Notes Summary:
Jul 19 2007 11:39 AM - Gretchen Marshall
The findings were reversed following a CAPTA.  The final order (signed on 7/13/07) was received in Quality Assurance on 7/19/07.

This ▓▓▓ ▓▓▓
Not Be Released

Exhibit 21

Exhibit J

29/44

**COMMONWEALTH OF KENTUCKY**
**CABINET FOR FAMILIES AND CHILDREN**
**DEPARTMENT FOR COMMUNITY BASED SERVICES**

**CONTINUOUS QUALITY ASSESSMENT**
**ONGOING - CPS NARRATIVE OUTLINE**

CONFIDENTIAL
This Information May
Not Be Released

Date CQA Approved:
5/25/07

## I. MALTREATMENT/PRESENTING PROBLEM:

May 22 2007 10:59 AM – Shereena Hamilton (BS-MSW-SSC1)
Since this case has been opened, there have been no more reported incidents or
allegations against Ms. Mischler. The case was court ordered to be opened. She is
going to start initiating her services in Jefferson County as that is where she is
now residing. Referrals were made for her to complete a mental health assessment
to see if she needs mental health treatment and to complete a parenting assessment,
however Amy says the referrals were not made with Seven Counties. She now has a
courtesy worker in Jefferson County, LaToya Jones, that has set up her mental
health appointment in June at Seven Counties, which is the fastest they could get
her in.

DPP history is as follows:
Referral 1: 08-09-02 It was an I&R report.
Referral 2: 04-20-06 This report was substantiated, however it was the same
as referral # 3, therefore it was decided that the report would be
unsubstantiated and the finding was changed.
Referral 3: This report reflects it was on 10-17-06, however it was in May of
of 2006. The wrong date was put in. This report was substantiated,
however there has been a CAPTA hearing and the decision has not
been decided whether it will be overturned or not.

The rating for this section is 2.

| CPS RATING |
|------------|
| 1 |

## II. UNDERLYING CAUSES:

May 18 2007 8:50 AM – Shereena Hamilton (BS-MSW-SSC1)
This case was opened due to receiving a court order to open the case. The
allegations prior to the court order were as follows:



Worker and co-Worker Gwendolyn Hatfield traveled to Lousiville (Jefferson County)
on Monday, November 27, 2006 to transition the case since Amy moved from Pikeville
to Jefferson County. Worker explained that the case was court ordered to be opened
through family court. Worker was able to speak with Amy, her mother, and her
sister, Sandy Mador. All were cooperative at that time and Amy's family stated
they would support her in completing any recommendations.

Exhibit K    Exhibit 22    30/44

**FINALIZED**                                    12/09/2008

Staff's Name: JONES-GRAY(BSW-SSCI), EMILY REGENEA
On Behalf Of: Amy Mischler,
Contact Type: Paperwork / Notifications
Contact Location: DCBS Office
Service Activities: Referral for Services
Case Plan Objectives:
Comments:

Dec 3 2008 12:36PM Emily Jones-Gray(BSW-SSCI)
Worker Emily Jones, BSW, SSWI entered referral #6 on 12-03-2008.
Worker Emily Jones, BSW, SSWI received this referral via fax from Jefferson County DPP on 12-03-2008 on an EPO. The
EPO is dated for 12-03-2008. This referral does not meet the criteria for an APS investigation per SOP 4A.2 (3) - adults are
not married and do not live together. This referral does not meet the criteria for a CPS investigation per 7A.4 (1a) -
generalized feelings of concern. No specific abuse allegations are made for emotional abuse.

TWIST History:
205342
1. 08-19-2002 I & R
2. 02-26-2007 CPS Neglect - unsub'd
3. 03-11-2007 APS R/L
4. 10-03-2008 CPS R/L
5. 09-04-2008 CPS R/I

Amy Mischler #205338
1. 08-19-2002 APS I & R
2. 04-30-2008 CPS Neglect - sub'd
3. 05-25-2008 CPS Neglect - sub'd, but overturned to unsub'd in CAPTA

Additional Information:
Per EPO:
works at                          Pikeville, KY 41501

Contact                          **FINALIZED**                          09/19/2007

Staff's Name: ADKINS (SS-FSOS), DENISE
On Behalf Of: Amy Mischler,
Contact Type: Paperwork / Notifications
Contact Location: DCBS Office
Service Activities: Investigation/Assessment
Case Plan Objectives:
Comments:

Sep 19 2007 12:00AM Denise Adkins (SS-FSOS)
JC-3 dated 08-11-08, received in OPP office 08-11-07. Referral does not meet criteria for an investigation (family dispute
over return of children), entered as a resource linkage. JC-3 noted no injuries or complaint of pain, no damage. Two
children were present:

Exhibit 24

Exhibit E

3/4

**Date:** Mon 19 Mar 2007 01:44:08 AM EDT

**From:** Trustworthy <noreply-comment@blogger.com>

[                                                    ]

**To:** <pikecountyinjustice@myway.com>

**Subject:** [Pike County Injustice Files] New comment on The beginning of the Harvest..

".               has left a new comment on your post "

Unfortunately, I don't think a judge will take one's hair into account when deciding custody. I think things such as, oh, I dunno, child abuse will factor in more heavily. Nice try at a schoolyard insult, though. I'm sure Stevens is at home crying now as a result of your wit.

Fess up - is this about the kids with you or is it about trying to embarrass your ex-husband?

I mean, it's a rhetorical question, because we all know the answer, but it'd still be interesting to hear your version.

this comment.

this comment.

comments for this blog.

Posted by Trustworthy to                                    at Monday, March 19, 2007
1:44:00 AM

Exhibit 25

# Supreme Court of Kentucky

2018-SC-000419-TG
AND
2018-SC-000421-TG
(2018-CA-001200)

MATTHEW G. BEVIN, IN HIS OFFICIAL CAPACITY AS          APPELLANTS
GOVERNOR OF THE COMMONWEALTH OF KENTUCKY,
ET AL.

ON APPEAL FROM FRANKLIN CIRCUIT COURT
V.          HONORABLE PHILLIP SHEPHERD, JUDGE
NOS. 2018-CI-000379 AND 18-CI-000414

COMMONWEALTH OF KENTUCKY EX REL.          APPELLEES
ANDY BESHEAR, ATTORNEY GENERAL, ET AL.

## ORDER GRANTING TRANSFER,
## EXPEDITING BRIEFING, AND SETTING ORAL ARGUMENT

The parties' motions, pursuant to CR 74.02(1), to transfer the above-styled

appeal from the Court of Appeals to the Supreme Court of Kentucky are hereby granted

in Case Numbers 2018-SC-000419-T and 2018-SC-000421-T. On this Court's own

motion, the actions are hereby consolidated as styled above.

The Clerk of the Court of Appeals of Kentucky is directed to forthwith transfer to

this Court all the records and files in the above-styled appeal.

The parties' motions to advance consideration of the appeal are granted and the

following expedited briefing schedule is established:

Appellants' brief shall be filed on or before noon, Monday, August 27, 2018,

Appellees' brief shall be filed on or before noon, Monday, September 10, 2018,



Exhibit 2b

Appellants' reply brief, if any, shall be filed on or before noon, Friday, September 14, 2018.

Appellant's motion for leave to increase the page limits of the briefs, is granted to the extent that the appellant's brief shall not exceed one hundred (100) pages, the appellee's brief shall not exceed one hundred (100) pages, the appellant's reply brief, if any, shall not exceed twenty-five (25) pages.

Pursuant to CR 76.16, oral argument in the above-styled action will be heard, on Thursday, September 20, 2018 at 10:00 a.m. in the Supreme Court courtroom.

Twenty minutes will be allotted each side for argument.

ENTERED: August 10, 2018.

Chief Justice

|  |  |
|---|---|
| Appellee's Brief<br>Appendix (if required by<br>6 Cir. R. 30(a) and (c)(2)) | Filed electronically by **October 31, 2018** |
| Appellant's Reply Brief<br>(Optional Brief) | If multiple appellee briefs are filed,<br>only one reply brief may be filed by<br>appellants. The reply brief<br>is due no later than **17** days after<br>the last appellee brief is filed. |

For most appeals, the Court will access directly the electronic record in the district court. However, to determine if this appeal requires an appendix and how to prepare it, read the latest version of the Sixth Circuit Rules at www.ca6.uscourts.gov, in particular Rules 28 and 30.

If you still have questions after reviewing the information on the web site, please contact the Clerk's Office before you file your brief.

Sincerely yours,

s/Karen S. Fultz
Case Manager
Direct Dial No. 513-564-7036

cc: Ms. Bethany A. Breetz
Mr. Shandeep Jonathan Dutta
Mr. Marc Griffin Farris
Ms. Katie Marie Glass
Mr. David Brent Irvin
Mr. John Clarke Keller
Mr. Andrew Douglas Pellino
Mr. James P. Pruitt
Ms. Selena Woody Stevens
Ms. Catherine E. York

Enclosure



US POSTAGE PAID
**$6.70**

Origin: 34972
Destination: 45202
0 Lb 15.10 Oz
Sep 29, 18
116705065I5-05

1006

## PRIORITY MAIL 2-Day ®

EXPECTED DELIVERY DAY: 10/01/2018    C023

### USPS TRACKING NUMBER



9505 5132 5051 8272 3575 75

WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.

RECEIVED
OCT 01 2018
DEBORAH S. HUNT, Clerk

FROM: Amy Mischler
1120 Palm Court
Okeechobee Fl 34974

TO:
United States Court of Appeals for the Sixth Circu
540 Potter Stewart U.S. Courthouse
100 East Fifth Street
Cincinnati  Ohio    45202-3988