IN THE
**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

AMY MISCHLER, *PRO SE*
*Plaintiff-Appellant,*

v.

MATT BEVIN, ET AL,
*Defendants-Appellees*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY, CENTRAL DIVISION AT FRANKFORT
CASE NO. 3: 17-00066-DCR

---

**BRIEF OF DEFENDANTS-APPELLEES
GOVERNOR MATT BEVIN AND CHFS
DEFENDANTS**

---

David Brent Irvin
Catherine York
Kentucky Cabinet for Health and Family Services
Office of Legal Services
275 E. Main 5W-B
Frankfort, KY  40621
Telephone: 502-564-7905

# DISCLOSURE OF CORPORATE AFFILIATIONS
# AND FINANCIAL INTEREST

Pursuant to 6th Cir. R. 26.1, Appellees Matt Bevin, in his official capacity as Governor of Kentucky, Timothy Feeley, Susan Howard, Debra Wilcox-LeMaster; Kathy Larder; Deborah Webb; Shereena Hamilton-Spurlock; Latoya Jones; Wilma Taylor; Mike Hartlage; Gwen Hatfield; Jeffry Prather; Mona Womack; Debbie Dile; Zack Ousley, and Emily Jones Gray in their individual or official capacities as current or former employees of the Kentucky Cabinet for Health and Family Services ("CHFS Defendants") make the following disclosures:

1       Is said party a subsidiary or affiliate of a publicly-owned corporation?

No.

If the answer is YES, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

Not applicable.

2.      Is there a publicly-owned corporation, not a party to the appeal, that has a financial interest in the outcome?

No.

If the answer is YES, list the identity of such corporation and the nature of the financial interest:

Not applicable.

/s/ *David Brent Irvin*                                     October 31, 2018
David Brent Irvin                                          Date
 *Counsel for above named Defendants-Appellees*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................v

STATEMENT REGARDING ORAL ARGUMENT ...............................................ix

STATEMENT OF JURISDICTION....................................................................1

COUNTERSTATEMENT OF ISSUES ................................................................1

COUNTERSTATEMENT OF THE CASE.............................................................2

STANDARD OF REVIEW ............................................................................19

SUMMARY OF ARGUMENT ........................................................................21

ARGUMENT ............................................................................................24

I.     THIS COURT SHOULD NOT CONSIDER, FOR THE FIRST
       TIME ON APPEAL, PLAINTIFF'S NEW ARGUMENTS AND
       EVIDENCE NOT PRESENTED TO THE DISTRICT COURT .................24

       A.     All Attachments in Appellant's Brief Should Be Stricken
              Because They Are Not Part of the Record Below……………………25

       B.     All Arguments Not Preserved in the District Court Are Improper
              and Should Not Be Considered on Appeal .........................................26

II.    THIS COURT SHOULD DISMISS THIS APPEAL OR AFFIRM
       THE JUDGEMENT BASED ON PLAINTIFF'S FAILURE TO
       COMPLY WITH THE FEDERAL RULES OF APPELLATE
       PROCEDURE OR AS A SANCTION FOR HER PERSONAL
       ATTACKS ON THE FEDERAL COURTS ...............................................28

III.   PLAINTIFF'S    UNPRESERVED     ACCUSATIONS     OF
       JUDICIAL BIAS DO NOT SUPPORT VACATING THE
       OPINION OR JUDGMENT.......................................................................35

IV.    THE DISTRICT COURT DID NOT ERR WHEN IT HELD KENTUCKY'S APPLICABLE STATUTES OF LIMITATIONS AND IMMUNITY DOCTRINE BARRED PLAINTIFF'S COMPLAINT ................................................................................. 40

V.    THERE ARE A MULTITUDE OF ALTERNATIVE GROUNDS TO AFFIRM THE JUDGMENT .................................................. 45

VI.    THE DISTRICT COURT DID NOT ERR BY REFUSING TO GRANT PLAINTIFF WHAT AMOUNTS TO A WRIT OF MANDAMUS FOR STATE OFFICIALS TO FOLLOW STATE LAW ...................................................................................... 46

VII.    THE DISTRICT COURT DID NOT ERR BY IMPOSING FILING RESTRICTIONS ON PLAINTIFF ................................. 47

CONCLUSION ................................................................................... 48

# TABLE OF AUTHORITIES

**Federal Cases**

*Alkire v. Irving*, 330 F.3d 802 (6th Cir. 2003). ..................................................40

*Anderson v. Dickson,* 715 Fed. Appx. 481 (6th Cir. 2017) ..................................48

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................ 19, 42

*Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461 (6th Cir. 2011)......................20

*Barber v. Miller*, 809 F.3d 840 (6th Cir. 2015) ....................................................23

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).........................................19

*Bickel v. Korean Air Lines Co.*, 96 F.3d 151 (6th Cir.1996) .................................31

*Binay v. Bettendorf*, 601 F.3d 640 (6th Cir. 2010) ....................................... 20, 23

*Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516 (6th Cir. 2008) ................. 42, 43

*Bletz v. Gribble*, 641 F.3d 743 (6th Cir. 2011). ....................................................45

*Boswell v. Mayer*, 169 F.3d 384 (6th Cir.1999) ...................................................28

*Bouyer v. Simon,* 22 F. App'x 611 (6th Cir. 2001)......................................... 32, 34

*Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356 (6th Cir. 2001)......................20

*Boyd v. Ford Motor Co.*, 948 F.2d 283 (6th Cir. 1991)...........................................29

*Bracy v. Gramley*, 520 U.S. 899 (1997) ...............................................................22

*Brenay v. Schartow*, 709 Fed. Appx. 331 (6th Cir. 2017) .............................. 33, 34

*Bright v. Gallia Cty., Ohio*, 753 F.3d 639 (6th Cir. 2014) ....................................21

*Bullock v. City of Covington*, No. CV 16-56-HRW,
    2016 WL 6694486 (E.D. Ky. Nov. 14, 2016)....................................................44

*Burley v. Gagacki*, 834 F.3d 606 (6th Cir. 2016) .................................................38

*Bush v. Rauch*, 38 F.3d 842 (6th Cir. 1994) .........................................................45

*Callihan v. Kentucky*, 36 Fed. Appx. 551 (6th Cir. 2002). .............................. 37, 48

*Canfora v. Olds*, 562 F.2d 363 (6th Cir. 1977)......................................................47

*Cathedral Rock of N. Coll. Hill, Inc. v. Shalala*, 223 F.3d 354 (6th Cir. 2000)......21

*Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548 (6th Cir. 2012)..............5

*Chesbrough v. VPA, P.C.*, 655 F.3d 461 (6th Cir. 2011) ........................................43

*Children's Healthcare is a Legal Duty, Inc. v. Deters*,
    92 F.3d 1412 (6th Cir. 1996) ...........................................................................47

*CIMOS, LLC v. Nortek Glob. HVAC, LLC*, 736 Fed. Appx. 577 (6th Cir. 2018)...32

*City of Cleveland v. Krupansky*, 619 F.2d 576 (6th Cir. 1980) ..............................38

*Cochran v. Municipal Court of City of Barberton, Summit County*,
    91 Fed. Appx. 365 (6th Cir. 2003) ...................................................................46

*Coleman v. Shoney's, Inc.*, 79 F. App'x 155 (6th Cir. 2003) ................................32

*Coley v. Bagley*, 706 F.3d 741 (6th Cir. 2013).....................................................27

*Collard v. Ky. Bd. of Nursing*, 896 F.2d 179 (6th Cir. 1990) ...............................44

*Cooper v. Parrish*, 203 F.3d 937 (6th Cir. 2000) ................................................45

*Coverdell v. Department of Social and Health Services, State of Wash.*,
  834 F.2d 758 (9th Cir. 1987) ...................................................................45
*Crowder v. Conlan*, 740 F.2d 447 (6th Cir. 1984).....................................37
*Dauenhauer v. Bank of New York Mellon,* 562 Fed. Appx. 473 (6th Cir. 2014) ....25
*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).............13
*Dixon v. Clem*, 492 F.3d 665 (6th Cir. 2007) ........................................45
*Draper v. Reynolds*, 369 F.3d 1270 (11th Cir.2004) ...................................39
*Easley v. Univ. of Mich. Bd. of Regents*, 853 F.2d 1351 (6th Cir. 1988) ...............38
*Elite Int'l Enter., Inc. v. Norwall Grp., Inc.*, 628 Fed.Appx. 370 (6th Cir. 2015)...33
*Enertech Elec., Inc. v. Mahoning County Comm'rs*, 85 F.3d 257 (6th Cir. 1996)..37
*Ex Parte Young*, 209 U.S. 123 (1908) ..................................................47
*Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264 (6th Cir. 1998)............................48
*Fite v. Hoover Co.*, 35 Fed. Appx. 158 (6th Cir. 2002)....................................29-30
*Foster v. Barilow*, 6 F.3d 405 (6th Cir. 1993) ..........................................26
*Frame v. Superior Fireplace*, 74 F. App'x. 601 (6th Cir. 2003)............................32
*Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836 (10th Cir. 2005) ............30
*Gay v. Cabinet for Health and Family Services*,
  5:17-CV-258-JMH, 2018 WL 934880 (E.D. Ky. Feb. 16, 2018) .......................40
*Granader v. Public Bank*, 417 F.2d 75 (6th Cir. 1969).............................................5
*Gueye v. U.C. Health*,
  1:13-CV-673, 2014 WL 4984173 (S.D. Ohio Oct. 6, 2014)................................30
*Guilmette v. Howes*, 624 F.3d 286 (6th Cir. 2010).................................................28
*Haggard v. Tennessee*, 421 F.2d 1384 (6th Cir. 1970)..........................................46
*Hammond v. Schatz Underground Cable*, 52 Fed. Appx. 742 (6th Cir. 2002) .......29
*Howard v. Whitbeck*, 382 F.3d 633 (6th Cir. 2004). ..............................................13
*Humphrey v. U.S. Attorney Gen.'s Office*, 279 Fed. Appx. 328 (6th Cir. 2008).....26
*In re City of Detroit*, 828 F.2d 1160, (6th Cir.1987) ................................................37
*In re Comshare Inc. Sec. Litig.*, 183 F.3d 542 (6th Cir. 1999)...............................21
*In re Eagle-Picher Indus., Inc.*, 963 F.2d 855 (6th Cir. 1992) ...............................37
*Jackson v. Roach*, 364 Fed. Appx. 138 (5th Cir. 2010).................................. 22, 27
*Legrand v. Gillman*, 576 Fed. Appx. 334 (5th Cir. 2014) ......................................29
*LidoChem, Inc. v. Stoller Enters., Inc.*, 500 Fed. Appx. 373 (6th Cir. 2012)..........33
*Liteky v. United States*, 510 U.S. 540 (1994)........................................................38
*Marcilis v. Township of Redford*, 693 F.3d 589 (6th Cir. 2012) ............................26
*McNeil v. United States,* 508 U.S. 106 (1993)................................................ 32, 34
*McPherson v. Kelsey*, 125 F.3d 989 (6th Cir.1997) ............................................ 41
*Minger v. Green*, 239 F.3d 793 (6th Cir. 2001)......................................................20
*Mischler v. Clary*, Case: 3:17-cv-00066-KKC (E.D. Ky. May 16, 2017,
  aff'd.,16-6184, 2017 WL 3220478 (6th Cir. May 16, 2017)........................ 14, 39

*Mischler v. Cunningham*, 3:17-CV-0029-GFVT, 2017 WL 5757603 (E.D. Ky. Apr. 7, 2017)............................................................................5, 46

*Mischler v. Lambert*, 3:08-CV-231-M, 2008 WL 4327444 (W.D. Ky. Sept. 19, 2008)............................................................ *passim*

*Mischler v. Stevens*, 3:17-cv-00008, 2014 WL 1378805 (E.D. Ky. April 8, 2014), *aff'd.,* Mischler v. Stevens, 16-6185, 2017 WL 3220480 (6th Cir. May 16, 2017), ............................................................................................ passim

*Operating Eng'rs Local 324 Health Care Plan v. G & W Constr. Co.*, 783 F.3d 1045 (6th Cir. 2015)............................................................33

*Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89 (1984)......................46

*Preferred Auto. Sales Inc. v. Kocis*, 60 Fed. Appx. 583 (6th Cir. 2003)................29

*Re: Jackson Masonry, LLC,* __F.3d.___, 2018 WL 4997779 *1 (6th Cir Oct. 16, 2018) ............................................................26

*Robbins v. Oklahoma,* 519 F.3d 1242 (10th Cir. 2008)............................................20

*Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736 (6th Cir. 1980) ...................5

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)....................................................13

*Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co.*, 772 F.2d 214 (6th Cir. 1985)............................................................45

*Ryder v. McCabe*, 475 Fed. Appx. 411 (3d Cir. 2012)..............................................25

*Scott v. Metropolitan Health Corp.*, 234 Fed. Appx. 341 (6th Cir. 2007) ....... 35, 39

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546 (6th Cir. 2008) ........................ 22, 27

*SFS Check, LLC v. First Bank of Delaware*, 774 F.3d 351 (6th Cir. 2014)...........21

*Shophar v. City of Olathe*, 723 Fed. Appx. 579 (10th Cir. 2018) ........................29

*Smith v. City of Columbus*, 16 Fed. Appx. 309 (6th Cir. 2001)..............................29

*Summers v. Singletary*, 119 F.3d 917 (11th Cir. 1997) ..........................................37

*Taft Broad. Co. v. United States*, 929 F.2d 240 (6th Cir.1991)..............................34

*Theriault v. Silber*, 579 F.2d 302 (5th Cir. 1978) ...................................................30

*Thomas v. City of Columbus, Ohio*, 854 F.3d 361 (6th Cir. 2017)..........................45

*Tolbert v. State of Ohio Dept. of Transp.*, 172 F.3d 934 (6th Cir. 1999) ...............44

*Top Flight Entm't, Ltd. v. Schuette*, 729 F.3d 623 (6th Cir. 2013) .........................19

*United States v. Bankston*, 820 F.3d 215 (6th Cir. 2016) .......................................21

*United States v. Dandy*, 998 F.2d 1344 (6th Cir. 1993) ..........................................38

*United States v. Dunkel*, 927 F.2d 955 (7th Cir.1991) .................................... 32, 34

*United States v. Hayter Oil Co., Inc. of Greeneville*, 51 F.3d 1265 (6th Cir. 1995)............................................................33

*United States v. Ramer*, 883 F.3d 659 (6th Cir. 2018) ...........................................21

*Westine v. United States*, 17-9085, ___S.Ct.___, 2018 WL 2389189 (U.S. Oct. 1, 2018)............................................................21

*Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)........................................40

*Wilson v. Bowlen*, 52 F.3d 327 (6th Cir. 1995) (unpublished)..............................25

**State Cases**

*E.S. v. M.S.V.*, 2016-CA-000475-ME, 2017 WL 2210741 (Ky. App. May 19, 2017),.................................................................................................11

*K.H. v. Cabinet for Health and Family Services*, 358 S.W.3d 29 (Ky. App. 2011). 9

*Miller v. Admin. Office of Courts*, 361 S.W.3d 867 (Ky. 2011).............................42

*Mischler v. Cabinet for Health and Family Services*, Franklin Circuit Court, No. 17-CI-980..........................................................................................5

*Mischler v. Commonwealth of Kentucky*, Franklin Circuit Court Civil Action No. 08-CI-01039, *aff'd*, *Mischler v. Greg Stumbo*, 2010-CA-000355 ........................5

*Mischler v. Cabinet for Health and Family Services, Civil Action No. 17-CI-980.14*

*Mischler v. Thompson*, 436 S.W.3d 498 (Ky. 2014) ...........................................6, 39

*Norwich v. Norwich*, 459 S.W.3d 889 (Ky. App. 2015)..........................................43

**Statutes**

28 U.S.C. § 1291 .......................................................................................................1

28 U.S.C. § 144.................................................................... 18, 22, 27, 35-36

42 U.S.C. § 1983 ............................................................................. 14, 19

42 U.S.C. § 5106a *et seq*..........................................................................................9

Ky. Rev. Stat. § 403.290 .........................................................................................10

Ky. Rev. Stat. § 403.725 .........................................................................................41

Ky. Rev. Stat. § 413.120 .........................................................................................44

Ky. Rev. Stat. § 620.030 ...........................................................................................8

**Rules**

Fed. R. App. P. 4(a) ...................................................................................................1

Fed. R. App. P. 10(a). ..............................................................................................25

Fed. R. App. P. 28............................................................................. 29, 31, 35

Fed. R. App. P. 34(a) .................................................................................................1

Fed.R.Civ.P. 9(b) ....................................................................................................20

Fed. Civ. Rule P.12(b)(6).........................................................................................19

**Regulations**

922 KAR 1:480 ...........................................................................................................9

**Constitutional Provisions**

U.S. Const., Eleventh Amendment ..........................................................................47

**Other Authorities**

Sean Munger, *Bill Clinton Bugged My Brain!: Delusional Claims in Federal Courts*, 72 Tul. L. Rev. 1809 (1998) ....................................................................39

## STATEMENT REGARDING ORAL ARGUMENT

Kentucky Governor Matt Bevin and named current and former officials of the Kentucky Cabinet for Health and Family Services ("CHFS Defendants") submit oral argument is unnecessary because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process will not be significantly aided by oral argument. Fed. R. App. P. 34(a).

## <u>STATEMENT OF JURISDICTION</u>

The District Court granted the final judgment dismissing the underlying case on May 25, 2018. (R. 68, Pg. ID # 737). Plaintiff appealed on June 22, 2018. (R. 69, Pg. ID #738-770). Pursuant to Rule 4(a) of the Federal Rules of Appellate Procedure Ms. Mischler's appeal was timely. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## <u>COUNTER STATEMENT OF ISSUES</u>

1.      Should this Court consider, for the first time on appeal, Plaintiff's arguments and evidence that she did not timely present to the District Court?

2.      Should this Court create arguments for a pro se litigant who has failed to comply with the federal rules of appellate procedure and presents a nonconforming Opening Brief because she "simply has not had time for  such details"?

3.      Does Plaintiff's moot and unpreserved claims of judicial bias require this Court to vacate to the final judgment?

4.      If this Court excuses Plaintiff's failures to preserve issues for appellate review, her failure to comply with the appellate rules of procedure, and failure to make more than skeletal arguments in her Opening Brief, this Court should decide:

a) Did the District Court err when it found Plaintiff's complaint against Governor Bevin and CHFS Defendants is barred by the applicable statutes of

limitations and the Eleventh Amendment to the Constitution of the United States?

b) Are there alternative grounds to affirm the judgment such as, for example, Plaintiff's failure to plead plausible civil rights claims or state law fraud claims under Federal Civil Rule 9, or the federal *Twombly/Iqbal* pleading standard, res judicata, or the state officials' absolute and qualified immunity from suit?

5. Does this Court have jurisdiction to grant Plaintiff mandamus relief?

6. Did the District Court err by imposing pre-filing restrictions on Plaintiff to preclude her filing future repetitive and frivolous vexatious litigation?

## COUNTERSTATEMENT OF THE CASE

Amy Mischler is a mother who lost a child custody battle in 2006. In her anger and grief she imagines she has been wronged by the legal system. She imagines a far reaching "judicial conspiracy." This appeal is the latest chapter in her serial efforts to collaterally attack the final 2006 state family court custody decree judgment by accusing the Kentucky judiciary of bias and favoring her ex-husband so he could gain custody of their children. She also accuses state judges and executive branch officials of defrauding her and violating her federal constitutional rights when they did not intervene on her behalf. The state court "conspiracy," in Plaintiff's mind, has metastasized to include the federal judiciary "internet stalking"

2

and conspiring against her. In the instant case, like those she has litigated and lost before, Mischler's allegations are based on emotion and conspiracy theories, not facts. Her continued litigation wastes judicial resources and state tax dollars. Each time she litigates and loses based on her repeated failures to follow court rules and missing filing deadlines, her imaginary "judicial conspiracy" expands requiring state officials to repeatedly defend her frivolous but vexatious litigation. She continues to waste this the District Court and this Court's time with appeals.

On appeal, Mischler asserts the judicial and executive branches of Kentucky government, a court appointed expert psychologist, prior litigants, her former sister-in-law, a private law firm who defended state court judges in her prior cases --and now *even the federal judiciary itself* -- are conspiring against her in a scheme to help her ex-husband retain child custody. Mischler persists in this emotion based crusade even though her children are now emancipated, having attained the age of adulthood. Plaintiff's need to fantasize an imaginary judicial conspiracy appears to be her way to cope with the grief from her loss of custody and guilt for her own litigation missteps, despite the fact she hold a Master's degree in education and graduated from law school. She is unhappy pre-filing restrictions will screen out any future federal complaints she might file that would not survive motions to dismiss.

After reviewing dispositive motions and taking judicial notice of her extensive litigation history, the District Court below dismissed Plaintiff's most recent complaint and imposed pre-filing restrictions to shield future defendants from abusive litigation, warning her that additional frivolous suits could lead to monetary sanctions. Mischler argues on appeal that the federal judiciary in Kentucky is biased and conspiring against her. She asks this Court to vacate the judgment, assign an attorney from outside Kentucky to represent her, remand the case outside Kentucky, and order other mandamus type relief against state government officials to enforce state law, and for this Court to disclose which of its employees are doing social media research on her.

This Court may take judicial notice that Mischler is no stranger to this Court, or the federal and state courts in Kentucky. In the past 20 years she has filed a multitude of pro se federal civil rights complaints and appeals. Most of her cases stem from her ex-husband, Jonah L. Stevens, being granted full child custody in 2006 in a bitterly fought domestic relations case originating in Pike County Kentucky in 2001. Mischler has unsuccessfully collaterally attacked the adverse judgement bombarding state and federal courts with repetitive lawsuits and mandamus actions, which precede and underlie her present claims and demands.[1]

---

[1] *See e.g., Mischler v. Stevens*, 16-6185, 2017 WL 3220480 (6th Cir. May 16, 2017); *Mischler v. Lambert*, 3:08CV-231-M, 2008 WL 4327444 (W.D. Ky. Sept. 19, 2008);

She also litigated and lost prior state court cases against Kentucky Governor Matt Bevin and CHFS Defendant Susan Howard, where she blamed them for not intervening on her behalf.[2] This Court may take judicial notice of Mischler's previous federal court filings as well as the state court filings that were submitted as exhibits and considered by the federal courts in Mischler's prior federal cases.[3]

To briefly summarize what the federal courts have previously found: Jonah Stevens and Amy Jerrine Mischler were married on July 30, 1991. Two children were born of this union, a son born in 1994 and a son born in 1999. The family resided in Pikeville, Kentucky. The couple separated May 30, 2001, and Jonah Stevens filed for divorce in a domestic relations case styled *Stevens v. Stevens*, Pike

---

*Mischler v. Kentucky Supreme Court Justices*, 3:17-cv-00029-GFVT (filed March 29, 2017); *Mischler v. Stevens*, 7:13-CV-8, 2014 WL 1378805 (E.D. Ky. Apr. 8, 2014). *See also* R. 58, Memorandum Opinion and Order, Page ID # 686-690 (slip copy reported at *Mischler v. Bevin*, 3:17-CV-00066-GFVT, 2018 WL 1526333 *1, n. 1 (E.D. Ky. Mar. 28, 2018) (recounting cases). *See also* CHFS Defendants' memorandum of law (R. 29-2, Page ID # 348-349) for other Mischler pro se cases. It is standard practice for Mischler to accuse all judges that consider her cases and find against her to be biased and joining "the conspiracy." For example, she belatedly accused Senior U.S. District Court Judge Thomas Phillips, appointed in case number 7:13-CV-8, of bias because he is a graduate of Berea College and she claimed state judges were keeping her children away from her "as an extortion like tool" to keep her from pursing her civil rights.

[2] See *Mischler v. Commonwealth of Kentucky*, Franklin Circuit Court Civil Action No. 08-CI-01039, *aff'd*, *Mischler v. Greg Stumbo*, 2010-CA-000355 and *Mischler v. Cabinet for Health and Family Services*, Franklin Circuit Court, No. 17-CI-980.

[3] *See, Chase Bank USA, N.A. v. City of Cleveland,* 695 F.3d 548, 553 n. 2 (6th Cir. 2012); *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980); and *Granader v. Public Bank*, 417 F.2d 75, 82 (6th Cir. 1969).

County Circuit Court, Civil Action No. 01-CI-01197. The parties entered into a separation agreement which provided both parents would share joint legal custody. Mischler began law school in Grundy, Virginia in the fall of 2002, and graduated in 2005. The parties continued to share time with their children by informal agreement. The couple filed dueling Domestic Violence Petitions against each other in 2002, each accusing the other of child abuse or neglect. The local family court judge recused. The case was assigned to a family court judge from adjoining Floyd County, Kentucky without objection by either party. Hon. Julie Paxton presided until she recused when Mischler began to complain about her, starting a pattern of Mischler accusing successive judges of bias whenever she becomes dissatisfied with any unfavorable judicial rulings.

Mischler later argued Judge Paxton's appointment was illegal creating a "sham proceeding" and she unsuccessfully argued in state and federal court that all of Judge Paxton's orders are "void."[4] Mischler's custody fight with her ex-husband escalated in April 14, 2006, when Stevens filed another Domestic Violence Petition against Mischler in Pike District Family Court (02-D-00202-003). That case was also assigned to Judge Paxton. Stevens alleged Mischler had endangered the welfare

---

[4] The Supreme Court of Kentucky disagreed and held Mischler's complaints became moot when her divorce became final. *Mischler v. Thompson*, 436 S.W.3d 498, 503 n. 7 (Ky. 2014). And this Court has held Mischler's claims against Judge Paxton are time barred. *Mischler v. Stevens*, 16-6185, 2017 WL 3220480 (6th Cir. May 16, 2017).

of their children, by not giving their then 6-year old son medicine for strep throat and forcing the boy to march around Pikeville while he was sick on a hot day carrying a sign. Mischler wanted to publicly shame Stevens because she thought he cancelled health insurance for their children.[5] Granting Stevens' petition, Judge Paxton issued a Domestic Violence Order ("DVO") against Mischler on May 24, 2006. Stevens was eventually granted temporary custody.[6]

Notably, insofar as the CHFS Defendants are concerned, in her 2006 DVO order of protection, Mischler concedes Judge Paxton "restrained [her] from committing further acts of abuse" and ordered the CHFS Department of Permanency and Protection ("DPP") "to open a case and provide family services."[7] Complying with that Order, the Cabinet sent a state social worker to meet with Mischler at her apartment to discuss Stevens's accusations and offer services. Mischler's sister, who is also a state social worker, called urging her cooperation. The Cabinet later

---

[5] More specifically, Stevens petition for DVO alleged, on April 14, 2006, Mischler "had the parties minor child . . ., age 6, out in the streets of Pikeville in over 80° heat when he was sick with strep throat forcing him to walk up and down the street with a large sign after she failed to purchase his antibiotics." Stevens further alleged Mischler was mentally impaired and asserted she wanted to embarrass or humiliate him so much that she was willing to hurt their children.

[6] Copies of these state court records were filed as exhibits in several of Mischler's prior federal cases. *See, e.g.*, *Mischler v. Lambert*, U.S. Dist. Ct., W.D. Ky. at Louisville, Case 3:08-cv-00231-JHM-DW Document 1-2 Filed 04/30/08 and 14-6 and 14-7 filed 08/08/08.

[7] DPP includes Child Protective Services and Adult Protective Services, both units of the CHFS Department of Community Based Services ("DCBS").

intervened on Mischler's behalf to help sort out whether Stevens owed any child support or reimbursement for medical expenses from when the couple shared custody. On July 19, 2006, Judge Paxton ordered Stevens and Mischler to exchange information about the child support and medical expenses each had paid.[8]

Concurrently with Stevens petitioning the Kentucky Pike County District Court for a DVO, an anonymous person reported to CHFS that Mischler neglected or abused her sick child. Under Kentucky law, all persons have a duty to report child neglect or abuse to the Cabinet. Ky. Rev. Stat. § 620.030. The report was based on the same April 14, 2006 picketing incident described in Stevens's DVO petition. The anonymous reporter probably learned of Mischler's conduct because a local newspaper photographed and published a news story about her protest.[9] Upon receipt of a credible report of child neglect or abuse, CHFS social workers investigate and depending on the results of their investigation either substantiates or does not substantiate the reported abuse or neglect.[10]

---

[8] Ironically, after hearing evidence in the child custody case, the state family court judge eventually held Stevens had medical coverage for the couple's children when Mischler was picketing. It turned out a pharmacist employee entered the wrong birth date for the child, and when the prescription could not be filled Mischler wrongly assumed Stevens cancelled his coverage "to play mind games with her." *See Mischler v. Stevens*, 3:17-cv-00008, R. 186-8, Pg. ID # 3542, filed 4/15/16.

[9] The local newspaper in Pikeville, Kentucky photographed Mischler and her child picketing with the large sign which was provided to CPS by the anonymous reporter. *See Mischler v. Stevens*, 3:17-cv-00008, R. 186-6 filed 4/15/16 for copy of photo.

[10] "Substantiated" refers to an entry that a social worker makes in the Cabinet's

In this case, the social worker issued a neglect substantiation against Mischler on March 16, 2007, predicated on the family court's DVO factual findings previously issued by Judge Paxton that Mischler abused or neglected her child. Mischler appealed and the substantiation was later vacated. Persons "substantiated" for child neglect or abuse in Kentucky have a right to file an administrative appeal with the Cabinet's Administrative Hearings Branch. An appeal leads to an evidentiary hearing with a state agency hearing officer making a recommended decision, which was at that time ultimately decided by the Commissioner of DCBS.[11]

Because the family court found child abuse from the picketing incident and ordered the Cabinet to provide services to Mischler, the Cabinet followed the court's order with a substantiation. The Cabinet's policy is to follow whatever a state judge has already held, as a matter of administrative collateral estoppel.[12]

Meanwhile, the Stevens/Mischler domestic relations case, Civil Action No. 01-CI-01197, proceeded slowly in state court delayed by the need for successive

---

computer system indicating that the social worker has probable cause to believe that allegations of dependency, neglect, or abuse occurred. The social worker's substantiation of the allegations is not binding upon a court and has no preclusive effect in any subsequent proceeding. *K.H. v. Cabinet for Health and Family Services*, 358 S.W.3d 29, 32 (Ky. App. 2011). However, unless reversed on appeal, a substantiated abuser's name is placed on the state's central child abuse registry, as prescribed by the federal Child Abuse Protection and Prevention Act, 42 U.S.C. § 5106a *et seq.*, and 922 KAR 1:470.

[11] *See* 922 KAR 1:480.

[12] Kentucky administrative agencies must give res judicata effect to court orders. A Cabinet hearing officer cannot overturn a court finding. *See* 922 KAR 1:480 § 4.

special judge appointments. Mischler argued in family court the DVO was issued erroneously. Judge Paxton's successor, Special Judge John David Preston, ultimately agreed. He vacated Judge Paxton's DVO on December 12, 2006, because he found the DVO petition was sworn before a Domestic Relations Commissioner, rather than a judge. When the Cabinet became aware of Judge Preston's order vacating Judge Paxton's DVO, the DCBS Commissioner vacated the Cabinet's substantiation against Mischler by final agency administrative order dated July 13, 2007.[13] Consequently, Mischler was never placed on the child abuse/neglect registry because she appealed from the substantiation and she prevailed. Reversed substantiations are not made available to the public, but they are available internally in the agency database to Cabinet social workers as background information for whenever later abuse or neglect reports are filed against the same parent. A pattern of reports raises concerns about the parent or the reporting sources.

State court records, which Mischler or Stevens previously filed in her prior federal cases, reveal Mischler did not object to the dismissal of the Domestic Violence Order or Judge Preston's appointment and she did not appeal the temporary custody order. Acting in accordance with Ky. Rev. Stat. § 403.290, on March 1, 2007 another successor special judge, Hon. Janie McKenzie-Wells, directed Stevens

---

[13] See Cabinet final agency administrative order, filed as exhibit in this case (R.52-2, Pg. ID # 609-615).

and Mischler to contact an expert psychologist, Dr. Sally Brenzel, for a custodial evaluation. Dr. Brenzel is a well-known licensed clinical psychologist, often called upon by Kentucky family court judges to provide custody evaluations and assist them through her professional expertise to issue reports to help the courts decide what is the best interests of children in contested custody fights.[14]

On November 7, 2007, another successor family court judge, Hon Lewis Nicholls, appointed Dr. Brenzel, to interview the couple and make a final child custody recommendation to the court.[15] According to the family court's final judgment, Dr. Brenzel spent 24 hours interviewing the children, stepchildren, parents and maternal grandmother. The state court opinion states Dr. Brenzel reported in her professional opinion that Mischler for the past two years had exhibited "a pervasive distrust and suspiciousness that may have at times reached a paranoid delusional level." She recommended Stevens be granted custody. After receiving the expert's report, Judge Nicholls conducted an evidentiary hearing over the course of two days and entered the final family court judgment, awarding sole

---

[14] For example, see *E.S. v. M.S.V.*, 2016-CA-000475-ME, 2017 WL 2210741, at *1 (Ky. App. May 19, 2017), review denied (Sept. 20, 2017) (referencing Dr. Brenzel's expert evaluation and report to the court in that case).

[15] *See* Dr. Sally Brenzel's Motion to Dismiss, Memorandum of Law and exhibit in this case. R. 15, 15-1, 15-2 (family court order) and 15-3 (family court docket sheet). Dr. Brenzel's report was filed under seal in *Mischler v. Stevens*. The family court judge quoted from the expert report in the final custody decree. CHFS Defendants assume the accuracy of the family court's quotes.

custody to Stevens on August 6, 2009.[16] Mischler appealed to the Kentucky Court of Appeals, but her appeal was dismissed because she failed to perfect her appeal by filing a brief. Mischler admits missing the deadline. In correspondence to the court filed in Federal Case No. 7:13-CV-8 she says she missed the deadline because of "situational depression."

Having missed her state appellate brief filing deadline, the custody decree became final. Rather than acknowledging her behavior having consequences, in successive state and federal cases, Mischler collaterally attacked the custody judgment in a series of pro se mandamus and civil rights actions. Each time she loses, she imagines the most recent loss to be part of the "judicial conspiracy." She has litigated and lost successive cases in the state circuit courts of Pike and Franklin Counties, Kentucky; the Kentucky Court of Appeals, the Kentucky Supreme Court, the Federal Courts in both the Eastern and Western Districts; and the federal judgments have been affirmed by this Court. She also complained to Kentucky executive branch officials. When they decline to prosecute or impeach the state judges, or join her litigation campaign, she accuses successive Kentucky Attorney

---

[16] The 23-page Order issued by Special Judge Lewis Nichols, filed as an exhibit in *Mischler v. Stevens*, 3:17-cv-00008, R. 186-8 filed 4/15/16, recites the full history of the divorce case, quotes Dr. Brenzel's report and references all the special judge appointments required because of Mischler's many lawsuits and her leveling bias charges against any judge that finds against her.

Generals, Cabinet officials and Governors of joining the "judicial conspiracy," fantasizing her run-of-the- mill child custody case would prompt concerted action.

Mischler's ever enlarging imaginary conspiracy now includes all Kentucky Supreme Court Justices, the Kentucky Bar Association, the Trial Commissioner of the Pike District Court, the Pike County Attorney, all the state judges that found against Plaintiff, current and previous Kentucky governors and Attorneys General, and current or former employees of CHFS. Mischler believes everyone is out to interfere in a long resolved child custody fight or cover up the "judicial conspiracy." Mischler's previous legal claims have been decided and dismissed on numerous grounds, such as the absolute judicial immunity of the state judges and justices, the *Rooker-Feldman* doctrine,[17] res judicata the domestic relations doctrine, and the one-year statute of limitations bar for filing federal civil rights claims in Kentucky.[18] Most recently, just prior to filing her latest federal civil rights complaint, Mischler unsuccessfully attempted to sue the Cabinet for Health and Family Services and

---

[17] The *Rooker–Feldman* doctrine, from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) "bars attempts by a federal plaintiff to receive appellate review of a state-court decision in a federal district court." *Howard v. Whitbeck*, 382 F.3d 633, 638 (6th Cir. 2004).

[18] *See* e.g., *Mischler v. Clary,* 16-6184, 2017 WL 3220478 (6th Cir. May 16, 2017). Mischler has initiated no fewer than thirteen actions in the Kentucky Court of Appeals, *see* http://apps.courts.ky.gov/Appeals/ COA Dockets.shtm; and ten actions in the Kentucky Supreme Court as a result of the 2002 Pike County events later state court orders dating from 2006.

Kentucky Governor Matt Bevin in the Kentucky Franklin Circuit Court for his "negligent supervision" of the Cabinet whom she believes is "forging" documents. The state court found against Plaintiff and dismissed her case with prejudice on November 2, 2017.[19] She did not appeal.

This brings us to the instant case. In what must have looked like "dějá vu all over again,"[20] to the beleaguered repeat defendants, Mischler commenced the underlying federal civil rights claim on August 24, 2017, asserting federal civil rights claims under 42 U.S.C. § 1983, alleging violations of the First, Fourth, Fifth and Fourteenth Amendments to the Constitution. She also asserted an ambigous supplemental state tort claim for "fraud" to commit a Fourth Amendment violation through "purposefully falsified documents." (Complaint, R. 1, Pg. ID # 1-23). Mischler named twenty-six defendants including Kentucky Governor Matt Bevin and the following CHFS Defendants (all past or present employees of the Cabinet): Deputy Cabinet Secretary Timothy Feeley, Deputy General Counsel Mona Womack, regional attorney Zack Ousley, and DCBS employees Susan Howard, Debra Wilcox-LeMaster; Kathy Larder; Deborah Webb; Shereena Hamilton-

---

[19] Kentucky Franklin Circuit Court, *Mischler v. Cabinet for Health and Family Services*, Civil Action No. 17-CI-980 [See R. 29-4 and 29-6].
[20] Yankees manager Yogi Berra explained his famous quote originated when he witnessed Mickey Mantle and Roger Maris repeatedly hitting back-to-back home runs in the Yankees' seasons in the early 1960s.

Spurlock,[21] Latoya Jones; Wilma Taylor; Mike Hartlage; Gwen Hatfield; Jeffry Prather; Debbie Dile; and Emily Jones-Gray. Some of these defendants, such as Governor Bevin, were sued only in their official capacities. Others were sued individually for damages.

Mischler sought unspecified general and compensatory damages, punitive damages, and she asked the court to issue a writ of mandamus compelling the Governor to enforce state law, appoint a special prosecutor to investigate the Kentucky judicial system and remove all "false documents" the Cabinet supposedly possess stating she is a substantiated child abuser.[22] In her fraud claim, Mischler alleged various Cabinet officials made statements or failed to take action as a "fraud upon the Federal Courts to cover up the discovery of the 2002, 2006, 2008, and 2013 criminal conduct of state actors."[23] She accused CHFS Defendants of entering false records and destroying evidence in 2006 "to hold as evidence against her if Ms. Mischler discovered the 4th Amendment violations."[24]

The only factually specific allegation was Plaintiff's assertion that a social worker "in April 2006, made a material representation to Ms. Mischler that she had jurisdiction to investigate Ms. Mischler for child abuse …. made with the intention

---

[21] Plaintiff misspelled this defendant's last name as "Spurlocke."
[22] R. 1, Complaint, ¶¶ 80-81, Pg. ID # 21-22.
[23] R. 1, Complaint, ¶ 4, Pg. ID # 6.
[24] R. 1, Complaint, ¶ 17-18, Pg. ID # 9.

of Ms. Mischler to allow [the worker] into her home to [spy on her]."[25] No other "fraud" is alleged after 2006, until Deputy Cabinet Secretary Feeley "refused to give Ms. Mischler any 1st Amendment Redress of Grievances in a letter dated August 25, 2016."[26]

Mischler recited the common-law elements of fraud in Kentucky in her complaint, but did not plead with particularity what any CHFS Defendant allegedly did to defraud her, when they allegedly defrauded her, or how they allegedly benefited by misleading her. She accused one social worker of making a material misrepresentations she had jurisdiction to investigate Plaintiff for child abuse, asserting the worker should have known Judge Paxton's order was "void."[27] The remaining CHFS Defendants were lumped together, accused of "denying Ms. Mischler any redress of grievances even though she had only discovered the fraud."[28] Mischler signed her complaint listing her academic credentials, "J.D. 2005, M.M.E 1993 and B.M.E. 1981."[29]

Despite being granted extensions of time to accomplish service of process, Mischler did not serve process on most of the CHFS Defendants in their individual

---

[25] R. 1, Complaint, ¶ 59, Pg. ID # 18.
[26] R. 1, Complaint, ¶ 51, Pg. ID # 16.
[27] Mischler repeats this assertion in her Opening Brief. See Appellant's Brief, p. 13 ¶ 4.G.2 and p. p. 14, ¶ 4.G.8
[28] R. 1, Complaint, ¶ 61, Pg. ID # 18
[29] She often reminds the courts, she is "no ordinary pro se litigant."

capacities. Those served moved for dismissal pursuant to Civil Rule 12(b)(6), joining similar motions by other defendants. *See* Stites & Harbison's motion to dismiss, supporting memorandum of law and attached exhibits (R. 14, 14-1 through 14-7, Pg. ID # 139-236); Dr. Sally Brenzel's motion to dismiss, supporting memorandum of law and exhibits (R.15, 15-1 through 15-4, Pg. ID # 237-279); Selena Stevens's motion to dismiss and supporting memorandum of law (R. 16 and 16-1, Pg. ID # 265-273);[30] Kentucky Attorney General and Assistant Attorneys General joint motion and supporting memorandum (R. 19 and 19-1, Pg. ID #282-302); Governor Matt Bevin and "CHFS Defendants" motion to dismiss Plaintiff's official capacity claims, supporting memorandum of law, and exhibits (R. 29, 29-2 through 29-8, Pg. ID # 339-434); Judge Janie Wells and Judge John David Preston's motion to dismiss and memorandum of law (R. 43 and 43-1, Pg. ID # 514-529); retired Judge Julie Paxton, retired Judge Lewis Nicholls, and former Kentucky Supreme Court Chief Justice Joseph Lambert's motion to dismiss and memorandum of law (R. 49 and 49-1, Pg. ID # 540-557); and "CHFS Defendants" Debra J. Webb, Shereena Hamilton-Spurlock, Emily Jones-Gray, Debra R. Wilcox-LeMaster, and Zack Ousely's motion to dismiss Mischler's individual capacity claims, supporting memorandum of law and exhibit (R. 52, 52-1 and 51-2, Pg. ID # 566-616). CHFS

---

[30] Stevens is Mischler's former sister-in-law, who "joined the conspiracy" by becoming Face Book friends with one of the Cabinet social workers who attended the same high school.

Defendants, later joined by other defendants, asked the District Court to impose Rule 11 sanctions against Mischler. (R. 30, 53, Pg. ID # 435-438; 617-628). Joint Local Rule 7.1(c) gave Plaintiff 21 days to respond to each of these motions.

Mischler failed to respond to any dispositive motion. She moved for recusal of Judge Van Tatenhove, on January 16, 2018, citing 28 U.S.C. § 144, but neglected to certify her motion was filed in good faith, as mandated by the statute, rendering her motion defective. (R. 50, 50-1, Pg. ID # 558-561).The court declined. (R. 55, Order, Pg. ID # 636-637). Mischler attempted to file an interlocutory appeal to on March 7, 2018. (R. 56, Pg. ID # 638-682). The District Court issued its Memorandum Opinion and Order on March 28, 2018. (R. 58, Pg. ID # 686-708). The Court granted all pending motions to dismiss and imposed pre-filing restrictions on Mischler, but no monetary sanctions. *Id*.

After initially denying Plaintiff's recusal motion, on April 6, 2018, Judge Van Tatenhove reconsidered. Noting Mischler's "escalating campaign of unsubstantiated personal allegations," he *sua sponte* withdrew to avoid any appearance of bias. (R. 61, Order, Pg. ID # 717-718). Chief District Judge Karen Caldwell appointed Hon. Danny C. Reeves as successor. (R. 66, Order, Pg. ID # 734). Judge Reeves issued the final judgment on May 25, 2018, adopting Judge Van Tatenhove's Memorandum Opinion. (R. 68, Judgment, Pg. ID # 737). Mischler appealed on June 22, 2018 (R. 69, Notice of Appeal, Pg. ID # 738-770).

<u>**STANDARD OF REVIEW**</u>

This Court "review[s] *de novo* the district court's granting dismissal under Rule 12(b)(6)." *Top Flight Entm't, Ltd. v. Schuette*, 729 F.3d 623, 630 (6th Cir. 2013). When evaluating a motion to dismiss under Rule 12(b)(6), this Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal quotation marks omitted)). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). Although the complaint need not contain "detailed factual allegations," a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and alteration omitted). "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft*, 556 U.S. at 678 (internal quotation marks and citation omitted).

"In § 1983 cases, defendants often include the government agency and a number of government actors sued in their individual capacities. Therefore it is particularly important in such circumstances that the complaint make clear exactly

who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249–50 (10th Cir. 2008) (citing *Twombly*). This is particularly important when assessing qualified immunity because each official's defense must be evaluated based on his or her own actions. *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010).

"While state law governs the burden of proving fraud at trial in a diversity action in federal court, the procedure for pleading fraud in all diversity suits in federal court is governed by the special pleading requirements of Fed.R.Civ.P. 9(b)." *Minger v. Green*, 239 F.3d 793, 800 (6th Cir. 2001). "[T]he circumstances constituting fraud ... shall be stated with particularity." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001). Plaintiffs may not rely on "group pleading" by lumping defendants together. It is also not enough to offer "[g]eneralized and conclusory" recitations of the elements of fraud. *Id*. Instead, a federal court plaintiff must "allege[ ] facts showing" that the defendant's actions satisfy each element of the claim. *Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 471 (6th Cir. 2011). The purposes animating Civil Rule 9(b) are "(1) to alert defendants to the particulars of the allegations against them so they can intelligently respond; (2) to prevent 'fishing expeditions'; (3) to protect defendants' reputations against fraud allegations; and (4) to whittle down potentially wide-ranging discovery

to only relevant matters." *SFS Check, LLC v. First Bank of Delaware*, 774 F.3d 351, 358 (6th Cir. 2014).

To the extent the District Court also relied on personal and subject-matter jurisdictional defects in Mischler's claims against Governor Bevin and state officials sued in their official capacity, review is likewise *de novo*. *Cathedral Rock of N. Coll. Hill, Inc. v. Shalala*, 223 F.3d 354, 358 (6th Cir. 2000). This Court may affirm the District Court's dismissal on any ground and is "not restricted to ruling on the district court's reasoning...." *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 548 (6th Cir. 1999); *see also Bright v. Gallia Cty., Ohio*, 753 F.3d 639, 652 (6th Cir. 2014).

Unpreserved claims of judicial bias unpreserved claims of judicial bias against federal judges are reviewed under the plain-error standard. *United States v. Bankston*, 820 F.3d 215, 233 (6th Cir. 2016). Under that standard, this Court has discretion to remedy an error, but only upon a showing that the error is "clear or obvious, affect[s] a defendant's substantial rights, and seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Ramer*, 883 F.3d 659, 677 (6th Cir. 2018), *cert. denied sub nom. Westine v. United States*, 17-9085, ___S.Ct.___, 2018 WL 2389189 (U.S. Oct. 1, 2018).

## <u>SUMMARY OF ARGUMENT</u>

Plaintiff preserved no issues for appellate review. This Court ordinarily does not review issues not preserved for judicial review, but occasionally deviates from

the general rule in "exceptional cases or particular circumstances" or when the rule would produce a "plain miscarriage of justice." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008). Because of the presumption "that public officials have properly discharged their official duties," *Bracy v. Gramley*, 520 U.S. 899, 909 (1997) (internal quotation marks omitted), this Court seldom deviates from its general rule, when disappointed litigants claim the lower court judge was biased.

Mischler cannot satisfy this heighted plain error standard. She cannot satisfy it in her attacks on the integrity of the District Court, because she did certify her recusal motion was filed in good faith as required by 28 U.S.C. § 144. Therefore, this issue was not preserved as to the original federal judge. She filed no recusal motion against his replacement. On appeal, she offers no explanation for failing to seek recusal of the judge newly assigned to her case; and she has not argued any exceptional circumstances why this Court should consider any recusal issue for the first time on appeal. *See Jackson v. Roach*, 364 Fed. Appx. 138, 140 (5th Cir. 2010) (holding failure to seek recusal of newly assigned judge was not preserved for appeal and exceptional circumstances not shown).

Mischler also did not preserve any argument for appeal rebutting numerous affirmative defenses defendant raised in their motions to dismiss, because she did not respond to those motions. Immunity defenses may be raised in a motion to dismiss. "Once a defendant invokes qualified immunity, the plaintiff bears the

22

burden of showing that (1) the defendant's acts violated a constitutional right and (2) the right at issue was clearly established at the time of the defendant's alleged misconduct." *Barber v. Miller*, 809 F.3d 840, 844 (6th Cir. 2015). Moreover, it is well established that when there is more than one individual defendant in a case, "[e]ach defendant's liability must be assessed individually based on his [or her] own actions." *Binay v. Bettendorf*, at 640. Because she ignored the CHFS Defendants' motions to dismiss, Mischler did not defeat qualified or absolute immunity and she waived opposition to statute of limitations defenses.

Even if this Court excuses Mischler's lack of preservation, she has abandoned any arguments on appeal. Her Opening Brief fails to comport with the requirements of Federal Rule of Appellate Procedure 28, even under a relaxed pro se litigant standard. In contravention of these rules, Mischler attaches new documents as evidence in her Opening Brief, not part of the record. In the body of her brief she makes scurrilous baseless attacks on the District Court. This Court could strike her brief and dismiss her appeal to sanction this misconduct and lack of decorum.

Moreover, in her Opening Brief Mischler only asserts skeletal arguments in her lengthy list of issues she asks this Court to research and decide, without bothering to recite any case-law or other legal authority. Perfunctory and undeveloped issues on appeal are abandoned on appeal. It is not this Court's job to research the law and develop arguments for pro se appellants.

Finally, even if this Court overlooked the preservation issues and the glaring deficiencies in Mischler's Opening Brief, it should still affirm the judgment and hold the District Court did not err by dismissing her complaint, or by imposing pre-filing restrictions to prevent her from further abusing her right to access federal courts with even more serial complaints. There is nothing unusual about imposing prefiling restrictions in matters with a history of repetitive or vexatious litigation. Like the District Court, this Court lacks jurisdiction to issue mandamus relief against Governor Bevin or the other named Kentucky officials to compel them to perform discretionary state law duties and obligations. The District Court did not err in holding Mischler's damage claims against Governor Bevin and the CHFS Defendants are barred by the Eleventh Amendment to the Constitution of the United States, by sovereign immunity, and the applicable statutes of limitations. Res judicata or collateral estoppel as well as absolute and qualified immunities shield state officials from Mischler's damage claims. For all these reasons, this Court should dismiss this appeal or affirm the judgment and pre-filing restrictions.

## **ARGUMENT**

**I. THIS COURT SHOULD NOT CONSIDER, FOR THE FIRST TIME ON APPEAL, PLAINTIFF'S NEW ARGUMENTS AND EVIDENCE NOT PRESENTED TO THE DISTRICT COURT**

Mischler's Opening Brief is accompanied by twenty-six attachments which are not part of the record. Most of the attachments consist of irrelevant items she has

copied from the internet.[31] A few snippets of CHFS documents were attached, obtained by Mischler's from prior open records requests. She also makes new arguments (Issues A through J and "Special Public Record Notices") in her brief that were not timely made to the court below and thus are not properly before this Court.

### A. All Attachments in Appellant's Brief Should Be Stricken Because They Are Not Part of the Record Below

Rule 10(a) of the Federal Rules of Appellate Procedure provides that the record on appeal consists of the following:

> (1) the original papers and exhibits filed in the district court; (2) the transcript of proceedings, if any, and, (3) a certified copy of the docket entries prepared by the district clerk.

Fed. R. App. P. 10(a).

None of Mischler's twenty-five attachments are part of the record below. Accordingly, they do not constitute part of the record on appeal and must be stricken. *See Dauenhauer v. Bank of New York Mellon,* 562 Fed. Appx. 473, 477 (6th Cir. 2014) (granting motion to strike factual allegations not in the record below) and *Wilson v. Bowlen*, 52 F.3d 327 (6th Cir. 1995) (unpublished) ("[T]his court must grant the Motion to Strike, as this document was never made part of the record in district court.") and *Ryder v. McCabe*, 475 Fed. Appx. 411, 412 n. 3 (3d Cir. 2012) (documents appended to notice of appeal disregarded as not part of the record).

---

[31] Mischler attached random papers to her first and second notices of appeal, but made no effort to timely make them part of the court record.

**B.** **All Arguments Not Preserved in the District Court Are Improper and Should Not Be Considered on Appeal**

"Deadlines matter." *Re: Jackson Masonry, LLC,* __F.3d.___, 2018 WL 4997779 (October 16, 2018, 6th Cir.). Because Mischler did not timely respond to any defendant's motion to dismiss, she did not preserve any arguments for appeal. Numerous cases hold that where a plaintiff fails to respond to a motion to dismiss, his or her claims are deemed abandoned. Nevertheless, the District Court made an independent review of the sufficiency of Plaintiff's complaint, and held it did not set forth any plausible timely claim not otherwise time-barred by the applicable statutes of limitations or which could survive scrutiny under the affirmative defenses presented. These include absolute judicial immunity, qualified immunity, collateral estoppel, sovereign immunity, and lack of jurisdiction to grant mandamus relief against state officials to perform obligations Mischler asserts state law requires.

Generally, "an argument not raised before the district court is waived on appeal to this Court." *Marcilis v. Township of Redford*, 693 F.3d 589, 601 (6th Cir. 2012), quoting *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008); *Foster v. Barilow*, 6 F.3d 405, 406 (6th Cir. 1993). "Thus, where, as here, plaintiff has not raised arguments in the district court by virtue of [her] failure to oppose defendants' motions to dismiss, the arguments have been waived." *Humphrey v. U.S. Attorney Gen.'s Office*, 279 Fed. Appx. 328, 331 (6th Cir. 2008).

There are narrow exceptions to this rule, but they do not apply in this case. This Court "rarely" exercises its discretion to depart from the rule. *Foster,* at 406, citing *Scottsdale Ins. Co.*, 513 F.3d at 552. Mischler did make some effort to preserve her claim of judicial bias about Judge Van Tatenhove before he issued the Memorandum Opinion and Order, but she did not comply with 28 U.S.C. § 144 by certifying her motion was made in good faith; and she did not preserve any argument his successor, Judge Danny Reeves, was biased or that he should have voluntarily recused. She has waived that issue. *See Jackson v. Roach*, 364 Fed. Appx. 138 (5th Cir. 2010) (holding any claim newly assigned judge should have recused himself was untimely when raised for first time on appeal).

Because the primary issue Mischler argues in her Opening Brief, is her belief the federal courts have joined the imaginary state court "judicial conspiracy," but she does not even mention Judge Reeves in her brief, this issue is unpreserved. It is undeveloped, even now. This Court need not consider it. This Court presumes the honesty and integrity in those serving as adjudicators. "The presumption of impartiality stems not merely from the judicial-bias caselaw, but from the more generally applicable presumption that judges know the law and apply it in making their decisions." *Coley v. Bagley*, 706 F.3d 741, 751 (6th Cir. 2013). Applying the plain error standard of appellate review, this Court should affirm the judgment and disregard Mischler's unpreserved arguments.

**II. THIS COURT SHOULD DISMISS THIS APPEAL OR AFFIRM THE JUDGEMENT BASED ON PLAINTIFF'S FAILURE TO COMPLY WITH THE FEDERAL RULES OF APPELLATE PROCEDURE OR AS A SANCTION FOR HER PERSONAL ATTACKS ON THE FEDERAL COURTS**

Alternatively, this Court should dismiss this appeal to sanction Plaintiff, or because of her failure to follow the Rules of Appellate Procedure. Pro se litigants are not entitled to make unfounded accusations that a court or judicial officer is biased or prejudiced or insult a judge's competence. Mischler's Opening Brief also fails to meaningfully address the factual and legal basis of the District Court's decision. The bulk of her brief consists of unjustified personal attacks against the federal judiciary. She apologizes to this Court for filing a non-traditional Opening Brief because she says "she has not had time for such details." Appellant's Brief, p. 1. By doing so she has abandoned any argument for reversal. The only special consideration to which a pro se litigant is entitled is to have her pleadings construed liberally by a court. *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir.1999). That is it. A pro se litigant is not excused from the requirement to show appropriate courtesy and respect to the Court and to present her case in compliance with the federal rules of civil and appellate procedure.

Mischler has abandoned all claims on appeal against Governor Bevin and the CHFS Defendants. An appellant abandons all issues not raised and argued in their initial brief. *See Guilmette v. Howes*, 624 F.3d 286, 292 (6th Cir. 2010). A failure to

address the legal basis upon which the district court dismisses claims amounts to an abandonment of those claims on appeal. *See Boyd v. Ford Motor Co.*, 948 F.2d 283, 284 (6th Cir. 1991). This Court has consistently dismissed pro se appeals where their briefs failed to adequately address the issues. *See, e.g., Preferred Auto. Sales Inc. v. Kocis*, 60 Fed. Appx. 583, 583-84 (6th Cir. 2003) (holding the pro se appellant had "abandoned his appeal by failing to brief the germane issue" and reiterating that "pro se parties must still brief the issues advanced and reasonably comply with the standards of Fed. R. App. P. 28"); *Hammond v. Schatz Underground Cable*, 52 Fed. Appx. 742, 743 (6th Cir. 2002) (finding appellant had abandoned his appeal and noting pro se appellants "must still brief the issues advanced with some effort at developed argumentation") (internal quotation omitted)); *Smith v. City of Columbus*, 16 Fed. Appx. 309, 310 (6th Cir. 2001) (same). Other circuits agree. *See Shophar v. City of Olathe*, 723 Fed. Appx. 579, 580 (10th Cir. 2018) (Pro se plaintiff who was unhappy with various child custody matters forfeited right to appellate review of dismissal of action by filing appellate brief which contained no argument of substance); *Legrand v. Gillman*, 576 Fed. Appx. 334, 337 (5th Cir. 2014) (Pro se plaintiff's brief which merely restated facts alleged in her lower pleadings and conclusory assertions of those facts deemed deficient).

Federal appellate courts also dismiss appeals when appellate briefs contain disrespectful offensive language attacking the federal district judge. *See Fite v.*

*Hoover Co.*, 35 Fed. Appx. 158, 160 (6th Cir. 2002) (striking brief containing scurrilous attacks on the district court and including extraneous documents not part of record); *Gueye v. U.C. Health*, 1:13-CV-673, 2014 WL 4984173, at *6 (S.D. Ohio Oct. 6, 2014) (discussing inherent power of court to punish pro se litigants who insult integrity, impartiality, and competence of Court and its judicial officers); *Theriault v. Silber*, 579 F.2d 302 (5th Cir. 1978) ("Our pro se practice is a shield against the technical requirements of a past age; it is not a sword with which to insult a trial judge."); *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 839 (10th Cir. 2005) (Recognizing inherent power to impose respect, decorum, and authority to *sua sponte* dismiss appeal and strike a pro se Appellant's brief).

Mischler's Opening Brief is not only deficient, it is rife with personal insults and attacks. She accuses the federal judiciary of "stalking her on the internet." She makes scurrilous attacks against Judge Van Tatenhove, stating he is "not fit to be a federal judge" and she accuses this Court of "lacking ethical credibility." She similarly accuses state judge defendants of "bribing" Kentucky Attorney General Andy Beshear "to prevent discovery of judicial misconduct in Amy Mischler's cases." We also note, as evidenced by Mischler's filings in her prior cases that her latest brief is just one in a series of similar personal attacks directed at federal or state court judges who issued adverse rulings. Even so, courts have been charitable and compassionate, in apparent sympathy to her pro se status.

Appellant's Opening Brief is also devoid of citation to controlling--or even persuasive--authority. She asks this Court to consider new evidence. Mischler is essentially seeking to try her case before this Court based on mere conclusional statements and new documentary evidence, not even remotely related to the affirmative defenses that defeated her latest complaint. She attaches a newspaper article about West Virginia lawmakers impeaching members of the West Virginia Supreme Court; another article concerning the Kentucky State Auditor issuing a critical audit regarding the Kentucky Administrative Office of the Courts on disposal of surplus property; the business card of an FBI agent, and a smattering of incomplete state court records, and Open Records documents received from the Cabinet. She expects this Court to synthesize these random papers as evidence and formulate a legal argument on her behalf. That is not the job of this or any appellate court.

On the contrary, Federal Rule of Appellate Procedure 28(a) requires that an appellant's brief include 'a statement of the issues presented for review,' and [a]n argument on each issue presented." *Bickel v. Korean Air Lines Co*., 96 F.3d 151, 153 (6th Cir.1996), *cert. denied*, 519 U.S. 1093 (1997). Federal Rule of Appellate Procedure 28(a)(9)(A) requires the appellant's argument to contain "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." "Issues adverted to in a perfunctory manner, unaccompanied

by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir.1997) (quotation and alterations thereto omitted). "Such arguments are waived." *CIMOS, LLC v. Nortek Glob. HVAC, LLC*, 736 Fed. Appx. 577, 584 (6th Cir. 2018). A skeletal "argument", really nothing more than an assertion, does not preserve a claim. Especially not when the brief presents a passel of other arguments. *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991).

Although this Court liberally construes briefs of pro se litigants, they must still brief the issues and reasonably comply with the requirements of the Federal Rules of Appellate Procedure. *Bouyer v. Simon,* 22 F. App'x 611, 612 (6th Cir. 2001) (*citing McNeil v. United States,* 508 U.S. 106, 113 (1993)); see Fed. R. App. P. 28(a)(9); *Coleman v. Shoney's, Inc.,* 79 F. App'x 155, 156-57 (6th Cir. 2003) (concluding that the pro se appellants had abandoned their appeal because they had not "adequately briefed any appellate issue"). *"*While pro se litigants are afforded significant leeway ..., those who proceed without counsel must still comply with the procedural rules that govern civil cases." *Frame v. Superior Fireplace*, 74 F. App'x. 601, 603 (6th Cir. 2003). Mischler should know this, having graduated from law school and filed so many pro se cases over the years.

In contravention of the appellate procedural rules, Mischler's Opening Brief does not contain a table of authorities. It does not include any case authorities. It does not include any reasoned analysis. This Court should therefore deem her Opening Brief deficient and summarily affirm the district court. As this Court has said, it is not the proper role of this Court to search the record and construct arguments. "Parties must do that for themselves." *Brenay v. Schartow*, 709 Fed. Appx. 331, 337 (6th Cir. 2017). Our adversarial system depends on more than merely reciting a list of issues a party would like this Court to research.

> Demanding this much from the parties is not a new proposition or one that is unique to this court. *See, e.g., Elite Int'l Enter., Inc. v. Norwall Grp., Inc.*, 628 Fed.Appx. 370, 374 (6th Cir. 2015) (holding that because a party offered "only conclusory assertions," it "waived its arguments on this front by failing to develop them in its brief"); *Operating Eng'rs Local 324 Health Care Plan v. G & W Constr. Co.*, 783 F.3d 1045, 1057 (6th Cir. 2015) (declining to address a claim "[b]ecause it is not our function to craft an appellant's arguments"); *United States v. Hayter Oil Co., Inc. of Greeneville*, 51 F.3d 1265, 1269 (6th Cir. 1995) (finding that defendants had waived their claims when they "d[id] nothing more than make the conclusory assertion that their rights ... were violated"); *see Citizens Awareness Network*, 59 F.3d at 293 (concluding that a party had waived claims in light of the "sparsity of its allegations and the complete lack of argument or factual support"); *United States v. Dunkel*, 927 F.2d [at 956] (*per curiam*) (stating that a "skeletal 'argument' " does not preserve a claim and explaining that "[j]udges are not like pigs, hunting for truffles buried in briefs").

> And while it may be tempting to flesh out the parties' arguments for them, it is improper for the courts to do so. *See LidoChem, Inc. v. Stoller Enters., Inc.*, 500 Fed. Appx. 373, 388–89 (6th Cir. 2012) (Thapar, J., dissenting in part). Our system is an adversarial one, and it is up to the parties to spar with each other on each and every issue. Judges have no

role in this fight other than to declare a winner. And if we begin to assist the parties in performing their function, it will quickly usurp ours. If appellate courts roll up their judicial sleeves, scour the record, and develop the relevant arguments and counter-arguments, what is to prevent the parties from submitting a two-page brief stating their legal claims and leaving it to the court to do the rest? There must be a line, and fortunately that line has already been drawn.

*Brenay.,* at 337. Mischler's Opening Brief is similar to the deficient briefs described in *Bouyer v. Simon,* where this Court observed:

The plaintiffs' briefs are wanting. The briefs are devoid of citation to controlling-or even persuasive-authority. The plaintiffs have submitted new documentary evidence attached to their briefs, but no citation to the record that was before the district court is evident. The plaintiffs are essentially seeking to try their case before this court based on their conclusional statements and new documentary evidence. This court is a court of error: unless exceptional circumstances are present, we will not address an issue not first raised in the district court. *Enertech Elec.*, 85 F.3d at 261. No exceptional circumstances exist in this case, particularly in the light of the plaintiffs' attempt to raise new questions of fact in this court. *See Taft Broad. Co. v. United States*, 929 F.2d 240, 244 (6th Cir.1991) (noting that it is particularly inappropriate to decide new questions of fact for the first time on appeal).

*Id*., at 612-613.

The Supreme Court has "never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." *McNeil v. United States*, 508 U.S. at 113. On the contrary, "in the long run, experience teaches that strict adherence to procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." (internal quotations and citation omitted). *Id*.

In summary, Mischler's failure to comply with Fed. R. App. Pro. 28(a) and her scurrilous personal attacks on the District Court justify dismissing her appeal as a sanction or constitutes a waiver of any argument for reversal on appeal.

### III. PLAINTIFF'S UNPRESERVED ACCUSATIONS OF JUDICIAL BIAS DO NOT SUPPORT VACATING THE OPINION OR JUDGMENT

Even if this Court excuses Plaintiffs lack of preservation and the deficiencies in her Opening Brief, Mischler has not shown any reason for this Court to vacate the District Court judgment. Mischler argues Judge Van Tatenhove had a conflict of interest because she says his wife is a state employee, and she speculates Chief District Judge Karen Caldwell was "stalking her" on social media.[32] Mischler's Opening Brief does little more than attempt to impugn (without basis) the integrity of the District Court. Her fantastical theories provide no basis to vacate the judgment.

A federal judge is presumed to be impartial, and a party seeking disqualification "bears the substantial burden of proving otherwise." *Scott v. Metropolitan Health Corp.*, 234 Fed. Appx. 341, 352 (6th Cir. 2007). "The burden is not on the judge to prove that he is impartial." The recusal statute has specific requirements which Mischler ignored. Title 28 U.S.C. § 144, entitled "Bias or prejudice of judge," provides:

---

[32] Mischler maintains a public webpage on the World Wide Web called "Pike County Injustice Files." She speculates federal judges are stalking her by supposedly reading this webpage or following her on social media.

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. *It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.*

(emphasis added).

Mischler filed a motion to recuse Judge Van Tatenhove and submitted her affidavit on January 16, 2018. (R. 50, motion; R. 50-1, Affidavit, Pg. ID # 558-561). She also filed a "notice of due process violation." (R. 51, Pg. ID # 563-564). The Court denied the motion on March 2, 2018 (R. 55, Pg. ID # 636-637), noting Mischler's affidavit did not contain the mandatory certification

However, when Mischler escalated her personal attacks, Judge Van Tatenhove voluntarily recused. The case was referred to Chief District Judge Karen Caldwell for further reassignment on April 6, 2018. (Order, R. 61, Pg. ID # 717-718). Judge Caldwell assigned the case to Judge Danny C. Reeves. (Order, R. 66, Pg. ID # 734). Judge Reeves issued the final judgment on May 25, 2018. (Order, R. 68, Pg. ID # 737). Notably, Mischler never sought his removal, filed any affidavit in support, or claimed he is biased.

Mischler's Opening Brief does not even mention Judge Reeves. It is too late to challenge him for bias now. Unless exceptional circumstances exist, this Court normally will decline to address an issue not first raised in the district court. *Enertech Elec., Inc. v. Mahoning County Comm'rs*, 85 F.3d 257, 261 (6th Cir. 1996). This general rule bars an appellate court from considering a recusal issue not initially raised in the trial court. *In re Eagle-Picher Indus., Inc.*, 963 F.2d 855, 862-63 (6th Cir. 1992); *Callihan v. Kentucky*, 36 Fed. Appx. 551, 552 (6th Cir. 2002). As no exceptional circumstances exist in this case, this Court should decline to consider any new argument claiming Judge Reeves was biased.

A party may not lie in wait, knowing of facts requiring disqualification under § 455(a), and raise the issue only after the court's ruling on the merits. *Summers v. Singletary*, 119 F.3d 917, 921 (11th Cir. 1997), *cert. denied*, 523 U.S. 1005 (1998). "Promptness in asserting disqualification is required to prevent a party from awaiting the outcome before taking action." *Crowder v. Conlan*, 740 F.2d 447, 454 (6th Cir. 1984). *See also, In re City of Detroit*, 828 F.2d 1160, 1167-68 (6th Cir.1987) (*per curiam*). "Timeliness is a factor that obviously merits consideration by a court that is trying to determine whether a judge is truly biased or a litigant is merely trying to avoid an impending adverse decision." *Id*. Consequently, Mischler's argument, if any, was not preserved as to Judge Reeves, and are moot as to Judge Van Tatenhove.

There was no reason for Judge Reeves to step aside. Voluntary recusal is based on an objective standard, not "on the subjective view of a party." *United States v. Dandy*, 998 F.2d 1344, 1349 (6th Cir. 1993). As explained in *Liteky v. United States*, 510 U.S. 540 (1994):

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion ... In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required ... when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.

*Id.*, at 555.

This Court adopted the *Liteky* standard in judicial disqualification cases. *See, e.g., Burley v. Gagacki*, 834 F.3d 606, 616 (6th Cir. 2016). This Court has cautioned that "[t]here is as much obligation upon a judge not to recuse himself when there is no occasion as there is for him to do so when there is." *Easley v. Univ. of Mich. Bd. of Regents*, 853 F.2d 1351, 1356 (6th Cir. 1988) (alteration in original) (citation omitted). Unnecessary recusals waste judicial resources and granting groundless disqualifications promote judicial shopping. *City of Cleveland v. Krupansky*, 619 F.2d 576 (6th Cir. 1980).

Any reasonable objective judge in Judge Reeves position, knowing of Mischler's proclivities would not recuse, knowing she *inevitably* believes any judge who finds against her is biased. *See, e.g., Mischler v. Lambert*, No. 3:08-cv-231-M, 2008 WL 432744 (W.D. Ky. Sept. 19, 2008); *Mischler v. Thompson*, 436 S.W.3d 498 (Ky. 2014); *Mischler v. Stevens*, No. 7:13-cv-08-TWP, 2014 WL 1378805 (E.D. Ky. April 8, 2014); and *Mischler v. Clary*, Case: 3:17-cv-00066-KKC. A state family court judge reviewed an expert psychological report suggesting Mischler has episodic delusional paranoia. That would be in keeping with her accusing social workers of conspiring when they simply followed court orders, and also explain Michler's metastatic "judicial conspiracy."[33] In any event, she neither preserved nor has shown any court bias sufficient to vacate the judgment.

Vacating the judgment under these circumstances would encourage similar pro se litigants to present "speculative and ethereal arguments for recusal and thus arrogat[e] to themselves a veto power over the assignment of judges." *Scott*, 234 Fed. Appx., at 341, quoting *Draper v. Reynolds*, 369 F.3d 1270, 1280 (11th Cir. 2004). This Court should not countenance such tactics.

---

[33] Courts are ill equipped to deal with mentally ill pro se litigants who believe in conspiracies. *See*, Sean Munger, *Bill Clinton Bugged My Brain!: Delusional Claims in Federal Courts*, 72 Tul. L. Rev. 1809, 1818 (1998) (discussing delusional pro se claims from a psychological perspective).

**IV. THE DISTRICT COURT DID NOT ERR WHEN IT HELD KENTUCKY'S APPLICABLE STATUTES OF LIMITATIONS AND IMMUNITY DOCTRINE BARRED PLAINTIFF'S COMPLAINT**

If despite the deficiencies in Mischler's Opening Brief, this Court elects to addresses the merits, it should affirm the judgment.

The District Court correctly dismissed Plaintiff's official capacity damage claims against the CHFS Defendants based on their Eleventh Amendment and sovereign immunity, and her individual capacity damage claims based on the statute of limitations. (Memorandum Opinion, R. 58, Pg. ID # 695-698). Mischler has abandoned any argument about sovereign immunity or the Eleventh Amendment by ignoring those issues in her Opening Brief.[34]

In her statement of issues, Mischler asserts the District Court "failed to take as true that Kentucky Governor and his employees within the Cabinet … are falsifying Child Protective Service Records continuously since 2006 until the present date." And she says, "District Court failed to address the correct statue (sic) of limitations and the continuing violation doctrine." Appellant's Brief, pp. 12, 18. She

---

[34] In any event, the District Court correctly decided that issue. *See Gay v. Cabinet for Health and Family Services*, 5:17-CV-258-JMH, 2018 WL 934880, at *4 (E.D. Ky. Feb. 16, 2018) (citing numerous cases upholding immunity of CHFS and official capacity claims against CHFS officers). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, "individuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003).

describes "Count 1 of her complaint as "common law fraud against Defendants preventing the discovery that Hamilton Spurlocke did not have jurisdiction and committed a 4th Amendment violation," and Count 2 as common law fraud against Defendants falsifying a child protective services document to be used in private child custody between parents in a state court proceeding." These declarations, mere assertions, are not real arguments. It is well settled that, "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir.1997) (quotation and alterations thereto omitted).

Even if Mischler fleshed out her arguments, she could not prevail. Kentucky courts have upheld Judge Paxton's authority to order the Cabinet to open a case and provide services to the family, stating "even if it is true that somehow Judge Thompson failed to properly recuse and Judge Paxton was somehow improperly appointed, nevertheless the well-established *de facto* officer doctrine undoubtedly confers the requisite validity to her orders dismissing the domestic violence petitions Appellant believes is lacking." *Mischler v. Thompson*, 436 S.W.3d at 504 n. 8.

Likewise, in a prior federal case, the District Court held Ky. Rev. Stat. § 403.725(6) permits any Circuit Judge to issue an Emergency Protective Order and then requires that same judge to preside over the subsequent hearing. "Thus, Judge

Paxton clearly had jurisdiction under Kentucky law over the proceedings involving Plaintiff, as she was appointed to serve as a Special Judge in the domestic violence case." *Mischler v. Stevens*, 7:13-CV-8, 2014 WL 1378805, at *5.

Mischler is collaterally estopped from re-litigating Judge Paxton's authority to order the Cabinet to open a case and provide services to the family. Under Kentucky law, issue preclusion "prohibits issues which were adjudicated in a previous lawsuit from being relitigated in a subsequent lawsuit." *Miller v. Admin. Office of Courts*, 361 S.W.3d 867, 871 (Ky. 2011). Because this issue is settled, Mischler cannot establish a Cabinet social workers "fraudulently" mischaracterized Judge Paxton's orders to trick Plaintiff into consenting her entry into the apartment.

Mischler's reliance on mere conclusory assertions or the continuing violations doctrine is also unavailing. Federal courts are not obligated to accept conclusory assertions, especially when they are contradicted by factual pleadings or facts upon which a court may take judicial notice. *Ashcroft v. Iqbal*, 556 U.S. at 678.

As this Court stated in *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 519 (6th Cir. 2008), a federal court "complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." (internal citation omitted).

> [c]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice. Even under Rule 12(b)(6), a complaint containing a statement of facts that merely creates a *suspicion* of a legally cognizable right of action is insufficient. (internal citations

omitted) The factual allegations must be enough to raise a right to relief above the speculative level; they must state a claim to relief that is plausible on its face.

*Bishop*, 520 F.3d at 519 (internal citations omitted) (emphasis original).

Pleading fraud has an even more exacting pleading standard. To satisfy Rule 9(b)'s specificity requirements, a plaintiff must allege (1) "the time, place, and content of the alleged misrepresentation," (2) "the fraudulent scheme," (3) the defendant's fraudulent intent, and (4) the resulting injury. *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 467 (6th Cir. 2011). The purposes of Rule 9(b) are (1) to alert defendants to the particulars of the allegations against them so they can intelligently respond; (2) to prevent "fishing expeditions"; (3) to protect defendants' reputations against fraud allegations; and (4) to whittle down potentially wide-ranging discovery to only relevant matters. *Chesbrough*,655 F.3d at 466–67. Fraud must be shown "by clear and convincing evidence, a heightened standard of proof." *Norwich v. Norwich*, 459 S.W.3d 889, 899 (Ky. App. 2015) (citation omitted).

Mischler's complaint fell far short of these federal pleading requirements. She did not identify any "fraudulent" statements to further any fraudulent scheme by any CHFS Defendant occurring within the five year period before she filed suit. She never explained why any CHFS Defendants or Kentucky judges would have any special interest in her child custody fight, much less scheme against her. The District Court correctly held her fraud claim was time-barred by the applicable five year

statute of limitations, Ky. Rev. Stat. § 413.120, and her federal civil rights claims was barred by Kentucky's one year statute of limitations for personal injuries. See *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990). Mischler knew, or should have known about her alleged injuries no later than 2009, when her custody rights were terminated and her appeal dismissed. *See Mischler v. Stevens*, 2014 WL 1378805 *4 (E.D. Ky. April 8, 2014), *aff'd Mischler v. Stevens*, 16-6185, 2017 WL 3220480, at *1 (6th Cir. May 16, 2017). Mischler should understand the statute of limitations, having previously litigated these same time-barred claims.

The continuing violations doctrine does not save Mischler's time-barred claims. That doctrine requires "continual unlawful acts, not continual ill effects from an original violation." *Tolbert v. State of Ohio Dept. of Transp.*, 172 F.3d 934, 940 (6th Cir. 1999). To qualify: (1) The defendant's wrongful conduct continued after the precipitating event that began the pattern; (2) injury to the plaintiff must have continued to accrue after that event; and (3) Further injury to the plaintiff must have been avoidable if the defendant had at any time ceased its wrongful conduct. *Id.* "Merely waving the wand of 'continuing violation' is not enough to weave distinct and separate acts into a continuous narrative which eschews a one-year [or five year] deadline." *Bullock v. City of Covington*, No. CV 16-56-HRW, 2016 WL 6694486, at *4 (E.D. Ky. Nov. 14, 2016), *aff'd*, 698 F. App'x 305 (6th Cir. 2017). Mischler has not pled or shown any continuing violation.

**V.     THERE ARE A MULTITUDE OF ALTERNATIVE GROUNDS TO AFFIRM THE JUDGMENT**

This Court "may affirm on any grounds supported by the record even if different from the reasons of the district court." *Dixon v. Clem*, 492 F.3d 665, 673 (6th Cir. 2007). "A decision below must be affirmed if correct for any reason, including a reason not considered by the lower court." *Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co.*, 772 F.2d 214, 216 (6th Cir. 1985); *Thomas v. City of Columbus, Ohio*, 854 F.3d 361, 364 (6th Cir. 2017).

Because the Cabinet was complying with Judge Paxton's order to open a case and provide family services to the family and Mischler invited the social worker into her home, the worker and all supervisors accused of covering up this "fraud" are immune from suit for following the judge's order. *See Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994) and *Cooper v. Parrish*, 203 F.3d 937, 948 (6th Cir. 2000). "[T]he fearless and unhesitating execution of court orders is essential if the [state court's authority] and ability to function are to remain uncompromised." *Coverdell v. Department of Social and Health Services, State of Wash.*, 834 F.2d 758, 764 (9th Cir. 1987). CHFS Defendants are also shielded by qualified immunity. "Once raised, the plaintiff bears the burden of showing that a defendant is not entitled to qualified immunity." *Bletz v. Gribble*, 641 F.3d 743, 750 (6th Cir. 2011). Because Mischler failed to respond to any dispositive motion, she did not satisfy her burden to defeat qualified immunity for any state official raising that defense to Plaintiff's civil rights

claims. These defenses would defeat Mischler's claims, even if the statute of limitations defenses did not also bar all of her claims.

**VI. THE DISTRICT COURT DID NOT ERR BY REFUSING TO GRANT PLAINTIFF WHAT AMOUNTS TO A WRIT OF MANDAMUS FOR STATE OFFICIALS TO FOLLOW STATE LAW**

Mischler asks this Court to issue a show cause order to Governor Bevin why he has not addressed the issue that social workers are altering child protective service records and issue another order to Attorney General Beshear to compel him to file criminal cases against a host of state judges and CHFS Defendants. Neither the District Court nor this Court may grant her this type of relief. *See Mischler v. Cunningham*, 3:17-CV-0029-GFVT, 2017 WL 5757603, at *1 (E.D. Ky. Apr. 7, 2017). A claim that state officials violated state law in carrying out their official responsibilities "is a claim against the State that is protected by the Eleventh Amendment." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984). This Court has categorically rejected the notion that federal courts have authority to grant that type of relief. *Haggard v. Tennessee*, 421 F.2d 1384, 1386 (6th Cir. 1970) ("federal courts have no authority to issue writs of mandamus to direct state courts or their judicial officers in the performance of their duties"); *accord, Cochran v. Municipal Court of City of Barberton, Summit County*, 91 Fed. Appx. 365, 366 (6th Cir. 2003).

To the extent Mischler argues Kentucky officials violated federal law, her claims fail. Under *Ex Parte Young*, a plaintiff can sue to enjoin an official from violating federal law. 209 U.S. 123 (1908). However, the *Ex Parte Young* doctrine does not apply to abrogate Eleventh Amendment immunity when a plaintiff complains about inaction rather than action. *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1416 (6th Cir. 1996); *Mischler v. Stevens*, 7:13-CV-8, 2014 WL 1378805, at *7. The District Court also correctly held the First Amendment does not guarantee Mischler a right to compel government officials to act. "[N]either in the First Amendment nor elsewhere in the Constitution is there a provision guaranteeing that all petitions for the redress of grievances will meet with success. *Canfora v. Olds*, 562 F.2d 363, 364 (6th Cir. 1977). The Constitution does not compel state officials to believe or act upon Mischler's fantastical imaginary judicial conspiracies.

## VII.   THE DISTRICT COURT DID NOT ERR BY IMPOSING FILING RESTRICTIONS ON PLAINTIFF

Mischler complains in her Opening Brief the District Court's pre-filing restrictions will block her from filing a new malicious prosecution case she wants to file against the FBI and unknown state or federal officials. She apparently imagines the FBI called upon her in furtherance of the expanding "judicial conspiracy." The District Court did not abuse its discretion. "There is nothing unusual about imposing pre-filing restrictions in matters with a history of repetitive or vexatious litigation."

*Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 269 (6th Cir. 1998). *See Callihan v. Kentucky, supra;* and *Anderson v. Dickson*, 715 Fed. Appx. 481 (6th Cir. 2017).

Federal courts do not hesitate to shield litigants and the judiciary itself when a serial pro se litigator's delusions or obstinacy causes real harms. As this Court observed in *Anderson*, "Every new case or new appeal uses the courts' finite resources. And when the defendants have to respond to pleadings, motions, or briefs, they have to pay lawyers to defend against legal claims that are not only meritless, but that have been rejected multiple times before." *Id*., at 489. This Court continued, "we have a duty to keep the court system free of repeat litigation so that every litigant gets the same opportunity for a fair decision that Anderson has abused." *Id.*, at 490.

As then, so now. The same duty to put an end to serial pro litigation applies to Ms. Mischler. Nobody has conspired against her, no matter how much she believes that, or how often she would like to endlessly re-litigate her same claims.

**CONCLUSION**

For all these reasons, this Court should either dismiss this appeal, or it should affirm the District Court's opinion and judgment dismissing Plaintiff's complaint and deny her all other requested relief.

Respectfully Submitted,

/s/ *David Brent Irvin*
David Brent Irvin
/s/ *Catherine York*
Catherine York
CHFS, Office of Legal Services
275 E. Main 5WB
Frankfort, Kentucky 40621
(502) 564-7905
*Counsel for Governor Matt Bevin*
*and CHFS Defendants-Appellees*

## CERTIFICATE OF COMPLIANCE WITH RULE 32 (a)

1. This brief complies with the type-volume limitations of Fed. R. App P. 32(a)(7)(B) because:

This brief contains 12,439 words, excluding those parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii)

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14 point typeface.

/s/ ***David Brent Irvin***
David Brent Irvin
Attorney for Defendant-Appellee
Dated:  October 31, 2018

## CERTIFICATE OF SERVICE

I certify that on October 31, 2018, I filed this Appellee's' brief filed on through the federal CM/ECF system which will serve a copy on all counsel of record in this appeal and that I mailed a copy to the pro se Plaintiff-Appellant and pro se Defendant-Appellee on the same day addressed to: Ms. Amy Mischler, 1120 Palm Court, Okeechobee, FL 34974 and Ms. Selena Woody Stevens, 183 Whitman Way, Georgetown, KY 40324.

/s/ ***David Brent Irvin***
David Brent Irvin

# <u>ADDENDUM</u>

Pursuant to 6th Cir. R. 30(b), CHFS Defendants-Appellees designate the electronic record as shown below in this table:

| <u>Record No.</u> | <u>Date Filed</u> | <u>Description</u> | <u>Page ID Nos.</u> |
|---|---|---|---|
| 1 | Aug. 24, 2017 | Verified Complaint | # 1-23 |
| 14 | Nov. 9, 2017 | Motion to Dismiss by Stites & Harbison w/ memo, exhibits & tendered order | # 138-236 |
| 15 | Nov. 13, 2017 | Motion to Dismiss by Dr. Sally Brenzel, memo & exhibits | # 237-279 |
| 16 | Nov. 13, 2017 | Motion to Dismiss by Selena Woody Stevens | # 265-273 |
| 19 | Nov. 14, 2017 | Motion to Dismiss by Attorney General Andy Beshear and assistants, memo & exhibits | # 282-302 |
| 29 | Nov. 28, 2017 | Joint Motion to Dismiss, memo & exhibits by Governor Matt Bevin and CHFS Defendants | # 339-434 |
| 30 | Nov. 28, 2017 | Joint motion for Rule 11 sanctions by Governor Matt Bevin and CHFS Defendants | # 435-438 |
| 43 | Jan. 2, 2018 | Motion to Dismiss by John David Preston and Janie Wells | # 514-529 |
| 49 | Jan. 11, 2018 | Motion to Dismiss by Joseph Lambert, Lewis Nicholls and Julie Paxton | # 540-557 |
| 50 | Jan. 16, 2018 | Motion for Recusal by Plaintiff with Affidavit | #558-561 |
| 51 | Jan. 16, 2018 | Notice of Due Process Violation filed by Plaintiff | #563-564 |
| 52 | Jan. 23, 2018 | Joint motion to dismiss individual capacity claims by various CHFS Defendants, memo, exhibits | #566-616 |

| | **Addendum Cont'd** | | |
|---|---|---|---|
| 53 | Feb. 23, 2018 | Joint Motion for Rule 11 sanctions by CHFS Defendants | # 617-628 |
| 55 | March 2, 2018 | Order denying motion for recusal | #636-637 |
| 56 | March 7, 2018 | Interlocutory Notice of Appeal by Plaintiff with exhibits | #638-682 |
| 58 | March 28, 2018 | Memorandum Opinion and Order | # 686-708 |
| 61 | April 6, 2018 | Recusal Order | # 717-718 |
| 66 | May 8, 2018 | Judicial Reassignment Order | # 734 |
| 68 | May 25, 2018 | Judgment | # 737 |
| 69 | June 22, 2018 | Notice of Appeal and Exhibits | # 738-770 |
| 72 | June 22, 2018 | 6th Circuit Order dismissing appeal for lack of prosecution | # 777 |
| 73 | October 1, 2018 | Order reinstating appeal | # 779 |