RECEIVED

DEC 1 3 2018

DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
SIXTH CIRCUIT
No. 18-5665
************

AMY JERRINE MISCHLER,

Pro Se who has a Juris Doctorate of Law but never sat for any bar exam because of unchecked corruption in the KY Courts [state and federal] and the Kentucky Attorney Generals Office[1]

Plaintiff-Appellant

v.

MATT BEVIN, ET. AL,
Defendants-Appellees
********************

On Appeal from the United States District Court for the Eastern District of Kentucky where the federal judicial officer dismissing the case had an undisclosed conflict of interest of his wife employed with one of the defendants and chief judge stalking the plaintiff on twitter
Case No. 3:17-cv-66

REPLY BRIEF
AMY JERRINE MISCHLER
*************************

Amy Jerrine Mischler
1120 Palm Court
Okeechobee, Florida 34974
863-801-1877

---

[1] Defendants Stites & Harbison PLLC and Governor Matt Bevin and CHFS Defendants coordinated their appeal covers to include Pro Se, and the other defendants did not include Pro Se. This of course was to bias the 6th Circuit Judges upon initial inspection of the brief. WHO BELIEVES PRO SE LITIGANTS? The Appellant knows of no pro se litigant who in recent memory has been successful in this circuit. With a J.D, Ms. Mischler knows the Constitution requires that receive she receive redress for the fraud upon the court by a state court judge, who WITHOUT SUBJECT MATTER JURISDICTION [no legal authority] unlawfully changed child custody with the subsequent judicial officers refusing to admit the illegal conduct that caused irreparable harm to Ms. Mischler's fundamental parental rights and access to the courts with unbiased judicial officers. The Federal Rules of Procedure only require certain information to be on the cover and the Plaintiff is unaware of any restrictions.



# TABLE OF CONTENTS

## NOT ENOUGH TIME TO FINISH BECAUSE I WAS NOT GRANTED THE TIME I REQUESTED ORIGINALLY TO ALLOW ME TIME TO DEAL WITH THE DEATH OF MY FATHER NOVEMBER 2, 2018.

Page

TABLE OF CONTENTS     i

TABLE OF AUTHORITIES

INTRODUCTION     1

ARGUMENT

STATEMENT OF THE ISSUES

STATEMENT OF THE CASE

STATEMENT OF THE STANDARD OF REVIEW

TABLE OF AUTHORIES

Gonzalez v. Thaler, 565 U.S. 134 (2012)     1,2

United States v. Cotton, 535 U. S. 625, 630 (2002)     1

Commonwealth v. Jefferson County, 300 Ky. 514, 189 S.W.2d 604, 606 (1945)     1

Grubb v. Wurtland Water District, Ky., 384 S.W.2d 321 (1964)     1

Mathews v. Mathews, 731 S.W.2d 832 (Ky.App.1987)     1

Pavko v. Shenouda, 2005-CA-000866 and 2006-CA-001334     1



# INTRODUCTION

Neither the Kentucky Court system nor the Federal Court system will address the lack of subject matter jurisdiction of a state court judge unlawfully taking away the parental rights of the Appellant. This issue has been repeatedly raised before both the Federal and State courts.

## It is well settled law that all judges, federal and state must have subject matter jurisdiction in the United States.[1]

The Sixth Circuit engaged in judicial nullification of well accepted law by choosing to be willfully blind to prevent a factual finding addressing the lack of subject matter jurisdiction raised by the Appellant multiple times. The Honorable Judge Helene N. White, Honorable Jane Branstetter Stranch, Honorable Raymond M. Kethledge all refused to address the lack of subject matter jurisdiction of defendant Judge Julie Paxton issuing orders after Paxton no longer had any legal authority to do so to interfere in a fundamental right of litigant.

---

[1] "When a requirement goes to subject-matter jurisdiction, courts are obligated to consider sua sponte issues that the parties have disclaimed or have not presented. See United States v. Cotton, 535 U. S. 625, 630 (2002). Subject-matter jurisdiction can never be waived or forfeited". Gonzalez v. Thaler, 565 U.S. 134 (2012) "The circuit court had no jurisdiction to enter the March 24, 2005, order that was appealed and that order is void. In this case, as in Mathews v. Mathews, 731 S.W.2d 832 (Ky.App.1987), the fact which renders the judgment void, "namely, the lack of jurisdiction in the court to render [it], appears on the face of the record." Commonwealth v. Jefferson County, 300 Ky. 514, 189 S.W.2d 604, 606 (1945). Such a judgment, unlike one which is merely erroneous or voidable, is not entitled to any respect or deference by the courts of the Commonwealth but instead is "open to attack anytime and any place." Grubb v. Wurtland Water District, Ky., 384 S.W.2d 321 (1964). Mathews at 833 (Ky.App.1987). Consequently, we must dismiss the Pavkoviches' first appeal (No.2005-CA-000866).For similar reasons, we must dismiss the second appeal. We have already held that the Jefferson Circuit Court lost subject matter jurisdiction on August 27, 2004. Once lost, jurisdiction must be invoked anew, independently of the previous action that has achieved finality". Pavko v. Shenouda, 2005-CA-000866 and 2006-CA-001334.

Paxton continued interfering in the parental rights of the Appellant, including *participating having the Appellant arrested to cover Paxton's prior unlawful conduct*.[2] Other state judicial officers assigned after Paxton continued Paxton's abusive orders of supervised visitation without a factual finding knowingly fully well of Paxton's illegal actions. Defendant Nichols quashed Paxton's testimony on jurisdiction in the child custody action.

Paxton's lack of subject matter jurisdiction was raised in the Federal Appellant Brief in pages 1, 2, 4, 5, 6, 7, 8, 11, 12, 13, 14, 16, out of a total of 18 pages. See case 16-6185, Document 12, Sixth Circuit Court of Appeals.

Honorable White, Kethledge, and Stranch only used the words "subject matter jurisdiction" on page 2, 3. They refused to actually rule whether Paxton actually had subject matter jurisdiction. They danced around it in an essentially meaningless unpublished opinion.

White, Kethledge, and Stranch applied a statute of limitations to "subject matter jurisdiction" making it a waivable issue in direct violation of the United States Supreme Court opinion in Gonzalez v. Thaler, 565 U.S. 134 (2012).

In the District Court Complaint, lack of jurisdiction was fully articulated in case 7:13-cv-00008-ART Doc #1, Filed 01/28/13 Page 31 of 33 – Page ID#31.[3]

---

[2] This evidenced the GAL notes entered into the record that the father's attorney was having undisclosed ex parte communications with Paxton to have the Appellant arrested. The Pike Grand Jury refused to indict the Appellant.
[3] "155. Stevens, Paxton, Thompson, and Deskins actions to conspire to hold sham simulated legal proceedings without jurisdiction to illegally change child custody". 7:13-cv-0008 Doc 1, page 31 of 33 Page ID #31.

The District Court implied that the Appellant was correct that factually Paxton did not have subject matter jurisdiction, but that it was irrelevant DESPITE BEING A SPECIFIC ELEMENT IN THE TORT.

Because the Honorable Judge Thomas Phillips, *appointed by Chief Justice Karen Caldwell who later stalked the Appellant on twitter*; refused to address the lack of jurisdiction. The appellant even filed specifically for a ruling. See the attached memorandum. Honorable Judge Phillips hinted that the Appellant was factually correct, but issued a factual finding that "jurisdiction of Kentucky state courts has no bearing on the plaintiff's claim of outrage against the Defendant. Document 158 in case 7:13-cv-00008.

To reiterate; the word jurisdiction was actually fully articulated as a part of the tort. See footnote 2 of this brief.

This is an ugly case.

It's ugly because the Sixth Circuit failed to enforce the rule of law in collateral cases creating a legal nightmare "rule of the case" giving full faith and credit to VOID state court order on child custody.

It's ugly because the District Court failed to enforce the rule of law in collateral cases.

It's ugly because the District Court herein, failed to disclose a conflict of interest of a federal judge involved in sexual relationship, now married with an at will employee of one of the Defendants in this action.

It's ugly because the Chief Justice of the Eastern District of Kentucky stalked the Appellant on twitter when the judges conflict was exposed.

It's ugly because the Appellant tracked multiple social media searches by both the Sixth Circuit and the District Court over a period of years that was never disclosed in the record.

It's ugly because the Kentucky Attorney General actually made an entry of appearance in the Appellant's private child custody case to prevent testimony by Paxton on her lack of jurisdiction. *The Kentucky Attorney Generals Office has changed its mandate to assist state judges in criminal conduct instead of criminally prosecuting unlawful conduct of judge.*[4]

It's ugly because the lack of jurisdiction/misconduct was reported both the Kentucky Judicial Conduct Committee and the Kentucky Supreme Court Chief Justice and neither entity addressed the issue though they were surely aware of it years before the Appellant was.

It's ugly because the father of the Appellant's children is an attorney and Judge Paxton issued the order without subject matter jurisdiction because the

---

[4] The written order Paxton wrote is a felony which under Kentucky law which has no statute of limitations for criminal prosecution.

dad/ATTORNEY was blackmailing the Kentucky Bar Association Inquiry Chief Michael Schmitt and Attorney General Greg Stumbo over insurance fraud taking place in the Kentucky School Board Insurance Trust with the Floyd County Schools. Paxton and Stumbo are from Floyd County.[5]

This ugly case is NOT the fault of the Appellant.

This ugly case is the fault of the Commonwealth of Kentucky failing to uphold the rule of law and an out of control state court system that devolved into a criminal racketeering syndicate to benefit attorneys; while the Federal Judiciary chooses to be willfully blind about the racketing taking place.

## ARGUMENT

I. OUTRIGHT FALSEHOODS BY ATTORNEY DAVID IRVIN and CATHERINE YORK DESIGNED TO BIAS THE COURT.

1. The Appellant asserts the common doctrine "Falsus in uno, falsus in omnibus", false in one thing false in all to be applied to the entire brief of Irvin and York. There are numerous falsehoods by Irvin and York. Only a few will be highlighted.

2. If the Sixth Circuit believes that Amy Mischler is a child abuser then it will not grant her relief.

---

[5] Floyd County Schools allowed their insurance policy with the Kentucky School Board Insurance Trust. Then they had nearly 100 employment lawsuits filed against Floyd County Schools. Greg Stumbo got the Trust to pay Michael Schmitt in those nearly 100 lawsuits to defend Floyd County though they had no insurance at the time of the loss and were committing fraud. Yes, the appellant can prove this.

*"Because the family court found child abuse from the picketing incident and ordered the Cabinet to provide services to Mischler, the Cabinet followed the Court's order with a substantiation"*. See Irvin/York Brief page 9, lines 9,10,11.[6]

THERE WAS NEVER A FINDING OF CHILD ABUSE AGAINST AMY MISCHLER BY ANY FAMILY COURT. EVER!

A false statement that a person is found to be a child abuser is per se defamatory.

The finding was that Amy Mischler committed domestic violence against attorney Jonah Steven's by marching in public with a sign. This is case 02-d-00202-002-003. Paxton never disclosed her conflict of interest of from 2002 where she illegally changed child custody. Paxton's order was later vacated by another judge on the basis that attorney Stevens failed to articulate domestic violence in his petition.

THERE WAS NEVER A DEPENDENCY CASE OPENED AGAINST AMY MISCHLER IN ORDER TO MAKE A FINDING OF CHILD ABUSE.

Another glaring FALSEHOOD. Irvin and York state it is *"Cabinet's policy is to follow whatever a state judge has already held"*. Earlier Irvin and York state *"the social worker issued a neglect substantiation against Mischler on March 16,*

---

[6] The copy mailed to the Appellant by Irvin/York does not have PACER markings on it.

*2007, predicated on the DVO Factual Findings"*. Irvin/York Brief See page 9, line 1,2,3. 11, 12.

The DVO was issued in June 2006. The DVO was vacated December 2006. See page Irvin/York brief page 10, line 3. Irvin and York stated the neglect substantiation was issued "March 16, 2007", Irvin and York lied to the Court that the social worker was only following policy knowing full well that no valid order existed at the time of March 16, 2007 when the social worker issued the substantiation.

ANOTHER LIE, Irvin and York write that *"He vacated Judge Paxton's DVO on December 12, 2006 because he found the DVO petition was sworn before a domestic Relations Commissioner rather than a judge"*. The Order vacating the DVO itself specifically states it was vacated because there were no allegations of domestic violence stated in the petition.

Cabinet for Health and Family Services whom Irvin and York for, lies repeatedly to the Sixth Circuit abusing Kentucky citizens and the Sixth Circuit and the Eastern District of Kentucky never hold the Cabinet accountable. See attached newspaper article.

II. OUTRIGHT FALSEHOOD FROM KENTUCKY ASSISTANT ATTORNEY GENERAL SHAN DUTTA AND HIS FELLOW ASSISTANT ATTORNEY

MARC G. FARRIS ON BEHALF OF JUDICIAL OFFICERS DESIGNED TO BIAS THE COURT.

Farris writes, "*Mischler should have known about her alleged injury "no later than 2009, when her custody rights were terminated.*" Page 10, lines 11 and 12.[7] Amy Mischler's custody rights have never been terminated. No state orders exist that her rights were terminated.[8] Farris cannot provide an order to prove this statement is true.

A false statement that parental rights have been terminated is per se defamatory.

Judge Van Tatnehove, who was having sex with one of the Defendants employees wrote this false statement to benefit the Defendants so the women he was having sex with could keep her at will job.[9]

Judge Van Tatenhove cites No. 7:13-cv-08-TWP, 2014 WL 1378805 (E.D. Ky. April 8, 2014) but gives no specific data where that case makes the finding that Ms. Mischler's rights were terminated. Ms. Mischler does not believe that there is a reference by Judge Phillips that her parental rights terminated because in fact, they never terminated.

---

[7] There are no PACER markings on the copy given to the Appellant.

[8] There has been a constructive termination by Judge Nicholls requiring Amy Mischler to be supervised at night, and causing her to drive over 12 hours in less than 72 hours in order to see her children. There is no order stating that this is a constructive termination of child custody.

[9] The woman Judge Van Tatenhove was having sex with is Christy Trout and she is an at will employee of Defendant Matt Bevin. Judge Van Tatenhove never disclosed the conflict of interest.

Dutta falsely writes *"Mischler has not and cannot allege any facts suggesting than any of the Judicial Defendants acted in the absence of all jurisdiction"*. See Dutta Brief, page 14, lines 8 and 9. The copy of the Dutta brief sent to the Appellant does not contain PACER markings.

This is false.

The Appellant has alleged UNDENIABLE specific facts showing that Paxton did not have jurisdiction TO ISSUE A SEPTEMBER 2002 DENYING THE APPELLANT A FUNDAMENTLA RIGHT. See Exhibit 1.

The Appellant has alleged the subsequent judicial officers all acted willfully blind to Paxton's fraud thus participating in the fraud.

Further, DUTTA who is employed with the Kentucky Attorney Generals Office fully well knows that the Kentucky Attorney Generals Office participated in the conspiracy by filing a motion to quash for Paxton in the private child custody on a subpoena that specifically stated that Paxton was to testify concerning what if any jurisdiction she had in any of the cases.

Dutta must prove Paxton had subject matter jurisdiction to issue the September 2002 order in the closed domestic violence action. DUTTA CANNOT PROVE THIS because the RULE OF LAW is plain that Paxton lost subject matter jurisdiction. See Exhibit 1.

III. PER SE DEFAMATION BY RELYING ON FRAUD BY OTHER DEFENDANTS ALLEGING PARANOIA AND DELUSIONS AGAINST AMY MISCHLER.

Irvin and York imply Amy Mischler is mentally ill and the Sixth Circuit should not give anything she writes weight because of this. Specifically they wrote, "A state family court judge reviewed an expert psychological report suggesting Mischler has episodic delusional paranoia." Irvin/York Brief, page 39 lines 6, 7, 8. There are no PACER markings on the copy given to the Appellant.

Irvin and York leave out the relevant fact that the "expert psychological report" was prepared by Defendant Sally Brenzel. Dr. Brenzel knew that the Cabinet reports given about Amy Mischler under hre name were contradicted by the Cabinet reports Brenzel received under Jonah Stevens named which were about Amy Mischler.

Specifically, Dr. Brenzel received a CAN report that stated Amy Mischler had no substantiations of child abuse along with verbal statement from Amy Mischler. Dr. Brenzel knew she was presented a contradiction to this in Exhibit 3 that stated Amy Mischler was a substantiated child abuser.

Instead of outting this contradiction in her report. Dr. Brenzel decided to write in her report in way to imply that Amy Mischler was paranoid and delusional because Mischler believed the Cabinet was biased.

Dr. Brenzel did not disclose that she has personal service contracts in the past with both the Kentucky Court system and the Cabinet for Health and Family Services and thus has a financial interest in protecting both the courts and the cabinet in order to get additional personal service contracts.

VI. DR. BRENZEL KNEW HER FRAUD WAS PROTECTED ~~BECAUSE AMY MISCHLER~~ BECAUSE THE CONTRADICTING RECORDS WERE CONFIDENTIAL INFORMATION NOT AVAILABLE TO MISCHLER

Dr. Brenzel says that Amy Mischler should have known about the injury and failed to timely file. This is simply untrue.

Exhibit 3 is a record that Amy Mischler has no legal right to have. It is confidential and in Jonah Stevens name though it's about Amy Mischler. Mischler has no legal rights to get Jonah Stevens cabinet records. BY MISTAKE, David Lovely sent Amy Mischler the record well within the statute of limitations period of fraud.

Dr. Brenzel instead, said in her report that Amy Mischler had "episodic delusional paranoia" instead putting in her report that the Cabinet records had material conflicts such as the records given to Amy Mischler stating she had no substantiations and records in Jonah Stevens name stating that Amy Mischler was a substantiated child abuser.

Any reasonable person would conclude that conflicting records stating whether a person was a substantiated child abuser would show bias ~~within~~ by the Cabinet employees.

## V. DEFENDANTS INTENTIONAL MISREPRESENTATION TO THE SIXTH CIRCUIT ON THE TYPE OF CAUSE OF ACTION FILED WHICH DIRECTLY AFFECT THE STATUTE OF LIMITATIONS APPLIED.

The Florida domiciled Appellant clearly articulated the common law fraud as her cause of action in Count 1, Count 2, and incorporated common law fraud Counts 3 and 4 through enumerated paragraphs 69, 77 including the enumerated paragraph 55 that specifically gives the statute on common law statute of limitations.

Count 5 is an injunctive relief against Matt Bevin. Because Judge Van Tatenhove was having sex with Matt Bevin's employee Christy Trout at the time this complaint was filed; Judge Van Tatenhove has never ruled on injunctive relief.

Never at any time did the Appellant articulate a 42 USC 1983 claim or the necessary elements against any defendant.

The Appellant articulated the elements found in paragraph 58 of common law claim that Stites & Harbison PPLC knowing Paxton had no jurisidicition and committed a felony, but financially profited to the tune of $40,000 to represent Paxton, Chief Justice Minton in Federal Courts to prevent Ms. Mischler from getting redress.

Thus, Defendant Stites & Harbison made (1) material representations to the Federal Courts, (2)(3)knowing that it was misleading [false], with the intention of (4) inducing the Court to deny redress to the Appellant, (5)forcing the Plaintiff and Federal Court to rely upon misleading information that Paxton did have legal authority [Rule of the Case] and the (6)Appellant was harmed by not getting her Constitutional right to redress found in the United States Constitution.[10]

CONCLUSION

Is Amy Mischler a delusional paranoid individual because she believes Judge Van Tatenhove having sex with an at will employee of one of the Defendants is a conflict of interest?

---

[10] The elements of Fraud in Kentucky: "(1) that defendant made a material representation; (2) that it was false; (3) that when he made it he knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention of inducing plaintiff to act, or that it should be acted upon by the plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that plaintiff thereby suffered injury." Cresent Grocery Co. v. Vick, 240 S.W. 388, 389 (Ky. 1922);

Of course not; any reasonable person would say Judge Van Tatenhove knew he had a conflict and should have recused himself immediately at the onset of this litigation. But he didn't.

Judge Van Tatenhove didn't recuse when he was asked to by the Appellant before she knew about the sexual relations between the Judge and Defendant Bevin's employee.

Judge Van Tatenhove didn't recuse until AFTER HE WROTE A FALSIFIED FACUTAL FINDING stating that Amy Mischler's parental rights were terminated.

Further, Judge Van Tatenhove SANCTIONED Amy Mischler as frivolous to benefit Defendant Bevin's and others.

If the Sixth Circuit doesn't address these issues, vacate the entirety of Judge Van Tatenhove's order and transfer Amy Mischler's case outside of Kentucky to other judges; THEN THERE IS NO JUSTICE IN THE SIXTH CIRCUIT.

Ms. Mischler did not have enough time to finish this brief because she was not given the additional time she requested.

Submitted,

Amy Mischler
1120 Palm Court
Okeechobee, Florida 34974
863-801-1877

## CERTIFICATE OF COMPLIANCE

This brief contains 3160 words well within the limits in FRAP for a Reply Brief.

The font is times new roman in 14 point. Date 12/8/2018

Amy Mischler
1120 Palm Court
Okeechobee, Florida 34974
863-801-1877

Certificate of Service, I certify that on 12/8/2018 copies of this brief will be sent to

the other parties after I first get the clerks copy to the post office.

Eastern District of Kentucky
F I L E D

OCT 2 3 2015

AT FRANKFORT
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT PIKEVILLE

AMY JERRINE MISCHLER,           )
                                )
        Plaintiff,              )          No. &:13-CV-8
                                )          Judge Phillips
v.                              )
                                )
                                )
JONAH LEE STEVENS,              )
                                )
        Defendant.              )

## MEMORANDUM IN SUPPORT OF MOTION FOR MISCELLANOUS RELIEF: A REQUEST FOR A RULING OF LAW CONCERNING THE DATE SUBJECT MATTER JURISDICITON ENDED IN STATE CASE 02-D-00202-001 AND 02-D-00202-002

In accordance to the local rules, Ms. Mischler provides this memorandum with exhibits in support of her motion for miscellaneous relief.

REQUEST FOR FACTUAL FINDING AND RULE OF LAW:

1. *That on August 7, 2002 actions 02-D-00202-001 and 02-D-00202-002 were dismissed and according to Kentucky Civil Rule 58: those orders of protection dismissals became effective on August 7, 2002.*

Kentucky Civil Rule 58 states that "*a signed emergency protective order, shall be effective when issued and does not require prior entry in the clerk's office to become effective.*"

Exhibits 1 and 2 are clearly stated as protection orders on their face. The signed back page of each states that they were dismissed by Judge Julie Paxton on August 7, 2002 with Paxton's signature. Ms. Mischler was served with a copy of Exhibits 1 and 2 on August 7, 2002 by Judge Paxton at the hearing as these orders are carbon copy forms.

Therefore, there is no reason for the District Court to deny granting paragraph 1 for a factual finding and ruling of law as requested by Ms. Mischler by motion.

REQUEST FOR FACTUAL FINDING AND RULE OF LAW:

> *2. That Kentucky Case Law holds that ten days after an order is dismissed; the circuit court loses jurisdiction of subject matter jurisdiction in circuit cases. See Pavkovich V. Shenouda, 2005-CA-000866 and 2006-CA-001334.*

> *3. The state circuit judge lost subject matter jurisdiction in circuit cases 02-D-002020-001 and 02-D-002020-002 ten days after August 7, 2002; thus subject matter jurisdiction was lost on August 17, 2002.*

02-D-00202-001 and 02-D-002020-002 are domestic violence cases that are heard by a Circuit Court judge making them circuit court cases.

In Pavkovich, the Kentucky Court of Appeals held "[u]nfortunately, the Jefferson Circuit Corut lost jurisdiction of the subject matter of Civil Action No. 02-CI-5425 on August 27, 2004 ten days after it entered the order dismissing the Pavkoviches' claims with prejudice. That order was not appealed." Pavkovich v. Shenouda, page 7 of published opinion case number 2005-CA-000866 and 2006-CA-001334.

CI in the case number means civil circuit action as D means domestic violence action, which was also in circuit court in these cases.

Like Pavkovich, 02-D-002020-001 and 02-D-002020-002 lost subject matter jurisdiction ten days after the dismissal orders were issued August 7, 2002 and served on the parties on August 7, 2002.

Thus, Ms. Mischler request for a factual finding and ruling of law that 02-D-00202-001 and 02-D-002020-002 lost subject matter jurisdiction on August 17, 2002 is a proper request.

REQUEST FOR FACTUAL FINDING AND RULE OF LAW:

> *4.   The entered September 23, 2002 order changing child custody in 02-D-002020-001 and 02-D-002020-002 is therefore without subject matter jurisdiction having been entered 37 days after subject matter jurisdiction had expired.*

Attached Exhibit 3 shows that Judge Julie Paxton signed an order on September 18, 2002 changing child custody in 02-D-002020-001 and 02-D-002020-002 and that order was entered on September 23, 2002.

If subject matter jurisdiction ended on August 17, 2002 ten days after Exhibits 1 and 2 show the case was dismissed; then Judge Julie Paxton knew she had no subject matter jurisdiction to issue an order, to dismiss an already dismissed case and change child custody.

It is necessary for the District Court to issue a factual finding that Judge Julie Paxton had no subject matter jurisdiction to issue the September 23, 2002 order because subject matter jurisdiction was lost ten days after the original dismissal were signed by Paxton.

REQUEST FOR FACTUAL FINDING AND RULE OF LAW:

> *5.  Further, there is no subject matter jurisdiction in a domestic violence action to change child custody unless that order of protection is granted pursuant to KRS 403.740.  Thus, the September 23, 2002 does not have subject matter jurisdiction over child custody because the domestic violence actions were dismissed and sole subject matter jurisdiction over child custody lay only in the divorce action of 01-CI-1197.*

Changes in child custody in Kentucky are only to happen in divorce actions.  The divorce action in these matters is 01-CI-1197 [Pike].  Paxton, a judge knew this.

A domestic violence order can either be granted or dismissed.  Pursuant to KRS 403.740, child custody can only be altered in a domestic violence case if it is granted.  There is no legal authority in Kentucky to both dismiss the domestic violence action and change child custody.

Here, Judge Paxton on August 7, 2002 served dismissed orders of protection to Ms. Mischler. Then after subject matter jurisdiction was lost due to ten days having passed; thirty seven days later Judge Paxton, issued a second dismissal order dismissing the action AGAIN AND changing child custody in violation of KRS 403.740.

There is no subject matter jurisdiction over child custody in Kentucky in a domestic violence action unless an order of protection is granted. Thus, it is proper for this Court to rule as requested by Ms. Mischler in accordance to KRS 403.740 that Paxton had no legal authority [subject matter jurisdiction] to both dismiss the actions and change child custody.

WHEREFORE, the Plaintiff submits this memorandum with exhibits in support of her motion for miscellaneous relief.

Respectfully submitted,

Amy Mischler
1120 Palm Court
Okeechobee, Florida 34974

CERTIFICATE OF SERVICE
A true copy of the foregoing was emailed to Brian Cumbo on October 21, 2015 to the following: cumbolaw@cumbolaw.com

FILE No.270 09/06 '02 08:41 IN:Floyd Co. Family Court FAX:06068869995 PAGE 1

# ORDER OF PROTECTION

AOC-275.3
Rev. 10-01
Doc. Code: ODV
Page 1 of 3

☒ DOMESTIC VIOLENCE ORDER
☐ AMENDED DOMESTIC VIOLENCE ORDER

| Case No. | 02-D-00202-001 |
|---|---|
| Court | Family |
| County | PIKE | State KY |

### PETITIONER/PLAINTIFF

| Amy | Jerrine | Mischler |
|---|---|---|
| First | Middle | Last |

And/or on behalf of minor family members(s):(list name and DOB) _____

### PETITIONER/PLAINTIFF IDENTIFIERS

_____-68

Date of Birth of Petitioner

Other Protected Persons/DOB: _____

**ENTERED**
SEP 0 9 2002
DAVID DE___
PIKE Circuit __ CLERK
BY: ___ DISTRICT COURT
D.C

V.

### RESPONDENT/DEFENDANT

| Jonah | L. | Stevens |
|---|---|---|
| First | Middle | Last |

Relationship to Petitioner: ☐ spouse ☒ former spouse
☐ unmarried, child in common ☐ unmarried, currently
or formerly living together ☐ child ☐ stepchild
☐ parent ☐ grandparent ☐ other relative (specify)

Respondent Address: 212 1/2 Apt. 1 Northgate Dr. Pikeville, KY

### RESPONDENT/DEFENDANT IDENTIFIERS

| SEX | RACE | DOB | HT | WT |
|---|---|---|---|---|
| M | W | ____-62 | | |

| EYES | HAIR | Social Security # |
|---|---|---|
| | | |

| DRIVERS LICENSE # | STATE | EXP. DATE |
|---|---|---|
| | | |

Distinguishing Features _____

### CAUTION:

☐ Weapon involved  ☐ Armed and Dangerous  ☐ Divorce/Custody/Visitation case pending

## THE COURT HEREBY FINDS:

That it has jurisdiction over the parties and subject matter, and the Respondent has been provided with reasonable notice and opportunity to be heard.

☐ Additional findings of this order are as set forth below.

## THE COURT HEREBY ORDERS:

☐ That the above-named Respondent be restrained from committing further acts of abuse or threats of abuse.
☐ That the above-named Respondent be restrained from any contact with the Petitioner/Plaintiff.
☐ Additional terms of this order are as set forth below.

The terms of this order shall be effective until [_____] , [_____] .

## WARNING TO RESPONDENT:

This order shall be enforced, even without registration, by the courts of any state, the District of Columbia, any U.S. Territory, and may be enforced by Tribal Lands (18 U.S.C. Section 2265). Crossing state, territorial, or tribal boundaries to violate this order may result in federal imprisonment (18 U.S.C. Section 2262).

Federal law provides penalties for possessing, transporting, shipping, or receiving any firearm or ammunition (18 U.S.C. Section 922(g)(8)).

Only the Court can change this order.

*Exhibit* 1

AOC-275.3
Rev. 10-01
Doc. Code: ODV
Page 2 of 3

02-D-00202-001

## ADDITIONAL FINDINGS:

❑ For the Petitioner against the above-named Respondent in that it was established, by a preponderance of the evidence, that an act(s) of domestic violence or abuse has occurred and may again occur; or

☒ For the Respondent in that it was not established, by a preponderance of the evidence, that an act(s) of domestic violence or abuse has occurred and may again occur; or

❑ The ❑ Petitioner ❑ Respondent has filed a motion to amend the Domestic Violence Order dated

_____

## ADDITIONAL TERMS OF ORDER:

**That the above-named Respondent surrender to the Court, or to the officer serving the order, Respondent's Kentucky license to carry concealed firearms or other deadly weapons pursuant to KRS 237.110(11).**

   ❑ Kentucky license to carry surrendered to Court.

☒ That the Petition/Motion to Amend be ☒ Dismissed ❑ Denied.

❑ That the motion to amend is sustained. ❑ That the prior order is amended pursuant to a show cause hearing. The prior order is amended as follows, and all prior inconsistent provisions of such prior order are superseded

   as follows: _____

_____

❑ That the above-named Respondent is restrained from any contact or communication with the above-named Petitioner;

❑ That Respondent shall remain at all times and places at least _____ feet away from Petitioner and members of Petitioner's family or household;

   ❑ except as follows: _____

   _____

❑ That the above-named Respondent be restrained from disposing of, or damaging, any property of the parties;

❑ That the above-named Respondent vacate the residence shared by the parties located at

_____

(specific address)

❑ In accordance with the criteria of KRS 403.270, 403.320, and 403.420, the Uniform Child Custody Jurisdiction Act and 28 U.S.C.A. Section 1738A temporary custody of:

_____

_____

_____

(List names, ages and sex of each child)

be awarded to _____.

FILE No:270 09/06 '02 08:41    ..::Floyd Co. Fam Court   FAX:06 *8869995

AOC-275.3
Rev. 10-01
Doc. Code: ODV          02-D-00202-001
Page 3 of 3

❑ That the above-named Respondent, is ordered to pay temporary support in the amount of

$ _____ as set forth in form AOC 152 Kentucky Uniform Child Support Order.  (AOC 152 shall also be used if child support is ordered.)

❑ That the above-named Respondent participate in available counseling services, described as

_____

❑ In order to assist in eliminating future acts of domestic violence and abuse, _____

_____

_____

_____

❑ (To be used only in dissolution or custody action)
That the court finds that the victim has requested mediation and the victim's request is voluntary and not the result of coercion and that mediation is a realistic and viable alternative to or adjunct to the issuance of this

order, therefore that available mediation services be ordered as follows: _____

_____

The terms of this order shall not exceed three years from date of issue pursuant to KRS 403.750(2).  The Petitioner may return to the court which issued this order before expiration of this order to request that it be reissued for an additional period not to exceed three years.  The number of times this Order may be reissued shall not be limited.  KRS 403.750(3).

Violation of this order shall constitute contempt of this Court and may result in criminal charges. Any peace officer shall arrest the Respondent without a warrant upon probable cause that a violation of this order has occurred.  Pursuant to 18 U.S.C. Section 922(g)(8), it may be a federal violation to purchase, receive or possess a firearm or ammunition while subject to this order.

| 8-07-02 | |
| --- | --- |
| Date | Judge |

I, ANNA PINSON SPEARS, CLERK OF THE PIKE CIRCUIT/
DISTRICT COURTS DO CERTIFY THAT THE FOREGOING
IS A TRUE AND CORRECT COPY OF THE ORIGINAL
DOCUMENTS AS FILED IN MY OFFICE IN TESTIMONY
WHEREOF WITNESS MY HAND AS CLERK AFORESAID
THIS 21 DAY OF July 2015
ANNA PINSON SPEARS
BY _____ Clerk
D.C.

Copies to:
- Court file
- Petitioner
- Respondent
- Court clerk in county of Petitioner's usual residence, if different.
- Law enforcement agency/dispatch center responsible for LINK entry.
- Law enforcement agency(cies) designated for service.
- Local Department for Social Services, Cabinet for Families & Children.

Ensure entries in boxes are complete and legible. Without the correct information in each box the order WILL NOT be entered into the LINK system.

# ORDER OF PROTECTION

☑ DOMESTIC VIOLENCE ORDER
☐ AMENDED DOMESTIC VIOLENCE ORDER

AOC-275.3
Rev. 10-01
Doc. Code: ODV
Page 1 of 3

Case No. 02-D-00202-002

Court _____ Family _____

County Pike State KY

---

**PETITIONER/PLAINTIFF**

| Jonah | L. | Stevens |
|-------|-----|---------|
| First | Middle | Last |

And/or on behalf of minor family members(s):(list name and DOB) _____

**PETITIONER/PLAINTIFF IDENTIFIERS**

ENTERED

~~___-52~~

Date of Birth of Petitioner   SEP 0 9, 2002

Other Protected Persons/DOB: DAVID DESKINS, CLERK
PIKE CIRCUIT/DISTRICT COURT
BY: _____

**V.**

---

**RESPONDENT/DEFENDANT**

| Amy | L. | Mischler |
|-----|-----|----------|
| First | Middle | Last |

Relationship to Petitioner: ☐ spouse ☑ former spouse
☐ unmarried, child in common ☐ unmarried, currently
or formerly living together ☐ child ☐ stepchild
☐ parent ☐ grandparent ☐ other relative (specify)

Respondent Address: __43 Joe Hampton Road__
__Pikeville, KY   41501__

**RESPONDENT/DEFENDANT IDENTIFIERS**

| SEX | RACE | DOB | HT | WT |
|-----|------|-----|-----|-----|
| F | W | ~~___-68~~ | 5' 5" | 200 |

| EYES | HAIR | Social Security # |
|------|------|-------------------|
|      |      |                   |

| DRIVERS LICENSE # | STATE | EXP. DATE |
|-------------------|-------|-----------|
|                   |       |           |

Distinguishing Features _____

---

**CAUTION:**

☐ Weapon involved   ☐ Armed and Dangerous   ☐ Divorce/Custody/Visitation case pending

**THE COURT HEREBY FINDS:**

That it has jurisdiction over the parties and subject matter, and the Respondent has been provided with reasonable notice and opportunity to be heard.

☐ Additional findings of this order are as set forth below.

**THE COURT HEREBY ORDERS:**

☐ That the above-named Respondent be restrained from committing further acts of abuse or threats of abuse.

☐ That the above-named Respondent be restrained from any contact with the Petitioner/Plaintiff.

☐ Additional terms of this order are as set forth below.

The terms of this order shall be effective until [_____] , [_____] .

**WARNING TO RESPONDENT:**

This order shall be enforced, even without registration, by the courts of any state, the District of Columbia, any U.S. Territory, and may be enforced by Tribal Lands (18 U.S.C. Section 2265). Crossing state, territorial, or tribal boundaries to violate this order may result in federal imprisonment (18 U.S.C. Section 2262).

Federal law provides penalties for possessing, transporting, shipping, or receiving any firearm or ammunition (18 U.S.C. Section 922(g)(8)).

Only the Court can change this order.

Exhibit 2



AOC-275.3
Rev. 10-01
Doc. Code: ODV
Page 2 of 3

02-D-00202-002

## ADDITIONAL FINDINGS:

☐ For the Petitioner against the above-named Respondent in that it was established, by a preponderance of the evidence, that an act(s) of domestic violence or abuse has occurred and may again occur; or

☒ For the Respondent in that it was not established, by a preponderance of the evidence, that an act(s) of domestic violence or abuse has occurred and may again occur; or

☐ The ☐ Petitioner ☐ Respondent has filed a motion to amend the Domestic Violence Order dated

_____

## ADDITIONAL TERMS OF ORDER:

That the above-named Respondent surrender to the Court, or to the officer serving the order, Respondent's Kentucky license to carry concealed firearms or other deadly weapons pursuant to KRS 237.110(11).

☐ Kentucky license to carry surrendered to Court.

☒ That the Petition/Motion to Amend be ☒ Dismissed ☐ Denied.

☐ That the motion to amend is sustained. ☐ That the prior order is amended pursuant to a show cause hearing. The prior order is amended as follows, and all prior inconsistent provisions of such prior order are superseded

as follows: _____

_____

☐ That the above-named Respondent is restrained from any contact or communication with the above-named Petitioner;

☐ That Respondent shall remain at all times and places at least _____ feet away from Petitioner and members of Petitioner's family or household;

☐ except as follows: _____

_____;

☐ That the above-named Respondent be restrained from disposing of, or damaging, any property of the parties;

☐ That the above-named Respondent vacate the residence shared by the parties located at

_____;

(specific address)

☐ In accordance with the criteria of KRS 403.270, 403.320, and 403.420, the Uniform Child Custody Jurisdiction Act and 28 U.S.C.A. Section 1738A temporary custody of:

_____

_____

_____

(List names, ages and sex of each child)

be awarded to _____

AOC-275.3
Rev. 10-01
Doc. Code: ODV
Page 3 of 3

02-D-00202-002

❑ That the above-named Respondent, is ordered to pay temporary support in the amount of

$ _____ as set forth in form AOC 152 Kentucky Uniform Child Support Order. (AOC 152 shall also be used if child support is ordered.)

❑ That the above-named Respondent participate in available counseling services, described as

_____

❑ In order to assist in eliminating future acts of domestic violence and abuse, _____

_____

_____

_____

❑ (To be used only in dissolution or custody action)
That the court finds that the victim has requested mediation and the victim's request is voluntary and not the result of coercion and that mediation is a realistic and viable alternative to or adjunct to the issuance of this

order, therefore that available mediation services be ordered as follows: _____

_____

The terms of this order shall not exceed three years from date of issue pursuant to KRS 403.750(2). The Petitioner may return to the court which issued this order before expiration of this order to request that it be reissued for an additional period not to exceed three years. The number of times this Order may be reissued shall not be limited. KRS 403.750(3).

Violation of this order shall constitute contempt of this Court and may result in criminal charges. Any peace officer shall arrest the Respondent without a warrant upon probable cause that a violation of this order has occurred. Pursuant to 18 U.S.C. Section 922(g)(8), it may be a federal violation to purchase, receive or possess a firearm or ammunition while subject to this order.

| 08-07-2002 | | |
| --- | --- | --- |
| Date | | Judge |

_____ PINSON SPEARS, CLERK OF THE PIKE CIRCUIT/
_____ICT COURTS DO CERTIFY THAT THE FOREGOING
_____RUE AND CORRECT COPY OF THE ORIGINAL
_____UMENTS AS FILED IN MY OFFICE IN TESTIMONY
____REOF WITNESS MY HAND AS CLERK AFORESAID
THIS __21__ DAY OF _____ 2015
ANNA PINSON SPEARS
BY _____ D.C.

Copies to:
- Court file
- Petitioner
- Respondent
- Court clerk in county of Petitioner's usual residence, if different.
- Law enforcement agency/dispatch center responsible for LINK entry.
- Law enforcement agency(cies) designated for service.
- Local Department for Social Services, Cabinet for Families & Children.

Ensure entries in boxes are complete and legible. Without the correct information in each box the order WILL _____ _____ _____ into the LINK system.

COMMONWEALTH OF KENTUCKY
PIKE DISTRICT COURT
FAMILY COURT DIVISION

ENTERED

SEP 2 3 2002

DAVID DESK...
PIKE CIRCUIT... CLERK COURT
BY:_____ D.C

BEFORE: HON. JULIE PAXTON, SPECIAL JUDGE

ACTION NO.       02-D-00202-001
                 02-D-00202-002

AMY MISCHLER                                    PETITIONER

vs.                          **ORDER**

JONAH STEVENS                                   RESPONDENT

** ** ** ** ** ** ** ** **

This cause having come before the Court on cross-petitions for the issuance of a Domestic Violence Order and the Petitioner , Amy Mischler, having been present and unrepresented by counsel, and the Respondent, Jonah Stevens, having been present and represented by Agnes Sipple Trujillo, Esq. and the Court having heard the testimony of the parties and being otherwise sufficiently advised, IT IS HEREBY ORDERED AS FOLLOWS:

1.    Both petitions be and the same are hereby DISMISSED;

2.    The Court notes that certain motions regarding custody and visitation have been filed in the parties' divorce case, but that the following custody and visitation arrangement is acceptable pending a hearing on said motions.  Pending such a hearing, the parties' minor children shall remain at the at the Respondent's mother's home.

3.    The Respondent shall have access to his minor children up through 6:30 p.m. each evening, Monday through Friday, with the right to make arrangements for the parties' oldest child to be



EXHIBIT
83
ALL-STATE LEGAL

taken and picked up from school.

4. The Petitioner shall have access to the parties' minor children from Friday at 6:00 p.m. until Sunday at 6:00 p.m. The parties' minor children shall be picked up and returned to the Respondent's mother's home outside of the presence of the other party. The parties' children shall remain in Pike County during the pendency of this action.

IT IS SO ORDERED this the 18 day of September, 2002.

_____
Julie Paxton, Special Judge

CERTIFICATE OF SERVICE:

I certify that a true copy of the foregoing Order has been mailed to all attorneys and/or parties of record on this the 23 day of September, 2002.

DAVID DESKINS, CLERK
PIKE CIRCUIT COURT

By: _____ D.C.







**FAYETTE COUNTY**

# 'People are going bankrupt.' Caregivers say Kentucky unfairly denying foster payments.

**BY BETH MUSGRAVE**
*bmusgrave@herald-leader.com*

March 13, 2018 11:11 AM
Updated March 13, 2018 10:40 AM

Holly Dillon has struggled to make her mortgage and car payments since two relatives were placed in her home by state social workers last year.

She doesn't want the children to enter Kentucky's foster care system, but Dillon isn't sure she can pay for everything they need and still keep her home in Owensboro.

"I've gone into debt," Dillon said. "I'm at my wit's end. I don't want to let them go into foster care."

She and thousands of other family caregivers cheered in October when the U.S. Supreme Court declined to review a U.S. Sixth Circuit Court of Appeals decision that said relatives caring for abused and neglected kids in Kentucky should be paid just like foster parents. The state had previously provided a $300 monthly stipend to relatives who care for abused and neglected children but that program was suspended in 2013 under former Gov. Steve Beshear due to budget cuts.

**Premium content for only $0.99**

For the most comprehensive local coverage, subscribe today.

SUBSCRIBE NOW

Dillon applied for the new relative care payments, which the state says average $750 a month. But last week, the Cabinet for Health and Family Services, which oversees child protection, sent Dillon a letter saying she does not qualify for the program. The letter doesn't say why she was denied and tells her to hire a lawyer if she wants to appeal.



Holly Dillon of Owensboro is fighting to keep two relatives who were placed in her care after being removed from their parent's home by state social workers. She and other relatives say they are being unfairly denied payments as foster parents by the state.

photo provided

Dillon isn't the only caregiver who has received a blanket denial.

Richard Dawahare, the Lexington lawyer who successfully sued the cabinet on behalf of relative caregivers, said he has heard from at least a dozen family caregivers who have been denied payments he believes they are entitled to receive under the court's decision.

Dawahare said he's tried to work with the cabinet since October to expedite payments to family caregivers, but a second lawsuit is possible if they continue to deny payments to people he thinks are clearly eligible for them.

"We are still looking at next steps," Dawahare said. "This is the child's money. This is about the welfare of children."

Advocate Norma Hatfield has fielded more than 100 emails and phone calls from relative caregivers since the cabinet announced it was accepting applications for the program in early February. Many can't even get through to the cabinet to see if they qualify, she said. Others are being denied with little or no explanation.

Since early February, the Elizabethtown advocate for grandparents and other relatives who are raising children has filed two complaints with the cabinet's ombudsman office over problems with applications for relative payment and the lack of an appeals process.

"They are getting this blanket denial letter that does not tell them why," Hatfield said. "There's also no appeals process. It just says to contact an attorney."

Hatfield said the denials could mean more kids going into an already over-taxed foster care system. Last year, 11,387 Kentucky children lived in foster care, up 15 percent from 2012.

Being removed from the care of a relative will only result in more trauma and long-term problems for these kids, who are already in crisis, she said.





## CABINET FOR HEALTH AND FAMILY SERVICES
## DEPARTMENT FOR COMMUNITY BASED SERVICES
### Commissioner's Office
#### COA ACCREDITED AGENCY

atthew G. Bevin
overnor

275 East Main Street, 3W-A
Frankfort, KY 40621
Phone (502) 564-3703
Fax (502) 564-5907
www.chfs.ky.gov

Scott W. Brinkman
Acting Secretary

February 22, 2018



The Cabinet for Health and Family Services (CHFS) received your inquiry regarding eligibility for the relative/fictive kin per diem foster care payment under the *D.O. v. Glisson* judgment. A specialist was assigned to review your request.

In order to be eligible for the payment: 1) a court must have placed the child in CHFS custody; 2) the court must then have granted the relative or fictive kin temporary (not permanent) custody; and 3) CHFS must have approved the home, which at a minimum requires that a home study was performed.

It was determined that you are not eligible for the payment under the above criteria. If disagree with this determination and wish to continue to pursue the matter of eligibility, you may contact your own legal counsel.

There are additional CHFS services that may be available to you. Please see the enclosure for information regarding those services.

If you have additional questions, please contact the kinship support hotline at (877) 565-5608 or DCBSChildProtection@ky.gov.

Sincerely,

Michelle Anderson
Assistant Director
Division of Protection and Permanency

Enclosure

KentuckyUnbridledSpirit.com



An Equal Opportunity Employer M/F/D

Hatfield said she knows many caregivers, such as Dillon, who desperately want to provide a stable, loving home to an abused or neglected child but don't have the financial means to do so.

"The emails and letters I get are heartbreaking," Hatfield said. "People are going bankrupt and losing their homes... These are grandparents who are living on Social Security and they are taking in sibling groups of three to eight kids. That was never in their budget."

As of March 5, cabinet officials said they had approved payments for 35 relative caregivers since announcing a hotline and email address on Feb. 13 for people to sign up for the program. The cabinet had received more than 3,000 calls to the hotline.

The cabinet said in a news release that relatives are eligible for payment if the state "places the child with the relative, has conducted a home study and background checks, and if CHFS either retains custody of the child or has transferred the child from CHFS' custody to the temporary custody of the relative or fictive kin." Fictive kin means a close family friend. Caregivers with permanent custody are not eligible for payments, cabinet officials said.

In a statement, cabinet officials denied accusations that they are deliberately making the application process cumbersome to delay or deny payment to relatives in an attempt to save the state money.

"The cabinet has no intent to slow down implementing payment schedules for qualifying families and is committed to complying with this court ruling in the most effective and accurate manner possible," said Doug Hogan, a spokesman for the cabinet.

The cabinet has previously said providing payments to family caregivers would cost $14.3 million for the fiscal year beginning July 1. In the second year it would cost $15.3 million. The cabinet said relatives of more than 1,500 kids should qualify for payments in the first year. In the second year, relative caregivers of 1,700 kids should be entitled to the monthly payments.

Sponsored Content Johnson Update
Posted by Kentucky Cabinet for Health and Family
2,117 Views

Dawahare and Hatfield said Dillon and others are probably being unfairly denied payment because they immediately volunteered to have children placed in their care instead of allowing the child to first go into foster care.

"I have heard from multiple relatives who have been denied payment because their family member was not first placed in foster care before being placed in their care," Hatfield said.

In Dillon's case, she has met all of the stated requirements for the program, Dawahare said. She has temporary custody of the children and completed a background check and home evaluation. State social workers visit the children every month, she said.

"They are still in the custody of the cabinet," Dawahare said. "She should be eligible for payments. Just because the cabinet never had physical custody of those children, they are still in the care of the cabinet."

When asked specifically if a child had to previously be in foster care before becoming eligible for the relative payment program, cabinet officials declined to answer the question.

Other caregivers say they're frustrated by mixed messages from the cabinet — or no response at all.

Melissa Fiorelli said she was told by a state social worker that she had to complete foster care training after three relatives were placed in her care last summer. Fiorelli, who lives in Kenton County, later learned she didn't have to go through the training to be paid as a relative caregiver.

After the cabinet announced the new relative pay program last month, Fiorelli sent the cabinet emails to see if she qualified. She also called a hotline number multiple times. No one has called her back.

"I just need someone who can answer the question — should I proceed with relative care payments or am I a foster parent?" Fiorelli said. "I want to be a relative care provider. But I can't get a straight answer."

Fiorelli and her husband had to move into a larger, more expensive home after the kids were placed with them. She, too, is struggling to provide everything the kids need.

Why should they be punished because a relative and not a stranger is taking care of them, she asks?

Dawahare said he has heard from other family caregivers who have been told they must go through foster care training to care for relatives. One caregiver, he said, was told that during the training the children would be removed from their care, placed in a foster home and then returned to them once the training is complete.

"That's just not true," Dawahare said. "That's contradictory to the law."

Cabinet officials told the Herald-Leader last week that relative caregivers do not have to complete foster care training to receive relative care payment.

"Relatives are not required to go through foster care training in order to be eligible for the payment," Hogan said. "The only requirements are: 1) the relative/fictive kin has only temporary custody... and that the cabinet performed a home study or otherwise approved the home."

After the Herald-Leader sent the cabinet a list of questions about delays in the application process on March 2, the cabinet announced March 5 it was making changes.

Those changes include hiring temporary staff to handle the influx of calls to a hotline number for relative care applications. The cabinet also announced it would take 45 days to determine if a relative is eligible for payments.

The cabinet said relative caregivers with internet access should email the cabinet at DCBSChildProtection@ky.gov rather than call the Kinship Support Hotline at 877-565-5608. That will make the application process faster, they said. The cabinet also said it would make payments retroactive to the date that the relative contacted the cabinet.

*Beth Musgrave: 859-231-3205, @HLCityhall*



Staff's Name: JONES-GRAY(SRW-SSCI), EMILY REGENEA
On Behalf Of: Amy Mischler,
Contact Type: Paperwork / Notifications
Contact Location: DCBS Office
Service Activities: Referral for Services
Case Plan Objectives:
Comments:

Dec 3 2008 12:36PM Emily Jones-Gray(SSW-SSCI)
Worker Emily Jones, SSW, SSCI entered referral RA on 12-03-2008.
Worker Emily Jones, SSW, SSCI received this referral via fax from Jefferson County DPP on 12-03-2008 on an EPO. The EPO is dated for 12-02-2008. This referral does not meet the criteria for an APS investigation per SOP 4A.2 (3) - adults are not married and do not live together. This referral does not meet the criteria for a CPS investigation per 7A.4 (1a) - generalized feelings of concern. No specific abuse allegations are made for emotional abuse.

TWIST History:
_____W205342
1. 05-18-2002 I & R
2. 02-26-2007 CPS Neglect - unsub'd
3. 08-11-2007 APS R/L
4. 10-02-2008 CPS R/L
5. 03-04-2009 CPS R/L

Amy Mischler #305336
1. 05-18-2002 APS I & R
2. 04-20-2006 CPS Neglect - sub'd
3. 05-25-2006 CPS Neglect - sub'd, but overturned to unsub'd in CAPTA

_____ ational Information
Per EPO:
_____ works at the _____ and _____ Pikeville, KY 41501

Contact                    FINALIZED                    09/19/2007

Staff's Name: ADKINS (SS-FSOS), DENISE
On Behalf Of: Amy Mischler,
Contact Type: Paperwork / Notifications
Contact Location: DCBS Office
Service Activities: Investigation/Assessment
Case Plan Objectives:
Comments:

Sep 19 2007 12:00AM Denise Adkins (SS-FSOS)
JC-3 dated 08-11-08, received in DPP office 08-11-07. Referral does not meet criteria for an investigation (_____ over return of children), entered as a resource linkage. JC-3 noted no injuries or complaint of pain, no damage.  Two children were present: _____

Exhibit 24

Full Record                    Page 1 of 3                    Created Date: 1/15/2018 8:50:40 AM

Exhibit E

3/4                                                                                    21/44

1/30

RECEIVED

DEC 1 3 2018

DEBORAH S. HUNT, Clerk

United States Court of Appeals
6th Circuit
No. 18-5665

Amy Jerrine Mischler

Appellant

V.

Matt Bevin, et al.,

Appelles.

Motion for leave to file Reply Brief

Now comes the appellant who moves that her reply brief be filed. She has only until Dec 10, 2018 to get her brief so she must get it in the mail today Dec 8, 2018. This is just one hurdle pro se litigants face being burdened with additional expenses and being _Punished_ by not having until Midnight to electronically file.

Thus, if there are any defects she requests the court to file her brief anyway because she has attempted to lawfully comply with FRAP Rules.

Mischler
Amy Mischler
1120 Palm Court
Okeechobee Fl 34974
863-801-1877

1/2

## Certificate of Service

I Certify that a copy of this was sent to the Δ's by mail after I first Rush the clerks copy before Noon Saturday to the post office.

A Mischl

Dec 8, 2018

# PRIORITY
## ★ MAIL ★
# EXPRESS™

OUR FASTEST SERVICE IN THE U.S.

RECEIVED

DEC 1 5 2018

DEBORAH S. HUNT, Clerk

*May*

WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.



EP13L July 2013   OD: 15 x 9.5

PS10001000059

PRESS FIRMLY TO SEAL

 

U.S. POSTAGE PAID
PME 2-DAY
OKEECHOBEE, FL
34972
DEC 08, 18
AMOUNT

1007     45202-3045     **$24.70**
R2304M115489-12



CUSTOMER USE ONLY

FROM:

PAYMENT BY ACCOUNT (if applicable)

DELIVERY OPTIONS (Customer Use Only)
☐ SIGNATURE REQUIRED
Delivery Options
☐ No Saturday Delivery
☐ Sunday/Holiday Delivery Required
☐ 10:30 AM Delivery Required

TO:

WRITE FIRMLY WITH BALL POINT PEN ON HARD SURFACE TO MAKE ALL COPIES LEGIBLE

▶ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
▶ $100.00 insurance included.

UNITED STATES
POSTAL SERVICE ®

PRIORITY
★ MAIL ★
EXPRESS™

EL847795800US

VISIT US AT USPS.COM
ORDER FREE SUPPLIES ONLINE

 POSTAL SERVICE.